UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JOSEPH FRANK MENDOZA, MARTIN and CAROL JOCKS, DONALD and ANGELA GARRISON, DAVID and ANGELITA JARMAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>  v.<br><br>LITHIA MOTORS, INC., LITHIA FINANCIAL CORPORATION, SALEM-V, LLC d/b/a VOLKSWAGEN OF SALEM, and LITHIA KLAMATH, INC. d/b/a LITHIA KLAMATH FALLS AUTO CENTER,<br><br>        Defendants. | Case No. 6:16-cv-01264-AA<br><br>OPINION AND ORDER |

AIKEN, District Judge:

      Plaintiffs bring this putative class action suit against defendants alleging violations of the federal Truth in Lending Act (TILA), Oregon's Unlawful Trade Practices Act (UTPA), and Oregon's financial elder abuse statute. Plaintiffs allege that defendants failed to comply with the disclosure requirements of both TILA and the UTPA, and that in failing to make those

1 – OPINION AND ORDER

disclosures, defendants wrongfully appropriated money from elderly persons. Defendants now move to dismiss certain claims pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons discussed below, defendants' motion is granted in part and denied in part and plaintiff is allowed to seek leave to amend.

## I. BACKGROUND

The following facts are taken from plaintiffs' First Amended Complaint; they are accepted as true and construed in the light most favorable to plaintiffs for purposes of this motion. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).

The named plaintiffs are residents of Oregon who purchased vehicles and other goods or services from one or more of the defendants, all of which are headquartered in Oregon. First Am. Compl. ¶¶ 1-8, 16-31.

In August 2013, plaintiffs Carol and Martin Jocks purchased a vehicle from a Lithia dealership in Klamath Falls, Oregon. Carol Jocks was over the age of sixty-five at the time. Lithia arranged for vehicle financing at an interest rate of 3.99%, a rate higher than the interest rate quoted by the loan provider. First Am. Compl. ¶ 21. The loan provider then paid defendants an undisclosed amount of money based on the difference between the quoted interest rate and the interest rate agreed to by the Jocks. The Jocks apparently also purchased an extended service warranty contract for $2,644.05.[1] The dealership paid the third-party provider of the contract an undisclosed, non-itemized amount of more than $100. Defendants either retained a large

---

[1] In the Complaint, plaintiffs allege that the Jocks purchased "a credit life policy for $2,644.05," while referring to the same purchase as a service contract. First Am. Compl. ¶ 20. In their motion to dismiss, defendants posit that plaintiffs' reference to a "service contract" was a typographical error. In their reply, plaintiffs acknowledge that the Jocks did not purchase a credit life policy but do not clarify whether the Jocks purchased an extended warranty. Pls.' Response at 7. Because the Court accepts the factual allegations as true at this stage of the proceedings, I accept the allegation that the Jocks purchased an extended service warranty for $2,644.05.

2 – OPINION AND ORDER

percentage of the warranty price as profit or received a large payment, or "kickback," from the third party. First Am. Compl. ¶ 20.

In August 2013, plaintiffs Angela and Donald Garrison also purchased a vehicle from a Lithia dealership in Klamath Falls, Oregon. Lithia arranged for vehicle financing with an interest rate of 3.99%, which was higher than the interest rate quoted by the loan provider. The loan provider then made a payment to defendants based on the difference between the quoted interest rate and the interest rate to which the Garrisons agreed. First Am. Compl. ¶¶ 25-27. The Garrisons did not purchase an extended vehicle service warranty.

In December 2015, plaintiffs David and Angelita Jarman likewise purchased a vehicle at a Lithia dealership in Klamath Falls, Oregon. The dealership arranged for vehicle financing with an interest rate of 5.34%, which, again, was higher than the interest rate quoted by the loan provider. The loan provider then paid defendants an undisclosed amount of money based on the difference in the interest rates. First Am. Compl. ¶¶ 28-29. The Jarmans also purchased an extended vehicle service warranty for $1,616.00. The dealership paid a third party more than $100 for the warranty contract, and defendants either retained a large portion the warranty payment or received a large "kickback" payment from the third-party. First Am. Compl. ¶ 29.

