Jeremy D. Sacks, OSB No. 994262
jeremy.sacks@stoel.com
Keith E. McIntire, OSB No. 126210
keith.mcintire@stoel.com
Kennon Scott, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

      Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JOSEPH FRANK MENDOZA, MARTIN and CAROL JOCKS, DAWN CAVEYE, and GINA and DANA DALTON, individually and on behalf of all others similarly situated, | Case No.: 6:16-CV-1264 |
| Plaintiffs, | DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED |
| v. | |
| LITHIA MOTORS, INC., LITHIA FINANCIAL CORPORATION, SALEM-V, LLC d/b/a VOLKSWAGEN OF SALEM, LITHIA KLAMATH, INC. d/b/a LITHIA KLAMATH FALLS AUTO CENTER, and LITHIA MEDFORD HON, INC., | |
| Defendants. | |

DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF MAY BE GRANTED

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION ......................................................................................... 2

II.     BACKGROUND ............................................................................................. 3

        A.      Plaintiffs' Vehicle Purchases .............................................................. 3

        B.      Plaintiffs' TILA Claims ...................................................................... 5

        C.      Plaintiffs' UTPA Claims ..................................................................... 5

        D.      Plaintiffs' Common Law Fraud Claim ................................................ 6

III.    ARGUMENT ................................................................................................... 7

        A.      Legal Standard ..................................................................................... 7

                1.      Pleading Standard ................................................................... 7

        B.      The Court Can and Should Consider the Retail Installment Contracts in
                Deciding This Motion .......................................................................... 8

        C.      Plaintiffs Fail to State Claims Arising Under TILA ........................... 10

                1.      Plaintiffs Fail to State a TILA Claim Arising from the Sale of
                        Third-Party Products .............................................................. 11

                2.      Plaintiffs Fail to State a TILA Claim Arising from the Alleged
                        Existence of a Yield Spread Premium or a Flat Fee .............. 15

                3.      Plaintiffs Fail to State a UTPA Claim Arising from Alleged TILA
                        Violations by Defendants ....................................................... 18

        D.      Plaintiffs Fail to State a Claim for Common Law Fraud .................... 19

        E.      Plaintiffs Fail to State UTPA Claims Arising Under ORS 646.608(1)(a),
                (b), (c), (j), and (s) and OAR 137-020-0020(3)(u) ............................. 22

IV.     CONCLUSION ................................................................................................ 26

Page i    -    DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
                PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
                CLAIM UPON WHICH RELIEF MAY BE GRANTED

93502570.6 0063724-00041

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alcantar v. MML Investors Servs., Inc.*,
   No. 08-cv-041, 2008 WL 2570938 (D. Or. June 25, 2008)....................................8

*Alexander v. Cont'l Motor Werks, Inc.*,
   933 F. Supp. 715 (N.D. Ill. 1996) ........................................................................25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................7

*Baldwin v. Laurel Ford Lincoln-Mercury, Inc.*,
   32 F. Supp. 2d 894 (S.D. Miss. 1998)................................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................7

*Bell v. Muller*,
   118 P.3d 405 (Wash. Ct. App. 2005)..................................................................13

*In re Berjac of Or.*,
   538 B.R. 67 (D. Or. 2015) ......................................................................8, 19, 20

*Bey v. SolarWorld Indus. Am., Inc.*,
   904 F. Supp. 2d 1096 (D. Or. 2012) ...................................................................21

*Boncyk v. Cavanaugh Motors*,
   673 F.2d 256 (9th Cir. 1981) ..............................................................................11

*Colquitt v. Mfrs. & Traders Tr. Co.*,
   144 F. Supp. 3d 1219 (D. Or. 2015) .....................................................................7

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ..........................................................................8, 19

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ..............................................................................9

*Doe v. Successfulmatch.com*,
   No. 13-cv-03376, 2014 WL 1494347 (N.D. Cal. Apr. 16, 2014)...........................8

Page ii    -    DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
     PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
     CLAIM UPON WHICH RELIEF MAY BE GRANTED

# TABLE OF AUTHORITIES

Page

*Elizabeth Retail Props. LLC v. KeyBank Nat'l Ass'n*,
  83 F. Supp. 3d 972 (D. Or. 2015) ...............................................................8, 9, 21

*Ex parte Ford Motor Credit Co.*,
  717 So. 2d 781 (Ala. 1997) ................................................................................25

*Ford Motor Credit Co. v. Majors*,
  No. A04-1468, 2005 WL 1021551 (Minn. Ct. App. May 3, 2005) ................15, 17

*FTC v. Davison Assocs., Inc.*,
  431 F. Supp. 2d 548 (W.D. Pa. 2006) ................................................................24

*Gibson v. Bob Watson Chevrolet-Geo, Inc.*,
  112 F.3d 283 (7th Cir. 1997) ........................................................................13, 14

*Gosha v. Bank of N.Y. Mellon Corp.*,
  No. 3:16-CV-00073-BR, 2016 WL 7238927 (D. Or. Dec. 13, 2016) ...................21

*Hernandez v. Downey Sav. & Loan Ass'n*,
  No. 08CV2336, 2009 WL 704381 (S.D. Cal. Mar. 17, 2009) ..............................17

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ..............................................................................21

*Noel v. Fleet Fin., Inc.*,
  34 F. Supp. 2d 451 (E.D. Mich. 1998)..................................................................17

*Sayer v. Lincoln Nat'l Life Ins. Co.*,
  No. 7:05-CV-1423RDP, 2006 WL 6253201 (N.D. Ala. Oct. 12, 2006) ...............24

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ................................................................................8

*Stone v. Writer's Guild of Am. W., Inc.*,
  101 F.3d 1312 (9th Cir. 1996) ..............................................................................9

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ................................................................................8

*Whitlock v. Midwest Acceptance Corp.*,
  575 F.2d 652 (8th Cir. 1978) ..............................................................................11

93502570.6 0063724-00041

# TABLE OF AUTHORITIES

**Page**

*Willis v. Bank of Am. Corp.*,
    Civ. Action No. ELH-13-02615, 2014 WL 3829520 (D. Md. Aug. 1, 2014) ........................16

**Statutes**

15 U.S.C. § 1602(g) ...........................................................................................................11

15 U.S.C. § 1605(a) ...........................................................................................................16

15 U.S.C. § 1638(a) .......................................................................................................12, 16

15 U.S.C. § 1638(a)(2)(B) .................................................................................................12

15 U.S.C. § 1638(a)(2)(B)(iii) ..........................................................................................12

15 U.S.C. § 1638(a)(3).......................................................................................................16

ORS 646.608(1)(a)....................................................................................................... passim

ORS 646.608(1)(b) ...................................................................................................... passim

ORS 646.608(1)(c)....................................................................................................... passim

ORS 646.608(1)(j)........................................................................................................ passim

ORS 646.608(1)(s)....................................................................................................... passim

ORS 646.608(1)(u) ...................................................................................................... passim

Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* .......................................................... passim

Unfair Trade Practices Act, ORS 646.605, *et seq.*........................................................ passim

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................................7

Fed. R. Civ. P. 9(b) .............................................................................................7, 8, 19, 20

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 7, 8

Fed. R. Evid. 201(b)(2) .....................................................................................................21