On June 3, 2016, plaintiff Joseph Frank Mendoza purchased a vehicle from Volkswagen of Salem, a dealership allegedly owned by Lithia Motors, Inc. The dealership arranged for vehicle financing with an interest rate of 3.94%, a higher rate than that quoted by the loan provider. First Am. Compl. ¶ 17. Mendoza also paid $2,495.00 for an extended warranty, and defendants paid the warranty provider an undisclosed, non-itemized amount of more than $100. Defendants either retained a percentage of the purchase price as profit or received a "kickback" from the third-party provider. First Am. Compl. ¶ 16.

On June 24, 2016, plaintiffs filed this action.

## II. DISCUSSION

Under Rule 12(b)(6), a complaint must contain sufficient factual allegations, which, if assumed to be true, "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the factual allegations in the complaint allow a court to reasonably infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must present more than "the mere possibility of misconduct," *id.* at 679, and more than a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555.

*A.     Timeliness of Claims Asserted by the Jocks and the Garrisons*

Defendants first move to dismiss as untimely the TILA and UTPA claims brought by the Jocks and the Garrisons.

Under TILA, plaintiffs are required to bring an action "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Generally, the "date of the occurrence of the violation" is the date on which the transaction was completed. *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986). However, TILA's one-year limitation is subject to equitable tolling, which "may, in appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *Id.*

Similarly, Oregon's UTPA provides, "Actions brought under this section must be commenced within one year after the discovery of the unlawful method, act or practice," effectively incorporating the discovery rule into the statute. Or. Rev. Stat. § 646.638(6); *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 137, 361 P.3d 3 (2015) (because the limitation period under

the UTPA "is tied to the plaintiff's 'discovery' of the unlawful conduct, it runs in this case from when the plaintiffs and the members of the plaintiff class either actually knew or should have known" of the defendant's alleged misrepresentation).

It is undisputed that the Jocks and the Garrisons purchased their vehicles in August of 2013 and did not file suit until 2016, well beyond the one-year limitations period. However, plaintiffs argue that the Jocks and Garrisons did not know of and could not have reasonably discovered defendants' alleged TILA and UTPA violations in 2013, because defendants concealed information necessary to discover the violations. Plaintiffs further argue that no amount of due diligence would have allowed them to discover the claims at the time they purchased the vehicles, given defendants' concealment of pertinent information. Defendants maintain that plaintiffs must plead facts justifying the application of equitable tolling and the discovery rule, and that they fail to allege when and how they discovered the alleged violations.

At this stage of the proceedings, I must accept plaintiffs' allegations as true and construe all inferences in their favor. They allege that defendants concealed information regarding the true nature of defendants' financial arrangements with loan providers and other third parties, thus preventing plaintiffs from discovering the details of those arrangements. Giving plaintiffs the deference due under Rule 12(b)(6), I find that they allege adequate facts demonstrating that equitable tolling and the discovery rule could apply, depending on the specific facts of this case. Accordingly, defendants' motion to dismiss the TILA and UTPA claims brought by the Jocks and Garrisons is denied, with leave to renew after discovery.

      *B.     Oregon Unlawful Trade Practices Act (UTPA) Claims*

Plaintiffs' UTPA allegations are based on defendants' failure to disclose fee "kickbacks" received from loan providers when arranging vehicle financing and the payments received from

third parties for arranging the sale of third-party goods or services. Pls.' Response at 17; First Am. Compl. ¶¶ 61, 62. To bring a private cause of action under the UTPA, a plaintiff is required to show that "(1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice." *Pearson*, 358 Or. at 127, 361 P.3d 3.