Page iv  -   DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
    PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
    CLAIM UPON WHICH RELIEF MAY BE GRANTED
93502570.6 0063724-00041

# TABLE OF AUTHORITIES

**Page**

Local Rule 7-1.................................................................................................................1

## Regulations

12 C.F.R. pt. 226, supp. I, subpt. C.............................................................................13

12 C.F.R. § 226.1(b) .....................................................................................................11

12 C.F.R. § 226.1(c)(1) .................................................................................................11

12 C.F.R. § 226.2(a)(17) ...............................................................................................11

12 C.F.R. § 226.4(a) ......................................................................................................16

12 C.F.R. § 226.18 ...................................................................................................12, 16

12 C.F.R. § 226.18(c) ....................................................................................................13

12 C.F.R. § 226.18(c)(1) ...........................................................................................12, 14

12 C.F.R. § 226.18(c)(1)(iii) .....................................................................................12, 14

OAR 137-020-0020(3)(k) .............................................................................................2, 6

OAR 137-020-0020(3)(u) ........................................................................................ passim

OAR 137-020-0020(3)(u)(A) .........................................................................................26

OAR 137-020-0020(3)(u)(B) .........................................................................................26

OAR 137-020-0040(2).........................................................................................1, 6, 18, 26

## Other Authorities

Dee Pridgen & Richard M. Alderman, *Consumer Credit and the Law* § 6:11,
    Westlaw (database updated Nov. 2016).................................................................13

Page v  -   DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
            PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
            CLAIM UPON WHICH RELIEF MAY BE GRANTED

93502570.6 0063724-00041

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with Local Rule 7-1, counsel for defendants Lithia Motors, Inc., Lithia

Financial Corporation, Salem-V, LLC d/b/a Volkswagen of Salem ("Volkswagen of Salem"),

Lithia Klamath, Inc. d/b/a Lithia Klamath Falls Auto Center ("Lithia Klamath Falls"), and Lithia

Medford Hon, Inc. ("Lithia Medford") (collectively, "Defendants") made a good faith effort

through a telephone conference with counsel for plaintiffs Joseph Frank Mendoza, Martin and

Carol Jocks, Dawn Caveye, and Gina and Dana Dalton ("Plaintiffs") to resolve the disputed

matters and was unable to do so.

## <u>MOTION</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss with

prejudice:

  i. Plaintiffs' claims under the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), including Plaintiffs' claims under Oregon's Unfair Trade Practices Act, ORS 646.605, *et seq.* (the "UTPA"), based on purported violations by Defendants of OAR 137-020-0040(2) (through ORS 646.608(1)(u)), because those claims are entirely derivative of Plaintiffs' TILA claims;

  ii. Plaintiffs' common law fraud claim; and

  iii. Plaintiffs' UTPA claims based on purported violations by Defendants of ORS 646.608(1)(a), (b), (c), (j), and (s) and OAR 137-020-0020(3)(u) (through ORS 646.608(1)(u)).

This motion is based on Plaintiffs' Third Amended Complaint (the "TAC"); the

Declaration of Keith E. McIntire in Support of Defendants' Rule 12(b)(6) Partial Motion to

Dismiss Plaintiffs' Third Amended Complaint ("McIntire Decl.") and the exhibits thereto, filed

herewith; and the points and authorities herein.

Page 1    -    DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
                PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
                CLAIM UPON WHICH RELIEF MAY BE GRANTED

# MEMORANDUM OF AUTHORITIES

## I. INTRODUCTION

The parties are again before the Court on another Motion to Dismiss, this time to address the claims in Plaintiffs' Third Amended Complaint brought under TILA, several of the claims brought under the UTPA, and Plaintiffs' new common law fraud claim.[1] Prior to filing this Motion, Defendants undertook a lengthy conferral process with Plaintiffs, participating in multiple telephone conferences and even, at Plaintiffs' request, preparing and sending a detailed letter setting forth most of the arguments and case law in this Motion. (McIntire Decl. ¶ 3, Ex. 1.) But instead of grappling with the legal and other issues implicated by the claims in their Third Amended Complaint, Plaintiffs simply responded summarily that "the parties are viewing TILA (and disclosure requirements as a whole) from very different perspectives." (*Id.*, Ex. 2.) Had Plaintiffs actually grappled with the case law, statutory and regulatory authority, and factual matters raised by Defendants, they could have come to only one conclusion: the claims at issue here are fundamentally defective. They cannot survive dismissal.

As Plaintiffs well know, all of the TILA, UTPA, and fraud claims in the Third Amended Complaint that are at issue in this Motion are based on disclosures made (or not made) by Volkswagen of Salem, Lithia Klamath Falls, and Lithia Medford in the "retail installment contracts" entered into between Plaintiffs and those dealerships in each of the six vehicle purchase transactions that are at issue in this case. Plaintiffs repeatedly reference, describe, rely on, and otherwise incorporate the retail installment contracts -- and, in a handful of instances, even include screenshots of the documents -- in their pleading. Because Plaintiffs have put these

---

[1] As set forth below, in this Motion, Defendants move to dismiss all of Plaintiffs' claims other than Plaintiffs' UTPA claim brought under ORS 646.608(1)(u) and OAR 137-020-0020(3)(k) (*see* TAC ¶ 104.F) and Plaintiffs' claim under Oregon's Elder Abuse Statute (*see* TAC ¶¶ 119-21).

Page 2   -   DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

documents at issue in the Third Amended Complaint, the Court can -- and should -- consider them in determining whether Plaintiffs have stated the claims for relief at issue in this Motion.

When the Court does, it should conclude that each of these claims is ripe for dismissal. The plain text of the retail installment contracts establishes that Defendants made precisely the disclosures required under the law, which eviscerates Plaintiffs' TILA claims (and their corresponding, derivative UTPA claim based on Defendants' purported TILA violations). These documents also establish that Plaintiffs' common law fraud claim is fatally defective. Their theory of a misrepresentation concerning a purported "third party" supplier of lifetime oil policies purchased by some Plaintiffs is just wrong as a factual matter, and their pleading fundamentally fails to meet the heightened pleading burden required to state a fraud claim. Finally, the retail installment contracts and the case law show that the several additional UTPA provisions at issue in this Motion do not apply to the disclosures Plaintiffs allege were lacking. For all of these reasons, Defendants respectfully submit that the Court should dismiss all of the claims that are at issue in this Motion, with prejudice and without leave to replead.