Defendants move to dismiss all of plaintiffs' UTPA claims on grounds that plaintiffs fail to allege and cannot show that they suffered ascertainable loss as a result of defendants' alleged misrepresentations. Defendants also move to dismiss plaintiffs' claims relating to third-party good or services on grounds that no UTPA provision requires them to itemize and disclose profits associated with third-party goods and services.

### 1. UTPA Ascertainable Loss and Causation

An ascertainable loss is one that is economic in nature and involves "money or property, real or personal," such that the loss is "objectively verifiable." *Pearson*, 358 Or. at 117, 361 P.3d 3 (quoting Or. Rev. Stat. § 646.638(1)). Noneconomic damages which are not objectively verifiable, such as physical pain or emotional distress, do not constitute ascertainable losses under the UTPA. *Id.* Further, the loss must be "a result of," or caused by, the unlawful trade practice. *Id.*

Plaintiffs allege that they suffered ascertainable loss as a result of defendants' failure to disclose the existence and amounts of the alleged "kickback" payments defendants received for arranging vehicle financing and the purchase of third-party products or services. Plaintiffs suggest that their loss equals the amount that defendants received as kickbacks or retained as profit. First Am. Compl. ¶ 65; Pls.' Response at 17. Defendants maintain that plaintiffs cannot establish that defendants' misrepresentations caused their ascertainable loss, because plaintiffs

do not allege that they relied on defendants' misrepresentations. Plaintiffs counter that they need not allege or prove reliance, because they allege the concealment of pertinent facts rather than an affirmative misrepresentation of those facts. *Sanders v. Francis*, 277 Or. 593, 598, 561 P.2d 1003 (1977) ("Especially when the representation takes the form of a 'failure to disclose'…it would be artificial to require a pleading that plaintiff had 'relied' on that non-disclosure.").

When asked whether the causation element of the UTPA "equates with a requirement that a plaintiff prove reliance," the Oregon Supreme Court has answered, "It depends." *Pearson*, 358 Or. at 126, 361 P.3d 3. Specifically, the Court explained that "[w]hether reliance is required to establish causation turns on the nature of the unlawful trade practice and the ascertainable loss alleged." *Id.* In other words, the court must examine the causative link between the alleged misrepresentation or non-disclosure and the alleged loss to determine whether the plaintiff's theory of damages requires reliance on the alleged misconduct to establish causation.

In *Pearson*, for example, the plaintiffs alleged that the manufacturer of Marlboro Light cigarettes "both affirmatively misrepresented that its 'light' cigarettes would inherently deliver low tar and nicotine and failed to disclose that, in order to receive lower tar and nicotine, the smoker would have to smoke the 'light' cigarettes in a particular way." *Id.* at 126-27, 361 P.3d 3. The Court found that the plaintiffs' theory of loss was based on their expectation of receiving lower levels of tar and nicotine when purchasing "light" cigarettes and on the harm they suffered when they discovered that the cigarettes did not have those properties. *Id.* at 127, 361 P.3d 3. Thus, the Court held, the plaintiffs' harm could have been caused only if the plaintiffs relied on the manufacturer's misrepresentations and/or concealment of facts regarding the tar and nicotine levels of light cigarettes. *Id.* ("Under that theory, proof of reliance on the alleged misrepresentation was integral to plaintiffs' class claim.").

7 – OPINION AND ORDER

Here, I do not find *Pearson* necessarily applicable. Unlike the plaintiffs in that case, plaintiffs contend that their loss is not dependent on an affirmative misrepresentation or on the concealment of facts inconsistent with the representation of goods or services. *Pearson*, 358 Or. at 126, 361 P.3d 3 ("But if the purchaser did not care whether the product had a character or quality as represented (or was not aware of the representation) and bought it for other reasons, then the purchaser's expectations have not been frustrated. In that circumstance, the misrepresentation cannot be said to have 'caused' the purchaser to suffer a loss in the form of the purchase price."). For example, plaintiffs do not allege that defendants represented the vehicles, financing arrangements, or warranty services as having certain qualities and concealed the fact that the goods and services did not have such qualities. Instead, plaintiffs contend that defendants simply misrepresented, through concealment, the fact that defendants received kickbacks for vehicle financing and for third-party products and services purchased by plaintiffs.