## II. BACKGROUND

A.   **Plaintiffs' Vehicle Purchases.**

Plaintiffs each purchased a vehicle from Volkswagen of Salem, Lithia Klamath Falls, or Lithia Medford. In addition to purchasing vehicles, Plaintiffs also obtained or purchased various combinations of financing and third-party services or products such as vehicle service contracts, which Defendants facilitated. Specifically, Plaintiffs allege:

- On or about June 3, 2016, plaintiff Joseph Frank Mendoza purchased a vehicle at Volkswagen of Salem. (TAC ¶ 25.) The dealership arranged the financing of Mendoza's new vehicle, and Mendoza also purchased a vehicle service contract and gap insurance policy. (*Id.*)

- In February 2013, plaintiffs Martin and Carol Jocks purchased a vehicle from Lithia Klamath Falls. (*Id.* ¶ 40.) The dealership arranged the financing of the Jocks' new vehicle, and the Jocks also purchased a vehicle service contract, a lifetime oil policy, a gap insurance policy, and a credit life policy. (*Id.*)

- Evidently satisfied with their February 2013 vehicle purchase, the Jocks purchased a second vehicle from Lithia Klamath Falls in August 2013. (*See id.* ¶ 42.) The dealership again arranged the financing of the Jocks' new vehicle, and the Jocks again purchased a lifetime oil policy, a gap insurance policy, and a credit life policy. (*Id.*)

- On or about November 15, 2014, plaintiff Dawn Caveye purchased a vehicle at Lithia Medford. (*Id.* ¶ 53.) The dealership arranged the financing of Caveye's new vehicle, and Caveye also purchased a vehicle service contract. (*Id.*)

- Evidently satisfied with her November 2014 vehicle purchase, Caveye purchased a second vehicle from Lithia Medford on or about October 31, 2016. (*See id.* ¶ 54.) The dealership again arranged the financing of the Caveye's new vehicle, and Caveye again purchased a vehicle service contract and a gap insurance policy. (*Id.*)

- On or about May 1, 2016, plaintiffs Gina and Dana Dalton purchased a vehicle at Volkswagen of Salem. (*Id.* ¶ 65.) The dealership arranged the financing of the Daltons' new vehicle, and the Daltons also purchased a vehicle service contract. (*Id.*)

Plaintiffs claim that, in all of these transactions, Defendants "fail[ed] to disclose and in fact misrepresent[ed] the large profits they make when arranging financing and providing products from third parties." (*Id.* ¶ 22.) To address these alleged misrepresentations, Plaintiffs bring disclosure-based claims under TILA, the UTPA, and Oregon's Elder Abuse Statute, as well as a claim for common law fraud. Plaintiffs' TILA and UTPA claims are brought on behalf of all four sets of Plaintiffs. The claim for elder financial abuse is brought only on behalf of Martin and Carol Jocks. Although the common law fraud claim is pleaded as brought on behalf of all

Page 4    -    DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF MAY BE GRANTED

93502570.6 0063724-00041

four sets of Plaintiffs, as set forth below, it appears that this claim is brought only on behalf of the Jocks alone.  Each of Plaintiffs' claims is brought against all Defendants.[2]

## B.    Plaintiffs' TILA Claims.

Plaintiffs' TILA claims are disclosure-based.  Plaintiffs allege that Defendants "failed to comply with the disclosure requirements under [TILA]" by "fail[ing] to properly disclose to consumers that a portion of the amount paid" for both vehicle financing and third-party products "was retained by Lithia."  (TAC ¶¶ 93, 94 (First Cause of Action).)  Plaintiffs allege further that Defendants "did not itemize each amount that is or will be paid to third persons by [Defendants] on the consumer's behalf, together with an identification of or reference to the third persons." (*Id.* ¶ 94.)

## C.    Plaintiffs' UTPA Claims.

Plaintiffs' UTPA claims are also disclosure-based claims, and they also relate to both vehicle financing and Plaintiffs' purchases of third-party products other than vehicle financing. Plaintiffs plead several separate-but-overlapping bases for their UTPA claims, each of which they allege constitutes a "willful violation" of the UTPA by each Defendant.  First, with respect to third-party products, Plaintiffs allege that Defendants "fail[ed] to disclose to Plaintiffs the amounts of money paid to third parties (or represented to go to third parties) for third party products (and the amount Lithia kept or the amount kicked back to Lithia)."  (TAC ¶ 104 (Second Cause of Action, Count One).)  Plaintiffs allege that this purported failure by

---

[2] In the introduction to their Third Amended Complaint, Plaintiffs define the five Defendants as "Lithia or Lithia Defendants."  Each allegation contained thereafter is directed at "Lithia" or "Defendants."  However, Plaintiffs' claims appear to be directed towards Volkswagen of Salem, Lithia Klamath Falls, and Lithia Medford, the dealerships from which Plaintiffs purchased their vehicles.  Accordingly, Plaintiffs' claims against Lithia Motors, Inc. and Lithia Financial Corporation should be dismissed.  In the alternative, at a minimum, Plaintiffs should be required to specify which Defendants are the subjects of each allegation pleaded in the Third Amended Complaint.

Page 5    -    DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF MAY BE GRANTED

Defendants constitutes a violation of ORS 646.608(1)(a), (b), (c), (j), and (s), as well as OAR 137-020-0020(3)(k) (through ORS 646.608(1)(u)).  (*Id.*)

Second, with respect to arranging vehicle financing, Plaintiffs allege that Defendants "[failed] to clearly and conspicuously disclose to Plaintiffs that Lithia did in fact receive additional compensation from Plaintiffs for arranging financing in the form of fees or loan points."  (*Id.* ¶ 109 (Second Cause of Action, Count Two).)  Plaintiffs allege that this purported failure by Defendants constitutes a violation of ORS 646.608(1)(j) and (s), as well as OAR 137-020-0020(3)(u) (through ORS 646.608(1)(u)).  (*Id.*)

Third -- and wholly derivative of their TILA claims -- Plaintiffs allege that Defendants' alleged violations of TILA constitute violations OAR 137-020-0040(2) (through ORS 646.608(1)(u)).  (*Id.* ¶ 113 (Second Cause of Action, Count Three).)

**D.    Plaintiffs' Common Law Fraud Claim.**

For their common law fraud claim, Plaintiffs allege as follows: although Defendants represented that "some of the service products that they offered were provided by third parties," and that Defendants "further represented that the Plaintiffs [were] paying certain third parties for such service products (*i.e.*, lifetime oil service), and identified such payment in their retail installment contracts," the service products were in fact provided by Defendants themselves, and the payments Plaintiffs made for the service products were kept by Defendants instead of paid to "third parties."  (*See* TAC ¶¶ 122-123 (Fourth Cause of Action).)  In other words, Plaintiffs allege that Defendants misrepresented that the lifetime oil contracts purchased by the Jocks -- who are the only plaintiffs who purchased lifetime oil contracts -- were supplied by "third parties," when those lifetime oil contracts were provided by one or more of the Defendants themselves.

## III.  ARGUMENT

**A.    Legal Standard.**

**1.    Pleading Standard.**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard requires the pleader to present facts that demonstrate "more than a sheer possibility" that defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff."  *Colquitt v. Mfrs. & Traders Tr. Co.*, 144 F. Supp. 3d 1219, 1223 (D. Or. 2015) (citation omitted).

The pleading standard set out in Federal Rule of Civil Procedure 8 -- which applies to Plaintiffs' TILA and UTPA claims -- "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "A complaint also does not suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Colquitt*, 144 F. Supp. 3d at 1223 (brackets in original) (quoting *Twombly*, 550 U.S. at 557).

Plaintiffs' fraud claim is subject to the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Fraud allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charges so that they can defend against the charge and not just deny that they

have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also*

*Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (a plaintiff alleging fraud must plead the

"who, what, when, where, and how" establishing his claim). Further,

> [w]here several defendants are sued in connection with an alleged
> fraudulent scheme, the plaintiff must identify the role of each
> defendant in the scheme. Conclusory allegations that defendants
> were acting in concert, acting as agents, or were active participants
> in the conspiracy, without any stated factual basis, are insufficient
> as a matter of law. Rule 9(b) does not allow a complaint to merely
> lump multiple defendants together, but requires plaintiffs to
> differentiate their allegations when suing more than one defendant
> and inform each defendant separately of the allegations
> surrounding his alleged participation in the fraud. Moreover, in the
> context of a fraud suit involving multiple defendants, a plaintiff
> must, at a minimum, identify the role of each defendant in the
> alleged fraudulent scheme.