At the same time, I agree with defendants that plaintiffs' theories of loss and causation are unclear, and that their allegations do support causation under the UTPA. Plaintiffs maintain that their ascertainable losses equal the payments or kickbacks defendants received from loan providers and other third parties; however, plaintiffs fail to explain how defendants' conduct caused them to suffer losses in the amount of the payments or kickbacks. First Am. Compl. ¶ 65; Pls.' Response at 17 ¶39, 20-21 ¶¶50-52. Moreover, plaintiffs do not allege what they would have done differently or how the vehicle transactions would have been different if defendants had disclosed the alleged payments or kickbacks. Plaintiffs do not allege, for example, that they would have declined to purchase the vehicles or would have obtained more favorable financing rates had defendants disclosed the difference between the quoted financing rate and the one received. Similarly, plaintiffs do not allege that they would have declined extended warranties or

other third-party goods and services if defendants had disclosed the fact that they received kickbacks or retained part of the purchase price as profit. In sum, plaintiffs fail to allege or explain how defendants' concealment of facts caused them to suffer ascertainable loss in an amount equal to the payments or kickbacks defendants allegedly received. Therefore, I agree that plaintiffs' allegations fail to support the element of causation.

However, rather than dismiss the UTPA claims, I will allow plaintiffs the opportunity to seek amendment of their complaint and allege more clearly their theories of loss and causation as alleged against each defendant. *See* Fed. R. Civ. P. 15 (a)(2) (the court should freely allow amendment "when justice so requires").

### 2.  *Claims Relating to Third-Party Products*

With respect to plaintiffs' claims relating to the purchase of third-party good or services, plaintiffs allege that defendants either: 1) paid third-party providers an undisclosed amount of money greater than $100 while retaining a portion of the purchase price as "profit"; or 2) paid third-party providers the full amount of the warranty price and then received a "kickback" payment from the third parties in exchange for arranging the sale. First Am. Compl. ¶¶ 16, 20, 29, 61. Defendants move to dismiss these claims on grounds that the UTPA provisions cited by plaintiffs do not apply to the alleged failures to disclose, and that no other UTPA provision requires defendants to itemize and disclose profits associated with third-party goods and services.

The UTPA sets out a large number of unlawful trade practices. In this case, plaintiffs allege violations of § 646.608(1)(e), (g), (k), and (u). Those subsections provide:

> (1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:

*** 

9 – OPINION AND ORDER

> (e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have[.]
>
> \*\*\*
>
> (g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another.
>
> \*\*\*
>
> (k) Makes false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred.
>
> \*\*\*
>
> (u) Engages in any other unfair or deceptive conduct in trade or commerce.

Or. Rev. Stat. § 646.608(1)(e), (g), (k),(u).

As discussed above, plaintiffs do not allege that defendants made representations that the vehicles, warranties or other services had "sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities" that they did not have, or that defendants' non-disclosures constituted representations that the vehicles and services were "of a particular standard, quality, or grade . . . or of a particular style or model" when they were not. Rather, plaintiffs simply allege that defendants failed to disclose the fees, payments, or kickbacks they received from loan providers and third parties. The fact that defendant allegedly received kickbacks does not implicate the characteristics or qualities of the financing arrangements or the warranty services or contracts. Therefore, plaintiffs' allegations do not state claims under § 646.608(1)(e) or (g).