*In re Berjac of Or.*, 538 B.R. 67, 74 (D. Or. 2015) (alterations, internal quotation marks, and

citations omitted) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007); *Alcantar*

*v. MML Investors Servs., Inc.*, No. 08-cv-041, 2008 WL 2570938, at *5 (D. Or. June 25, 2008)).

As set forth below, Plaintiffs' Amended Complaint fails to satisfy these standards.

**B.    The Court Can and Should Consider the Retail Installment Contracts in Deciding This Motion.**

As a threshold matter, in deciding this Motion, the Court can and should consider the

retail installment contracts signed by each Plaintiff during their vehicle purchases.

"While district courts generally may not consider any material beyond the pleadings in

ruling on a Rule 12(b)(6) motion, they may take judicial notice of documents referenced in the

complaint, pleadings from other relevant proceedings, as well as matters in the public record,

without converting a motion to dismiss into one for summary judgment." *Elizabeth Retail*

*Props. LLC v. KeyBank Nat'l Ass'n*, 83 F. Supp. 3d 972, 984 (D. Or. 2015) (citing *Doe v.*

*Successfulmatch.com*, No. 13-cv-03376, 2014 WL 1494347, at *2 n.2 (N.D. Cal. Apr. 16,

2014)). "Importantly, the Ninth Circuit has 'extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance.'" *Id.* (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)); *see also Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1313-14 (9th Cir. 1996) (considering collective bargaining agreement that was not attached to complaint in deciding motion to dismiss, and reciting Ninth Circuit rule that documents not attached to a complaint are not "outside" the complaint if they are referred to in the complaint and the authenticity of the documents is not questioned) (citation omitted).

Plaintiffs quote from, reference, rely on, and otherwise incorporate the retail installment contracts signed by each Plaintiff during their vehicle purchases into their Third Amended Complaint. The retail installment contract for each vehicle purchase is the principal document that contains the text that Plaintiffs allege gives rise to their claims. Plaintiffs directly reference the retail installment contracts throughout the TAC, in support of each of their claims that a required disclosure was purportedly missing, or a purported misrepresentation was made. (*See, e.g.*, TAC ¶ 30 ("Lithia failed to clearly and conspicuously disclose to Mendoza the actual amount paid to third parties and failed to disclose that Lithia was in fact retaining a portion of the amount disclosed in the Retail Installment Contract."); *see also id.* ¶¶ 38, 40, 42, 105, 106, 122 (additional references to disclosures in the retail installment contracts).) Indeed, for Caveye's and the Daltons' vehicle purchases, Plaintiffs even include screenshots of the retail installment contracts. (*See id.* ¶¶ 53, 54, 65.) The Court should consider these documents in deciding this Motion.

Page 9  -  DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF MAY BE GRANTED

**C.    Plaintiffs Fail to State Claims Arising Under TILA.**

Plaintiffs bring TILA claims arising directly under federal law, along with a UTPA claim

predicated on Defendants' alleged TILA violations.  (*See* TAC ¶¶ 89-98, 113-118.)  Plaintiffs

premise their TILA claims on two types of alleged behavior by Defendants.  First, with respect to

Defendants' sales of third-party products, Plaintiffs allege that Defendants:

> failed to properly disclose to consumers that a portion of the
> amount paid was retained by Lithia.  Lithia did not itemize each
> amount that is or will be paid to third persons by the creditor on the
> consumer's behalf, together with an identification of or reference
> to the third persons.  Lithia also did not disclose that it did in fact
> retain a portion of the "amount paid to others."

(*Id.* ¶ 94.)

Second, with respect to arranging financing, Plaintiffs allege that Defendants:

> retained a "yield spread premium" . . . without making the proper
> disclosures.  Alternatively, Lithia retained a "dealer reserve" -- an
> amount kicked back to Lithia by the financial institutions that
> arranged the financing to the Plaintiffs.  Lithia failed to clearly and
> conspicuously disclose to Plaintiffs the existence of the yield
> spread premium or "dealer reserve" that were [*sic*] paid or received
> in relation to arranging financing for the Plaintiffs.

(*Id.* ¶ 95.)[3]

Plaintiffs' allegations do not state claims arising under TILA.  The retail installment

contracts quoted, referenced, relied on, and incorporated by Plaintiffs in the Third Amended

---

[3] The term "dealer reserve" or "dealer participation" often is used in the industry and the case law (and by Defendants) as a synonym for "yield spread premium" or a similar amount representing the difference between two interest rates.  The Complaint, however, appears to use the term "dealer reserve" not to describe a "yield spread premium" but rather to describe a "flat fee."  A "flat fee" is a term used by dealership Defendants to denote a set fee a dealership may receive from a financial institution *instead* of a yield spread premium when the consumer finances his or her vehicle purchase through that financial institution.  Therefore, for clarity, in this Memorandum Defendants use the term "flat fee" rather than "dealer reserve" to denote this set fee.  Moreover, Defendants do *not* use the term "flat fee" as a synonym for the term "acquisition fee" or any other type of fee accruing to the lending institution and passed on to the consumer.

Page 10  -  DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
                PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
                CLAIM UPON WHICH RELIEF MAY BE GRANTED

93502570.6 0063724-00041

Complaint establish that Defendants made all required TILA disclosures.  For this reason, the Court should dismiss all of Plaintiffs' TILA claims, with prejudice and without leave to replead.

### 1.    Plaintiffs Fail to State a TILA Claim Arising from the Sale of Third-Party Products.

Plaintiffs' first type of TILA claim asserts that Defendants violated TILA because they did not properly itemize the amounts paid for the third-party products and did not state how much of the price a Plaintiff paid for the product was retained by the dealership.  This claim must fail because, as Plaintiffs' retail installment contracts demonstrate, the dealership Defendants made all of the disclosures mandated by TILA and its implementing regulations, known as "Regulation Z."