Defendants also argue that § 646.608(1)(k) cannot support plaintiffs' UTPA claims, because plaintiffs do not allege concealment of any fact relating to credit availability, the nature of the credit transaction, or the credit obligation incurred by plaintiffs. I agree. Plaintiffs do not

allege that defendants misrepresented any fact relating to credit, or that they misrepresented the type of transactions entered into by plaintiffs, i.e., the fact that plaintiffs were entering into financing agreements for the purchase of vehicles and, in some instances, extended warranties or other services. The only "false or misleading representation" plaintiffs allege is the failure to disclose the fees, payments, or kickbacks defendants received by third parties. The allegation that defendants received kickbacks does not concern credit availability, the terms of the financing agreements, or the obligations plaintiffs incurred as a result.

However, I find that plaintiffs' allegations, if amended to clarify causation, plausibly assert a claim under § 646.608(1)(u). This provision makes it a violation of the UTPA to engage in "any other unfair or deceptive conduct in trade or commerce" as established via rule by the Oregon Attorney General. Or. Rev. Stat. § 646.608(1)(u); *see also id.* § 646.608(4). Plaintiffs rely on Or. Admin. R. 137-020-0020(3)(k), which provides:

> A dealer who sells or leases a motor vehicle to a consumer and makes any payment to any non-employee third-party in conjunction with the sale or lease, other than a referral fee of $100 or less (also known as a "bird-dog" payment), must specifically itemize such payment on the consumer's purchase order, lease agreement and retail installment contract.

Here, plaintiffs allege that defendants failed to disclose and itemize payments in excess of $100 made to third parties in exchange for plaintiffs' warranty contracts; this allegation mirrors the required disclosure of "any payment to any non-employee third-party" under the rule. *See* First Am. Comp. ¶¶ 16, 20, 29. Construing plaintiffs' allegations in a light most favorable to them, they assert a violation of this rule and state a claim under § 646.608(1)(u)..

In sum, I agree that plaintiffs' current allegations regarding third-party products do not state a claim under § 646.608(1)(e),(g), and (k), and I do not find that amendment would cure these defects given plaintiffs' allegations that defendants concealed payments or kickbacks.

11 – OPINION AND ORDER

However, if amended to clarify causation, plaintiffs' allegations could suffice to state plausible claims under § 646.608(1)(u).

  C. *Financial Abuse of Elders*

Finally, plaintiffs allege that the Lithia defendants wrongfully appropriated money from Carol Jocks, a person sixty-five years of age or older, in violation of Or. Rev. Stat. § 124.110(1).

To establish a claim for elder financial abuse, a plaintiff must show "(1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be wrongful." *Church v. Woods*, 190 Or. App. 112, 117, 77 P.3d 1150 (2003). In bringing this claim, plaintiffs rely on defendants' alleged TILA and UPTA violations. Defendants argue that the Jocks cannot establish a wrongful taking of money or property because they cannot establish a timely TILA claim or UTPA violations.

As explained above, the TILA claim survives this motion to dismiss, and, depending on the proposed amendments, the Jocks could assert a plausible UTPA claim. Accordingly, the motion to dismiss the elder financial abuse claim is denied at this time with leave to renew.

### III. CONCLUSION

For the reasons explained above, defendants' motion to dismiss (doc. 15) is GRANTED in part and DENIED in part with leave to renew. Plaintiffs' allegations defeat defendants' motion based on the statute of limitations at this stage of the proceedings. However, plaintiffs' allegations regarding third-party products and services do not support claims under Or. Rev. Stat. §§ 646.608(1)(e),(g), and (k) and those claims are DISMISSED. Further, plaintiffs' theories of ascertainable loss and causation with respect to vehicle financing and third-party products and services are unclear and do not state a claim for violation of the UTPA.

Within thirty (30) days, plaintiffs shall move to amend their complaint to clarify the

nature of the losses they suffered and explain how their losses were caused by each defendant's conduct.

IT IS SO ORDERED.

Dated this 11th day of January, 2017.

_____
Ann Aiken
United States District Judge

13 – OPINION AND ORDER