TILA and Regulation Z "promote the informed use of consumer credit by requiring disclosures about its terms and cost."  12 C.F.R. § 226.1(b).  TILA also includes "substantive protection" for consumers, *id*., but it only applies to certain individuals and businesses that offer or extend credit.  *Id*. § 226.1(c)(1).  As used in TILA, the term "creditor" means someone who regularly extends credit subject to a finance charge or is payable by a written agreement in more than four installments (not including a down payment) and to whom the obligation is initially payable.  *See* 15 U.S.C. § 1602(g); 12 C.F.R. § 226.2(a)(17).  When a consumer purchases an automobile from a dealership pursuant to a retail installment contract, the *dealership* is the "creditor" that is regulated by TILA.  *See, e.g., Boncyk v. Cavanaugh Motors*, 673 F.2d 256 (9th Cir. 1981) (auto dealer extending credit to consumer is a "creditor" under TILA); *Whitlock v. Midwest Acceptance Corp.*, 575 F.2d 652 (8th Cir. 1978) (auto dealer was a "creditor" under TILA because it was an arranger of credit).  Here, the dealership Defendants -- Volkswagen of Salem, Lithia Klamath Falls, and Lithia Medford -- are creditors within the meaning of TILA.  Lithia Motors, Inc. and Lithia Financial Corporation are not, because, among other reasons, they

Page 11  -    DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
                PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
                CLAIM UPON WHICH RELIEF MAY BE GRANTED

are not the entities to whom Plaintiffs' credit obligations are owed under the relevant retail

installment contracts.  (*See generally* McIntire Decl. Exs. 3-8 (retail installment contracts

between vehicle purchasers and dealerships).)[4]

A complete list of the items TILA requires a creditor to disclose is found in both the

statute and Regulation Z.  *See*, *e.g.*, 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18.  That list includes

items such as the "amount financed," the "finance charge," the "annual percentage rate," and the

like.  15 U.S.C. § 1638(a); 12 C.F.R. § 226.18.  As relevant to Plaintiffs' TILA claim relating to

third-party products, Regulation Z lists all of the line items that a creditor such as Volkswagen of

Salem (in Mendoza's case, for example) must include in its "itemization of the amount financed"

on the retail installment contract.  12 C.F.R. § 226.18(c)(1); *see also* 15 U.S.C. § 1638(a)(2)(B)

(creditor must provide statement of consumer's right to itemization of amount financed with

categories listed therein).  The "itemization of the amount financed" must include the amount of

any proceeds distributed directly to the consumer, the amount credited to the consumer's account

with the creditor, and the prepaid finance charge.  12 C.F.R. § 226.18(c)(1); 15 U.S.C. §

1638(a)(2)(B).  The following requirement is particularly relevant here:  the written itemization

must include "[a]ny amounts paid to other persons by the creditor on the consumer's behalf.  The

creditor shall identify those persons."  12 C.F.R. § 226.18(c)(1)(iii); 15 U.S.C. §

1638(a)(2)(B)(iii).

---

[4] For this reason, Lithia Motors, Inc. and Lithia Financial Corporation are not proper
TILA defendants.  At a minimum, all TILA-based claims against Lithia Motors, Inc. and Lithia
Financial Corporation must be dismissed with prejudice, even if the Court ultimately determines
that Plaintiffs have stated TILA-related claims against Volkswagen of Salem, Lithia Klamath
Falls, and Lithia Medford.  And for the same reason, all UTPA claims against Lithia Motors, Inc.
and Lithia Financial Corporation that arise from alleged TILA violations by these Defendants
also must be dismissed with prejudice.  *See infra* Section III.E.

Page 12 -    DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
             PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
             CLAIM UPON WHICH RELIEF MAY BE GRANTED

The Federal Reserve, Regulation Z's implementing agency, provides useful guidance addressing precisely the situation at issue here:

> A sum is sometimes added to the amount of a fee charged to a consumer for a service provided by a third party (such as for an extended warranty or a service contract) that is payable in the same amount in comparable cash and credit transactions. In the credit transaction, the amount is retained by the creditor. Given the flexibility permitted in meeting the requirements of the amount financed itemization (see the commentary to § 226.18(c)), the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category "amount paid to others" language such as "we may be retaining a portion of this amount."

12 C.F.R. pt. 226, supp. I, subpt. C (discussion of para. 18(c)(1)(iii)).

Thus, contrary to Plaintiffs' position, TILA does *not* require the creditor dealership to disclose what portion, if any, it retains of the total sales price a consumer pays for a third-party product. TILA requires only that the dealership disclose the fact that it *may* be retaining *some* portion of that sales price. The Seventh Circuit addressed precisely this issue in *Gibson v. Bob Watson Chevrolet-Geo, Inc.,* 112 F.3d 283, 285-86 (7th Cir. 1997). Reviewing the Federal Reserve's guidance, Judge Posner explained that "[t]he only sensible reading of the commentary is as authorizing the dealer to disclose only the fact that he is retaining a portion of the charge, rather than the exact amount of the retention." *Id*. at 286. Other courts have embraced this rule, including the Washington Court of Appeals, a neighboring jurisdiction. *See Bell v. Muller*, 118 P.3d 405, 412 (Wash. Ct. App. 2005) (citing *Gibson* and holding that a dealership's retention of an undisclosed portion of a fully disclosed Product sales price complies with TILA, because "a simple disclosure that the dealer may retain a portion of the amount paid to third persons is sufficient"); *see also generally* Dee Pridgen & Richard M. Alderman, *Consumer Credit and the Law* § 6:11, Westlaw (database updated Nov. 2016) (explaining that itemization need not

Page 13  -  DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF MAY BE GRANTED

disclose the amount of the upcharge, only that an upcharge may exist, and noting "this issue was settled rather definitively" in *Gibson*).

The dealership Defendants fully complied with Regulation Z, including *Gibson*'s "definitive" explanation of 12 C.F.R. § 226.18(c)(1)(iii). Each of the three dealerships used a version of the same retail installment contract form.[5] In the section entitled "ITEMIZATION OF THE AMOUNT FINANCED," each of the Plaintiffs' contracts discloses four required items listed in 12 C.F.R. § 226.18(c)(1), to the extent they apply, and each complies in full with the Federal Reserve guidance and *Gibson*. For example, in Mendoza's transaction, Volkswagen of Salem plainly lists the required itemization disclosures under the following heading:

> 4. Charges Other than Finance Charge, including Amounts Paid to Others on My Behalf: ( * Seller may be retaining a portion of this amount)

(McIntire Decl., Ex. 3 at 1.) That is exactly the language recommended by the Federal Reserve commentary and endorsed by *Gibson*. And that language, denoted by an asterisk, is flagged on *each* of the third-party products purchased by Mendoza. In other words, the dealerships made the required itemization disclosures on Mendoza's retail installment contract, as well as each of the other relevant contracts. (*See* McIntire Decl., Exs. 3-8, at 1.) Contrary to Plaintiffs' allegations, the dealership Defendants were not required to disclose whether they actually retained any of the Product's price, or the portion of that price they retained.

For the foregoing reasons, Plaintiffs fail to state a TILA claim based on sales of third-party products.

---

[5] Although the form of the retail installment contract used in the Dalton transaction is slightly different than the one used in the other transactions, it too contains the required TILA disclosures outlined by the Federal Reserve and endorsed by *Gibson*. (*See* McIntire Decl., Ex 8.)

Page 14  -  DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93502570.6 0063724-00041

2.    **Plaintiffs Fail to State a TILA Claim Arising from the Alleged Existence of a Yield Spread Premium or a Flat Fee.**

Plaintiffs' allegations relating to nondisclosure of the yield spread premium or flat fee amount also fail to state a claim under TILA. A yield spread premium is the difference between the interest rate offered by a lender to the dealer for a specific transaction, on one hand, and the interest rate offered by the dealer to the consumer on the same transaction, on the other hand. *See generally Ford Motor Credit Co. v. Majors,* No. A04-1468, 2005 WL 1021551, at *1 (Minn. Ct. App. May 3, 2005) (explaining idea of yield spread premium in auto sale context). As understood by Lithia, a flat fee is the amount the dealer may receive from a financial institution instead of a yield spread premium when the consumer finances his or her vehicle purchase through that financial institution.

TILA does not require a dealership (*i.e.,* the TILA "creditor") to disclose to the consumer the yield spread premium or flat fee, should either exist in a particular transaction (some transactions have neither). As explained above, TILA and Regulation Z very clearly set forth the disclosures that the dealership must make for each automobile transaction of this nature, and the list includes neither the yield spread premium nor the flat fee:

- The identity of the creditor.

- The amount financed, calculated by: determining the principal loan amount or the cash price (subtracting any down payment); adding any other amounts that are not financed by the creditor and are not part of the finance charge; and subtracting any prepaid finance charge.

- The itemization of the amount financed (discussed above).

- The finance charge.

- The annual percentage rate (and the variable rate, if applicable).

- The payment schedule.

Page 15  -    DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

- The total number of payments.

- The demand feature (if applicable).

- The total sale price.

- The prepayment penalty (if any).

- The late payment charge (if any).

- The fact that the creditor has or will acquire a security interest.

- Insurance and debt cancellation.

- Certain security interest charges.

- Contract references.

- Required deposit (if applicable).

12 C.F.R. § 226.18; *see also* 15 U.S.C. § 1638(a) (substantially the same list).

As discussed at length above, the dealership Defendants have disclosed all the information required by 12 C.F.R. § 226.18.  As relevant to Plaintiffs' allegations here, 12 C.F.R. § 226.4(a) defines the "finance charge" as "the cost of consumer credit as a dollar amount.  It includes any charge payable *directly or indirectly* by the consumer and imposed *directly or indirectly* by the creditor as an incident to or a condition of the extension of credit."  *Id.* § 226.4(a) (emphasis added); *see also* 15 U.S.C. § 1605(a) (substantively identical definition of "finance charge").

In other words, the finance charge includes any yield spread premium, and neither the statute nor regulations require a separate disclosure of its existence.  TILA states plainly that the finance charge disclosure is "not itemized," 15 U.S.C. § 1638(a)(3), and the relevant case law is clear that "TILA does not require a lender to break down the components of the finance charge to disclose the separate existence of a yield spread premium," *Willis v. Bank of Am. Corp.*, Civ. Action No. ELH-13-02615, 2014 WL 3829520, at *16 (D. Md. Aug. 1, 2014); *see also*

Page 16  -  DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
              PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
              CLAIM UPON WHICH RELIEF MAY BE GRANTED

*Hernandez v. Downey Sav. & Loan Ass'n*, No. 08CV2336, 2009 WL 704381, at *7 (S.D. Cal. Mar. 17, 2009) ("TILA and its implementing regulations do not require lenders to disclose a [yield spread premium] as part of a loan's finance charge or to explain its impact on a loan's interest rate."); *Noel v. Fleet Fin., Inc.*, 34 F. Supp. 2d 451, 457 (E.D. Mich. 1998) (although the yield spread premium serves to increase the rate of interest, "a lender is not required to break down the components of the finance charge to disclose the separate existence of the yield spread premium as a component of the finance charge," in part because "to disclose separately the yield spread premium and/or other components of the finance charge would violate Federal Reserve Board regulations by presenting the consumer with confusing multiple figures rather than the required lump-sum finance charge"); *Baldwin v. Laurel Ford Lincoln-Mercury, Inc.*, 32 F. Supp. 2d 894, 904 (S.D. Miss. 1998) ("The defendants were not required to disclose . . . the assignment of the loan agreement at less than its face value.").

Nor does TILA require disclosure of a flat fee. "[T]he required disclosure must provide only a statement showing the total dollar amount the *credit will cost*." *Majors*, 2005 WL 1021551, at *6 (emphasis added). However, the flat fee is not part of the cost of credit to the consumer. Rather, it is an amount *paid in certain instances by a financial institution to the dealership* when a consumer chooses to finance his or her vehicle through that financial institution. Therefore, the dealership does not and cannot pass the flat fee on to the consumer as part of the cost of credit. For that reason, the flat fee is not on the list of required TILA disclosures or part of the finance charge, the amount financed, or the total sales price paid by the consumer. In other words, TILA does not regulate the flat fee. And even if it did, the same logic that applies to Plaintiffs' yield spread premium claim applies here: TILA does not require the creditor dealership to break down the components of the finance charge.

Page 17  -  DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
            PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
            CLAIM UPON WHICH RELIEF MAY BE GRANTED

The contracts at issue here made all required TILA disclosures, including but not limited to the finance charge and the annual percentage rate.  (*See* McIntire Decl., Exs. 3-8, at 1-2.)  The retail installment contracts even disclose in boldface that:

> **The Annual Percentage Rate may be negotiable with Seller.**
> **The Seller may assign this contract and retain its right to**
> **receive a part of the finance charge.**

(*Id*., Exs. 3-8 at 2 (emphasis in original).)  At a minimum, this disclosure indicates that the dealership may have a right to receive part of the finance charge.  Because the contracts are not required to disclose the existence of a yield spread premium or flat fee paid to the dealership, this is more than sufficient.

For the foregoing reasons, Plaintiffs also have failed to state a TILA claim based on the alleged nondisclosure of a yield spread premium or flat fee.

**3.    Plaintiffs Fail to State a UTPA Claim Arising from Alleged TILA Violations by Defendants.**

In the third count of their UTPA claim, Plaintiffs allege that the purported TILA violations by Defendants also "constitute violations of the UTPA pursuant to OAR 137-020-0040(2)."  (TAC ¶¶ 113-18.)  ORS 646.608(1)(u) provides that a defendant violates the UTPA if it "[e]ngages in any other unfair or deceptive conduct in trade or commerce" listed in the relevant sections of the Oregon Administrative Rules.  OAR 137-020-0040(2) provides that violations of TILA also constitute violations of the UTPA.  Because Plaintiffs fail to state TILA claims, they also fail to state a claim under OAR 137-020-0040(2).  This claim also should be dismissed with prejudice.

**D.**      **Plaintiffs Fail to State a Claim for Common Law Fraud.**

Plaintiffs' common law fraud claim is both insufficiently pleaded and unsupportable on the face of the very documents -- the retail installment contracts -- on which Plaintiffs base their claim.  For each of these reasons, it should be dismissed with prejudice.

As set forth above, for their fraud claim, Plaintiffs appear to allege that Defendants defrauded Plaintiffs by representing in retail installment contracts that the lifetime oil contracts sold to Plaintiffs were supplied by "third parties" when, instead, those lifetime oil contracts were provided by the Defendants themselves.  (TAC ¶¶ 122, 123.)  Because the Jocks are the only plaintiffs alleged to have purchased lifetime oil contracts, *see id.* ¶¶ 40, 42, the Jocks' two vehicle purchases from Lithia Klamath Falls are the only transactions at issue in Plaintiffs' fraud claim.

Plaintiffs' allegations are insufficient to support a fraud claim against any of the Defendants.  As a preliminary matter, Plaintiffs fail to satisfy the heightened pleading standard under Rule 9(b) because they do not plead "the who, what, when, where, and how" of their fraud claim with the required specificity.  *Cooper*, 137 F.3d at 627.  They do not identify which Plaintiffs bring claims or which transactions are implicated, and they provide scarcely any detail as to what specific misrepresentations are at issue.  (*See* TAC ¶¶ 122-24.)  Further, Plaintiffs bring their fraud claims against *all* Defendants, and they make no effort whatsoever to "'identify the role of each Defendant in the alleged fraudulent scheme'" and "'inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"  *In re Berjac of Or.*, 538 B.R. at 74 (citations omitted).  Indeed, each and every allegation in Plaintiffs' fraud claim is directed at "Defendants" or "Lithia."  (*See* TAC ¶¶ 122-24.)  Such impermissible

"lump[ing]" of "multiple defendants together" is alone fatal to Plaintiffs' fraud claim.  *In re Berjac of Or.*, 538 B.R. at 76.

Yet, even if the TAC somehow were read to satisfy the heightened pleading standard of Rule 9(b), Plaintiffs' fraud claim is baseless.  This fact is made clear on the face of the retail installment contracts for the Jocks' two vehicle purchases.

The relevant retail installment contracts, which are between the Jocks and Lithia Klamath Falls only, include a detailed "itemization of the amount financed," which breaks down the total amount financed for the vehicle purchase.  (*See* McIntire Decl., Exs. 4-5, at 1.)  As explained above, this breakdown includes a number of entries under the following heading:

> 4.  Charges Other than Finance Charge, including Amounts Paid to
> Others on My Behalf: ( * Seller may be retaining a portion of this
> amount)

(*Id.*)  Under that heading, along with line items for certain third-party products, fees, and taxes, the retail installment contract includes the following line item for "other charges":

> j.  Other Charges (Seller must identify who will receive payment
> and describe purpose -- including negative trade equity here) *

(*Id.*)  In the retail installment contract for the Jocks' February 2013 vehicle purchases, this line item includes an entry for an $899 payment to "DMS" for "LITHIA LIFETI," which corresponds to Plaintiffs' allegation elsewhere in their Third Amended Complaint that the Jocks purchased a lifetime oil policy for $899 as part of their February 2013 vehicle purchase.  (McIntire Decl., Ex. 4, at 1; TAC ¶ 40.)  In the retail installment contract for the Jocks' August 2013 vehicle purchases, this line item includes an entry for an $899 payment to "DMS" for "Lifetime Oil," which similarly corresponds to Plaintiffs' allegation that the Jocks purchased a lifetime oil policy for $899 as part of their August 2013 vehicle purchase.  (McIntire Decl., Ex. 5, at 1; TAC ¶ 42.)  With this background, Plaintiffs appear to allege that the Jocks have been defrauded because the

retail installment contracts identify DMS as the supplier of the policies, but the policies were in fact supplied by Defendants.

These disclosures do not support a fraud claim for one simple reason: *DMS is the same entity as Lithia Motors, Inc.* More specifically, DMS is an abbreviation of Dealer Mechanical Services, which in turn is an assumed business name ("ABN") of Lithia Motors, Inc. that is registered with the Oregon Secretary of State. (*See* McIntire Decl., Exs. 9, 10.)[6] This incontrovertible fact alone defeats Plaintiffs' fraud claim. Instead of containing "false representations" regarding who supplied the lifetime oil policies purchased by the Jocks (and who was paid to supply those policies), the retail installment contracts for the Jocks' two vehicle purchases accurately disclose precisely who Plaintiffs allege supplied the policies: Lithia Motors, Inc.

Moreover, Plaintiffs' allegations that the retail installment contracts "represent that [the lifetime oil policies] were provided by third parties" and that Defendants "are paying [those] third parties" the full purchase price for the lifetime policies, TAC ¶ 122, are wrong. The retail

---

[6] In addition to considering the retail installment contracts, Defendants respectfully request that the Court take judicial notice of the Oregon Secretary of State records attached as Exhibits 9 and 10 to the McIntire Declaration. "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (in deciding a motion to dismiss, "a court may take judicial notice of matters of public record" (internal quotation marks and citation omitted)). Records from the Oregon Secretary of State fall squarely within this category. *See, e.g., Gosha v. Bank of N.Y. Mellon Corp.,* No. 3:16-CV-00073-BR, 2016 WL 7238927, at *4 (D. Or. Dec. 13, 2016) (granting party's request that the court "take judicial notice of 'Business Entity Data' for [co-parties] from the Oregon Secretary of State Corporation Division database"); *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1096, 1098 (D. Or. 2012) (taking judicial notice of records from Oregon Secretary of State website). Finally, as is the case with the retail installment contracts, review of this judicially noticed material does not convert Defendants' Motion into a motion for summary judgment. *See Elizabeth Retail Props.*, 83 F. Supp. 3d at 984 (courts "may take judicial notice of . . . matters in the public record, without converting a motion to dismiss into one for summary judgment").

Page 21  -  DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF MAY BE GRANTED

installment contracts do not "represent that [the lifetime oil policies] were provided by third

parties." Instead, the amounts paid by the Jocks for their lifetime oil policies are listed under the

heading "charges other than finance charge, *including* amounts paid to others on [the Jocks']

behalf." (McIntire Decl., Exs. 4-5, at 1 (emphasis added).) The reference to third-party "others"

is contained in an inclusive clause, not an exhaustive one requiring that *all* payments listed under

the heading be paid to third parties.[7] The retail installment contracts at issue also do not

represent that Lithia Klamath Falls would retain the entire amount paid by the Jocks for their

lifetime oil policies. To the contrary, the retail installment contracts each make clear that Lithia

Klamath Falls "may be retaining a portion of this amount." (*Id.*)

In sum, Plaintiffs' allegation that Defendants defrauded Plaintiffs by somehow

misrepresenting the supplier of the Jocks' lifetime oil contracts is unsupportable, and Plaintiffs'

fraud claim should be dismissed with prejudice.

**E.    Plaintiffs Fail to State UTPA Claims Arising Under ORS 646.608(1)(a), (b), (c), (j), and (s) and OAR 137-020-0020(3)(u).**

Plaintiffs' UTPA claims under ORS 646.608(1)(a), (b), (c), (j), and (s) and OAR 137-

020-0020(3)(u) also should be dismissed with prejudice.

Plaintiffs' claims that Defendants somehow violated ORS 646.608(1)(a), (b), and (c) with

respect to the sale of third-party products should be dismissed for the same reason as their fraud

claim. ORS 646.608(1)(a) provides that a defendant violates the UTPA if it "[p]asses off real

estate, goods or services as the real estate, goods or services of another." ORS 646.608(1)(b)

---

[7] It also bears repeating that the retail installment contracts for the Jocks' two vehicle purchases are between the Jocks and Lithia Klamath Falls only. Accordingly, DMS/Lithia Motors, Inc. is not a party to the retail installment contracts. In this sense, even if the plain language of the relevant heading in the retail installment contracts -- "charges other than finance charge, including amounts paid to others on [the Jocks'] behalf" -- were somehow read to require that any entities listed thereunder be "third parties," DMS/Lithia Motors, Inc. is such a "third party" vis-à-vis Lithia Klamath Falls for the purposes of the vehicle purchases at issue.

Page 22 -    DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
             PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
             CLAIM UPON WHICH RELIEF MAY BE GRANTED

provides that a defendant violates the UTPA if it "[c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services."  ORS 646.608(1)(c) provides that a defendant violates the UTPA if it "[c]auses likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another."  As with their fraud claim, Plaintiffs' theory with respect to these UTPA claims is based solely on the premise that DMS is an unrelated "third party."  (*See* TAC ¶ 106 (repeating allegation that lifetime oil policies "were represented as being a third party product but were not").)  But this premise is incorrect.  DMS is an ABN of Lithia Motors, Inc. Plaintiffs' UTPA claims ORS 646.608(1)(a), (b), and (c) are completely baseless and should be dismissed.

Plaintiffs' claims that Defendants violated ORS 646.608(1)(j) with respect to both arranging Plaintiffs' financing and the sale of third-party products also should be dismissed, because that provision does not apply to the disclosures Plaintiffs allege were lacking. ORS 646.608(1)(j) provides that a defendant violates the UTPA if it "[m]akes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions."  Plaintiffs do not allege any "price reductions" of any sort, and this provision of the UTPA is wholly inapplicable to their claims.

Plaintiffs' claims that Defendants violated ORS 646.608(1)(s) with respect to both arranging Plaintiffs' financing and the sale of third-party products also should be dismissed. ORS 646.608(1)(s) provides that a defendant violates the UTPA if it "[m]akes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services."  The only "representations of fact concerning the offering price [or] cost" of the financing obtained by Plaintiffs or the third-party products Plaintiffs elected to

Page 23  -   DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
               PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
               CLAIM UPON WHICH RELIEF MAY BE GRANTED

purchase that are alleged by Plaintiffs and that could be the basis of their claim under

ORS 646.608(1)(s) are the allegations that Defendants earned a fee for arranging Plaintiffs'

financing and retained some portion of the price of the third-party products purchased by

Plaintiffs as profit.

The clear disclosures contained in the retail installment contracts, as set forth above,

show that Plaintiffs have no claim under ORS 646.608(1)(s).  Far from making any false or

misleading representations about the amounts paid by Plaintiffs (and retained by Defendants) for

third-party products, *see* TAC ¶¶ 104-07, the retail installment contracts state plainly that

Volkswagen of Salem, Lithia Klamath Falls, and Lithia Medford "may be retaining a portion of

[those] amounts."  (McIntire Decl, Exs. 3-8, at 1.)  And, as set forth above, far from "failing to

clearly and conspicuously disclose to Plaintiffs that Lithia did in fact receive additional

compensation from Plaintiffs for arranging financing in the form of fees or loan points," TAC

¶ 109, the retail installment contracts disclose in boldface that "[t]he Seller may assign this

contract and retain its right to receive a part of the finance charge."  (McIntire Decl., Exs. 3-8, at

2.)  Further, if ORS 646.608(1)(s) is read to give rise to a UTPA claim any time a seller of real

estate, goods, or services does not disclose its internal pricing and profit margins to the buyer, it

would extend to virtually every sale of real estate, goods, and services in Oregon.  This absurd

result was not the intent of Oregon's legislature, and courts in other jurisdictions have reached

the same conclusion with respect to similar statutes.  *See, e.g., FTC v. Davison Assocs., Inc.*, 431

F. Supp. 2d 548, 563 (W.D. Pa. 2006) (holding that it was not a deceptive practice for defendants

to "refuse to reveal the specific amount of money made by the[ir] product"); *Sayer v. Lincoln*

*Nat'l Life Ins. Co.*, No. 7:05-CV-1423RDP, 2006 WL 6253201, at *4 (N.D. Ala. Oct. 12, 2006)

(defendant insurer "had no duty to disclose its pricing structure to Plaintiff upon her purchase" of

Page 24  -   DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
             PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
             CLAIM UPON WHICH RELIEF MAY BE GRANTED

an annuity); *Ex parte Ford Motor Credit Co.*, 717 So. 2d 781, 787 (Ala. 1997) ("declin[ing] to recognize a common law duty that would require the seller of a good or service, absent special circumstances, to reveal to its purchaser a detailed breakdown of how the seller derived the sales price of the good or service, including the amount of profit to be earned on the sale"); *see also Alexander v. Cont'l Motor Werks, Inc.*, 933 F. Supp. 715, 718 (N.D. Ill. 1996) (under TILA, a creditor retaining a portion of an extended warranty charge "is not required to disclose the exact amount it is retaining").

Finally, Plaintiffs' claims that Defendants violated OAR 137-020-0020(3)(u) (and ORS 646.608(1)(u)) with respect to arranging Plaintiffs' financing also should be dismissed.  OAR 137-020-0020(3)(u) sets forth the circumstances in which a "yield spread premium disclosure" may constitute a violation of the UTPA:

> (u)  Yield Spread Premium Disclosure -- Any dealer or broker that charges a consumer a yield spread premium:
>
> > (A)  Shall clearly and conspicuously disclose in writing, prior to the consumer applying for credit or executing a purchase order, lease agreement or retail installment contract:
> >
> > > (i)  That the dealer or broker may receive additional compensation from the consumer for arranging the sale of the retail installment contract which may be in the form of a fee or additional loan points; and
> > >
> > > (ii)  That interest rates quoted by the dealer or broker may be negotiable; and
> >
> > (B)  Shall not, during the negotiation for the sale or lease of a motor vehicle, quote a monthly payment calculated using an interest rate that is more than three points higher than the buy rate, unless the dealer or broker discloses in writing the yield spread premium to the consumer, if the dealer or broker quoting the rate knows the consumer's credit score or has the ability to obtain the consumer's credit score at the time the monthly payment is quoted.

As set forth above, the retail installment contracts signed by Plaintiffs "clearly and conspicuously disclose" exactly what is required in subsection (A), stating:

> **The Annual Percentage Rate may be negotiable with Seller.**
> **The Seller may assign this contract and retain its right to**
> **receive a part of the finance charge.**

(*Id*., Exs. 1-6 (emphasis in original).)  With respect to subsection (B), Plaintiffs do not (and cannot) allege that any of their vehicle purchases involved a yield spread premium of more than three percentage points.[8]  Plaintiffs have no claim under OAR 137-020-0020(3)(u).

For these reasons, Plaintiffs fail to state supportable claims under ORS 646.608(1)(a), (b), (c), (j), and (s) and OAR 137-020-0020(3)(u) and those claims should be dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' TILA claims (including Plaintiffs' claim under OAR 137-020-0040(2)), Plaintiffs' common law fraud claim, and Plaintiffs' UTPA claims premised on purported violations by Defendants of ORS 646.608(1)(a), (b), (c), (j), and (s) and OAR 137-020-0020(3)(u), with prejudice and without leave to amend, and order such other and further relief as the Court may deem appropriate.

DATED:  July 28, 2017.

STOEL RIVES LLP

 s/ Jeremy D. Sacks
JEREMY D. SACKS  OSB No. 994262
KEITH E. MCINTIRE  OSB No. 126210
KENNON SCOTT, OSB No. 144280
Telephone:  (503) 224-3380

*Attorneys for Defendants*

---

[8] The provision in subsection (B) of OAR 137-020-0020(3)(u) -- that a creditor dealership must disclose the existence of a yield spread premium *only* where the difference between the buy rate and sell rate exceeds three percentage points -- is wholly consistent with the fact that, under typical circumstances, a creditor dealership is *not* required to disclose the particulars of a yield spread premium to a vehicle purchaser.  *See supra* Section III.C.2.

Page 26  -  DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF MAY BE GRANTED