**BONNER C. WALSH**
Oregon State Bar ID Number 131716
bonner@walshpllc.com
WALSH LLC
PO Box 7
Bly, Oregon 97622
Phone          541.359.2827
Facsimile      866.503 8206

**JACK E. MCGEHEE**
Oregon State Bar ID Number 160400
jmcgehee@lawtx.com
McGehee, Chang, Barnes, Landgraf
10370 Richmond Ave, Suite 1300
Houston, Texas 77042
Phone          713.864.4000
Facsimile      713.868.9393

**Special Counsel for Plaintiffs**
(Additional counsel appear on signature page)

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **JOSEPH FRANK MENDOZA, MARTIN and CAROL JOCKS, DAWN CAVEYE, and GINA and DANA DALTON,** individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>**LITHIA MOTORS, INC., LITHIA FINANCIAL CORPORATION, SALEM-V, LLC d/b/a VOLKSWAGEN OF SALEM AND LITHIA KLAMATH, INC. d/b/a LITHIA KLAMATH FALLS AUTO CENTER, and LITHIA MEDFORD HON, INC.** | CIVIL ACTION NO. 6:16-CV-1264<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED; OR, ALTERNATIVELY, REQUEST FOR LEAVE TO AMEND THE COMPLAINT** |

Defendants.

# Table of Contents

I.      INTRODUCTION ................................................................................................ 7

II.     FACTUAL BACKGROUND ............................................................................. 8

III.    ARGUMENTS AND AUTHORITIES ............................................................. 11

   A.   Rule 12(b)(6) Motion and the Pleading Requirements .................................... 11

   B.   Defendants' First Challenge: The TILA Claims .............................................. 12

        i: Disclosure Concerning the Third-Party Products ........................................ 13

             a. Lithia's Disclosures are Not Clear ..................................................... 18

             b. Lithia's Disclosures are Not Conspicuous ........................................ 19

        ii: TILA Disclosure Concerning Yield Spread Premium .................................. 22

        iii: The State Law Claims (UTPA Claims) Arising from TILA Claims ........................ 27

   C.   Defendants' Second Challenge: The Fraud Claim ............................................ 27

   D.   Defendants' Third Challenge: The UTPA Claims Under ORS 646.608(1)(a), (b), (c), (j),
        and (s) and OAR 137-020-0020(30(u) .......................................................... 31

        Plaintiffs' Objection To Defendants' Failure to Comply with Local Rules .................... 31

        i: Defendants' Challenges to the O.R.S. § 646.608(1)(a), (b), and (c) claims ................ 32

        ii. Defendants' Challenge to the O.R.S. § 646.608(1)(j) claim .......................... 33

        iii: Defendants' Challenge to the O.R.S. § 646.608(1)(s) claim ....................... 34

        iv: Defendants' Challenge to the O.R.S. § 646.608(1)(u) claim ....................... 35

        v.Summary of the UTPA Claims ................................................................. 40

   F.   Plaintiffs' Alternative Request for Leave to Amend ...................................... 41

IV.    CONCLUSION .................................................................................................. 41

PRAYER.................................................................................................................. 43

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Gen. Fin., Inc. v. Basset (In re Bassett),* 285 F.3d 882 (9th Cir.2002).................................. 17

*Andrews v. Chevy Chase Bank,* No. 05C0454 (E.D. Wis. Jan. 16, 2007) ............................. 16, 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................... 10

*Baldwin v. Laurel Ford Lincoln-Mercury, Inc.*, 32 F.Supp.2d 894 (S.D. Miss. 1998) ............... 23

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir.1990)................................... 39

*Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821 (9th Cir. 2009)........................ 9

*Barnes v. Fleet Nat'l Bank,* 370 F.3d 164 (1st Cir. 2004)............................................ 16

*Barrer v. Chase Bank USA, NA*, 566 F.3d 883 (9th Cir. 2009) ...................................... 17

*Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998). ................................................ 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 9

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009).............................................................. 10

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ................................ 10

*Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir.1990) .................................................................................................................... 39

*Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 566 P.2d 1177 (1977).......................... 38

*Doe v. United States*, 58 F.3d 494 (9th Cir.1995)........................................................ 39

*Fairley v. Turan–Foley Imports, Inc.*, 65 F.3d 475 (5th Cir. 1995) ................................ 11

*Felonenk v. Siomka*, 637 P.2d 1338 (1981) ................................................................ 28

*Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283 (7th Cir. 1997)............................ 12, 24

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

P a g e | **3**

*Handy v. Anchor Mortgage Corp.,* 464 F.3d 760 (7th Cir. 2006) .................................. 16

*Hernandez v. Downey Sav. & Loan Ass'n*, No. 08CV2336, 2009 WL 704381 (S.D. Cal. Mar. 17, 2009) ........................................................................................................................ 22

*Jones v. Bill Heard Chevrolet, Inc.*, 212 F. 3d 1356 (11th Cir., 2000)......................... 12

*Meade v. Cedarrapids, Inc.*, 164 F.3d 1218 (9th Cir.1999) ......................................... 28

*Millikin v. Green*, 583 P.2d 548 (1978) ...................................................................... 28

*Mourning v. Family Publications Serv. Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) .................................................................................................................... 10

*Noel v. Fleet Fin., Inc.*, 34 F.Supp.2d 451 (E.D. Mich. 1998) .................................... 22

*Rand Corp. v. Yer Song Moua,* 559 F.3d 842 (8th Cir. 2009) ..................................... 16

*Raudebaugh v. Action Pest Control, Inc.*, 59 Or.App. 166, 171, 650 P.2d 1006 (1982)............. 38

*Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208 (9th Cir. 1957)................................... 9

*Rivera v. Grossinger Autoplex, Inc.,* 274 F.3d 1118 (7th Cir.2001)............................................ 16

*Rogan v. Menino*, 175 F.3d 75 (1st Cir. 1999) ........................................................... 9

*Rosenblum v. Johnson & Johnson*, 275 Or.App. 23, 362 P.3d 1197 (2015) ............... 38

*Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010) ....................................... 17

*Smith v. Check-N-Go of Ill., Inc.,* 200 F.3d 511 (7th Cir.1999).................................... 16

*U.S. ex. rel. Brusco Tug & Barge v. Coast Dredging & Marine, Inc.*, 2002 WL 31496425 (D. Oregon. 2002).................................................................................................... 28

*Willis v. Bank of Am. Corp.*, Civ. Action No. ELH-13-02615, 2014 WL 3829520 (D. Md. Aug. 1, 2014) ........................................................................................... 22

**Statutes**

12 C.F.R. § 226.1(a)................................................................................................. 11

12 C.F.R. § 226.17(a)(1)........................................................................................... 15

12 C.F.R. §226.18(c)(1)(iii) ...................................................................................... 12

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

P a g e | **4**

15 U.S.C. § 1601(a) ................................................................................... 10

15 U.S.C. § 1632(a) ................................................................................... 15

15 U.S.C. § 1638 ......................................................................................... 5

15 U.S.C. §1605(a)(6) ................................................................................ 22

15 U.S.C. §1638(a) .................................................................................... 21

15 U.S.C. §1638(a)(2)(B)(iii) .................................................................... 12

O.R.S. § 646.605 ......................................................................................... 5

O.R.S. § 646.608(1)(a), (b), (c) ................................................................ 30

O.R.S. § 646.608(1)(j) .............................................................................. 31

O.R.S. § 646.608(1)(s) .............................................................................. 32

O.R.S. § 646.608(1)(u) ............................................................................. 36

O.R.S. § 646.608(2) .................................................................................. 38

O.R.S. § 646.608(1)(u) ............................................................................. 25

**Rules**

12 C.F.R. Pt. 226, Supp. I, par. 17(a)(1), cmt. 1 ...................................... 16

Fed. R. Civ. P. 8(a)(2) ............................................................................... 38

LR 7-1(a)(1)(A) ........................................................................................ 30

OAR 137-020-0020(2)(j) ......................................................................... 16

OAR 137-020-0020(3)(u)(A)(1) ............................................................... 34

OAR 137-020-0020(3)(u)(A), (B) ............................................................ 36

OAR 137-020-0020(3)(u)(B) .................................................................... 35

OAR 137-020-0040(2)(j) ......................................................................... 17

ORS 71.2010(2)(j) ................................................................................................................ 17

**Regulations**

12 C.F.R. §226.18(e) ........................................................................................................... 21

61 F.R. 26126, 26127 (1996) ............................................................................................. 22

## I.    INTRODUCTION

1.    This is now the Defendants' second 12(b)(6) motion to dismiss.  After their first attempt,

Defendants now alleged a variety of new theories to attack the Plaintiffs' claims.

2.    The instant case pertains to the unfair and deceptive financial practices and the hidden and

inflated fees that the Defendants charged onto the consumers.  To summarize, Defendants misled

the consumers by:

> a.    Inflating the price of various third-party service products (generally, by 150% of
>     the underlying cost) and pocketing this mark-up, while representing to the
>     consumers that these amounts are being paid to the third-parties; and
>
> b.    Inflating the consumer's interest rate – e.g. when the consumer is approved for X%
>     APR by a financial institution, the Defendants would instead charge the consumers
>     X+Y%, and pocketing the difference (Y%).

These hidden mark-ups were charged without the consumers' knowledge or consent.  Plaintiffs

contend that the Defendants' actions violate, *inter alia*, the Federal Truth in Lending Act (15

U.S.C. § 1638) and Oregon's Unlawful Trade Practices Act (O.R.S. § 646.605).

3.    In their motion, the Defendants do not dispute the fact that they overcharged consumers

with these hidden mark-ups, or the lack of disclosure of same.  Defendants' motion instead argues

that they did not need to disclose such hidden mark-ups under their interpretation of federal and

state law.  However, because the Defendants created contradictory misrepresentations to the

Plaintiff consumers in their documentations, and that they failed to disclose the *true* Annual

Percentage Rate (APR), they have failed to meet the requirements of TILA.  Further, as set forth

below, the Defendants have made additional misrepresentations to the consumers and violated

various provisions of the Oregon UTPA – another consumer protection statute.  Accordingly,

Plaintiffs respectfully request the Court to enter an order denying the Lithia Defendants' second 12(b)(6) motion to dismiss.

## II.    FACTUAL BACKGROUND

4.    Plaintiffs Joseph Frank Mendoza ("Mendoza"), Martin and Carol Jocks ("the Jocks"), Dawn Caveye ("Caveye"), Gina and Dana Dalton ("the Daltons") (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, brought this class action.[1]

5.    Plaintiffs are consumers who purchased vehicles and related products from the Defendants. Defendants Lithia Motors, Inc., Lithia Financial Corporation, Salem-V, LLC d/b/a Volkswagen of Salem, Lithia Klamath, Inc. d/b/a Lithia Klamath Falls Auto Center, and Lithia Medford Hon, Inc. (collectively referred to as "Lithia Defendants" or simply "Lithia") are a nationwide car dealership network, headquartered in the State of Oregon.[2]

6.    Upon information and belief, all of these entities are operated as one single business enterprise, that they are subsidiaries of, and are owned, operated, and controlled by Defendant Lithia Motors, Inc. – the mothership; and the financing of these vehicles was arranged through Defendant Lithia Financial Corporation, which is also owned, operated and controlled by Defendant Lithia Motors, Inc.[3]

7.    To summarize the Plaintiffs' claims against the Lithia Defendants – there are two major items:

> (1):    Third-party products sold by the Lithia Defendants with amounts to be paid to others, and
> (2):    Yield Spread Premium ("YSP") in relation to car loans financed via the Lithia Defendants.

---

[1] See Plaintiffs' Third Amended Complaint, paragraphs 1-4.
[2] See Plaintiffs' Third Amended Complaint, paragraphs 5-9.
[3] See Plaintiffs' Third Amended Complaint, paragraphs 13-14.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Plaintiffs recently discovered that the Lithia Defendants have engaged in systemic and widespread predatory practices in their dealing with consumers, as explained below.[4]

### A.  The Third-Party Products

8.     For the third-party products: Lithia would sell a service/insurance product, and represent to the Plaintiff consumers that this product is from a third-party.  For example: in the case of Plaintiff Mendoza, Lithia (specifically, Defendant Salem-V) sold him a "service contract" for the amount of $2,495.00.[5,6]  On the Retail Installment Contract ("RIC") with the consumer, Lithia identified this amount as an amount paid to another company – "JMA," the purported provider of the service contract.  Specifically, Lithia represented to the consumer that the $2,495 paid was "…Amounts Paid to Others on My Behalf." [7]

9.     What Lithia did not disclose to the Plaintiff consumer, however, was the fact that the purported "Amounts Paid to Others on My Behalf" was in fact kept mostly by Lithia.  Lithia had since admitted in discovery that Lithia actually kept 60% ($1,500) of this fee, and forwarded only 40% ($995) of it to JMA.  Lithia essentially inflated the cost of this product <u>by</u> 150% ($1,500 v. $995):[8]

|   | Cost to JMA: | $995 |
|---|---|---|
| + | *Lithia's cut*: | $1,500 |
|   | Total: | $2,495 |

10.    Further, the representation of this fee was being "Paid to Others" on the consumer's behalf was false – the bulk of this fee was paid to Lithia itself.

---

[4] See Plaintiffs' Third Amended Complaint, paragraphs 22-74.
[5] See Plaintiffs' Third Amended Complaint, paragraph 25, 26, 30, 31, 34.
[6] See Defendants' Exhibit 3, page 1.  For each Defense Exhibit, Plaintiffs have provided a clean version with no mark-ups as Exhibits C through H to the Declaration of Young Walgenkim.
[7] See Plaintiffs' Third Amended Complaint, paragraph 26.
[8] *Id*.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

11.     In their motion, the Lithia Defendants do not dispute that this is their policy and practice.[9] Instead, their position is that there is a sentence in the RIC, which states "Seller may retain a portion of this amount (i.e. the $2,495)." Lithia Defendants claim that this is sufficient even though it contradicts other language.

### B. The Yield Spread Premium, or Dealer Reserve

12.     In addition, Lithia also misrepresented financing details to the Plaintiff consumers who obtained vehicle financing through it. Lithia is in fact getting a kickback from the third-party financing institutions. In the case of Plaintiffs the Daltons, Lithia (specifically, Defendant Salem-V) told them that they qualified for an annual percentage rate of 8.99%.[10] When, in reality, the Daltons actually qualified for a lower percentage – which the Plaintiffs believe was 6.99%.[11] The difference between the two percentages was then pocketed by Lithia – without the Daltons' knowledge, or consent.

13.     On the other hand, rather than charge a percentage, sometimes the Lithia Defendants would instead charge a flat fee, known as the "dealer reserve." In the case of Plaintiff Mendoza, the Lithia Defendants (specifically, Defendant Salem-V) told Mendoza that he qualified for 3.94% interest rate. When, in reality, the Lithia Defendants obtained a secret kickback of $622.70 from the lending institution that approved the loan to the Plaintiff.[12] This amount ($622.70) is roughly equivalent to two percent (2%) of the total amount financed by Plaintiff Mendoza.[13]

---

[9] In fact, one of the General Managers J.J. Hunsaker admitted that this is Lithia's policy during his deposition. See Exhibit A to the Declaration of Young Walgenkim, Hunsaker Deposition P. 13, ln. 2-6.
[10] See Plaintiffs' Third Amended Complaint, paragraph 66.
[11] The actual percentage remains to be determined during discovery.
[12] See Plaintiffs' Third Amended Complaint, paragraph 27.
[13] Plaintiff Mendoza financed $31,336 for the purchase of his vehicle through the Lithia Defendants. See Defendants' Exhibit 3, page 2, Amount Financed.

14.    In their motion, the Lithia Defendants also do not deny the above facts.  Lithia in fact admitted to the upcharges and/or kickbacks inflicted upon the Plaintiff consumers.  The Defendants, however, claim that they did not have a duty to disclose same to the Plaintiff consumers under TILA.

### C.  Summary

15.    The Lithia Defendants' position, however, is fundamentally unfair and is what federal and state law aimed to avoid – burdening the consumer with hidden upcharges and kickbacks, as well as concealing the facts from the consumers.  In reality, the consumer did not and will never know that they were charged a shockingly disproportionate kickback.  Therefore, based on the above and for reasons set forth below, Plaintiffs respectfully request the Court to enter an order denying Lithia's motion.

### III.    ARGUMENTS AND AUTHORITIES

### A.    Rule 12(b)(6) Motion and the Pleading Requirements

16.    A motion to dismiss for failure to state a claim upon which relief may be granted is viewed with disfavor in the federal courts.  *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 213 (9th Cir. 1957).  The primary objective of the law is to obtain a determination of the merits of any claim; and that a case should be tried on the proofs rather than the pleadings.  *Id.*

17.    When considering a defendant's motion to dismiss, a court must construe the factual allegations in the complaint in the light most favorable to the plaintiff.  *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  The court will assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability.  *Rogan v. Menino*, 175 F.3d 75, 77 (1st

Cir. 1999).  If the complaint provides fair notice of the claim and the factual allegations are

sufficient to show that the right to relief is plausible, a court should deny the defendant's motion.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555-56; *Brooks v. Ross*,

578 F.3d 574, 581 (7th Cir. 2009).

18.    Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of

what the ... claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78

S.Ct. 99, 2 L.Ed.2d 80 (1957).[14]  A complaint attacked by a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations.  *Id*.

### B.    Defendants' First Challenge: The TILA Claims

19.    In their motion, the Lithia Defendants first challenged the Plaintiffs' TILA claim.  In

response, it is helpful to first address the fundamentals of TILA.

20.    The purpose of the TILA is to protect the consumer from inaccurate and unfair credit

practices, and "…to assure a meaningful disclosure of credit terms so that the consumer will be

able to compare more readily the various credit terms available to him and avoid the uninformed

use of credit." 15 U.S.C. § 1601(a). The Supreme Court explained:

> "The TILA reflects a transition in congressional policy from a philosophy of 'Let
> the buyer beware' to one of 'Let the seller disclose.' By erecting a barrier between
> the seller and the prospective purchaser in the form of hard facts, Congress
> expressly sought 'to ... avoid the uninformed use of credit.'"

---

[14] The Rule itself provides:
      (a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:
          …
          (2) a short and plain statement of the claim showing that the pleader is entitled to relief;
          and
          …
Fed. R. Civ. P. 8(a)(2).

*Mourning v. Family Publications Serv. Inc.*, 411 U.S. 356, 377, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973). The statute "requires creditors to provide borrowers with clear and accurate disclosures of terms." *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998).

21. Pursuant to the grant of authority by Congress, the Board of Governors of the Federal Reserve System promulgated Regulation Z. *See* 12 C.F.R. § 226.1(a). As noted by another Circuit:

> "Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. §§ 226.18, 226.22.
> To promote the Act's purpose of protecting consumers, our court has made clear that creditors must comply strictly with the mandates of the TILA and Regulation Z.
> Only adherence to the strict compliance standard will promote standardization of terms which will permit consumers readily to make meaningful comparisons of available credit alternatives. Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation."

*Fairley v. Turan–Foley Imports, Inc.*, 65 F.3d 475, 479 (5th Cir. 1995). The *Fairley* opinion also explained, that, "[c]onsistent with its purpose, the statute is meant to be construed liberally in favor of the consumer." *Id.*, at 479–80. "The remedial scheme of TILA is designed to deter generally illegalities which are only rarely uncovered and punished, and not just to compensate borrowers for their actual injuries in any particular case." *Id.*

### i: Disclosure Concerning the Third-Party Products

22. The Lithia Defendants begin their motion by claiming that they provided all of the information required by TILA and Regulation Z in the Retail Installment Contract ("RIC") with the consumers. Although, the Defendants candidly admitted that, of the above statute and rule,

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

P a g e | 13

that the following requirement is "particularly relevant" – namely, the disclosure of the written itemization must include:

> "[a]ny amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons."

(See Defendants' motion, pages 12, citing 12 C.F.R. §226.18(c)(1)(iii); 15 U.S.C. §1638(a)(2)(B)(iii)).

23.　　In their motion, the Lithia Defendants do not dispute the fact that they did <u>not</u> itemize the amount paid to other persons *or* the amount kept by Lithia. Instead, the Defendants claim that they are only required to state that they *may* be retaining a portion of the amount that they said was being paid "others." The Lithia Defendants point to a sentence buried in the RIC fine print, which reads:

> " * Seller may be retaining a portion of this amount"

(See Defendant's Exhibit 3, paragraph 4).[15] The Lithia Defendants claim to have relied on the commentary published by the Federal Reserve Board (FRB), as well as a foreign case from the Seventh Circuit, *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285-86 (7th Cir. 1997).[16]

24.　　First, commentaries "[do] not abrogate or affect in any way the clear statutory requirement in TILA's section 1638(a)(2)(B)(iii) that the creditor shall disclose accurately the amount paid to third parties." *Jones v. Bill Heard Chevrolet, Inc.*, 212 F. 3d 1356, 1362 (11th Cir., 2000).

---

[15] In fact, the Lithia Defendants had to highlight this sentence in bold red, just so that it could be identified out of the four pages of fine print.
[16] The Defendants did not cite, nor are the Plaintiffs able to find, any Ninth Circuit authority that ruled on this particular issue.

25.    Even if the Lithia Defendants were allowed to bypass the explicit language of the statute that required itemization, and only state that they "may be retaining a portion," they have compromised it by including conflicting, confusing representations to mislead the consumer.  The *Gibson* Court explained that:

> "…the only sensible reading of the commentary is as authorizing the dealer to disclose only the fact that he is retaining a portion of the charge, rather than the exact amount of the retention. Even this is a considerable stretch of the statute; and it is as far as, if not farther than, the statute will stretch."

*Gibson*, 112 F.3d at 286 (emphasis added).

26.    However, the Lithia Defendants make further contradictory representations that go beyond the commentary, and result in a stretch further than what TILA allows. Lithia represents the following in its RIC:

> " c. Cost of Optional Service Contract <u>paid to the Company named above</u> (covers certain repairs) * ………………….. <u>$ 2495.00</u> "

(See Defendants' Exhibit 3, page 1, paragraph 4c) (emphasis added).  Then, the RIC further identified the follow:

> "**Optional Service Contract**.  The cost of this contract is shown in 4c of the Itemization below.
> Company   <u>    JMA                                        </u>
> Term: <u>5           </u>                    $<u>100.00</u> Deductible"

(See Defendants' Exhibit 3, page 1, middle right of the page).  These statements contradict and cloud the "may be retaining" language that Lithia relies on.  For the convenience of the Court, an image of the relevant sections of the RIC is identified below:

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

P a g e | 15

Use for which purchased: ☒ Personal    ☐ Commercial    ☐ Agricultural

**Insurance and Protection.** If any insurance or protection is checked below, the policies or certificates issued by the Companies named below describe the terms and conditions.

**Optional Insurance.** Credit life insurance, credit disability insurance and other optional insurance are not required to obtain credit and will not be provided unless I sign for them and agree to pay the additional cost. If I have chosen this insurance, the cost is shown in 4a of the Itemization below. Credit life insurance is based upon the payment schedule and the term of this contract. This insurance may not pay all I owe on this contract if I make late payments. Disability insurance covers the original payment amount for the term of this contract. If I make late payments, disability insurance will not pay all of my payments. The amount and coverages are shown in a notice or agreement given on this date.

☐ Credit Life (Buyer ☐ Co-Buyer ☐ Both☐)    Term N/A   Premium $ N/A   Insurer N/A   Insured(s) N/A
☐ Credit Disability, Accident and Health (Buyer only)   Term N/A   Premium $ N/A   Insurer N/A   Insured N/A
☐ (Type of Other insurance) N/A   Term N/A   Premium $ N/A   Insurer N/A   Insured N/A

I want the insurance coverage(s) checked above, and I know that it is not required to obtain credit:

_____ N/A _____

Buyer Signature _____ Date _____

Co-Buyer Signature _____ N/A ____ Date _____

**Required Physical Damage Insurance.** Physical damage insurance is required, but I may obtain it from anyone I choose. If purchased through you from the Insurance Company named below, the cost of this insurance, for the term shown immediately below, is shown in 4b of the Itemization below.

Insurance Company _____ Term: N/A months
☐ $ N/A   Deductible Collision and either:
   ☐ Full Comprehensive including Fire, Theft and Combined Additional Coverage
   ☐ $ N/A   Deductible Comprehensive including Fire, Theft and Combined Additional Coverage
   ☐ Fire, Theft and Combined Additional Coverage

**Optional Gap Contract.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the [...] charge. If you choose to buy a gap contract, the charge is shown in ite[...] the Itemization of Amount Financed. See your gap contract for details of [...] terms and conditions it provides. It is a part of this contract.

Term _____ Mos.

Name of Gap Contract _____
I want [...] gap contract.
Buyer Signs X _____    06/03/2016

**Optional Service Contract.** The cost of this contract is shown in 4c of the Itemization below.
Company _____ JHA _____
Term: _____    $ 100.00 Deductible

**Optional Mechanical Breakdown Protection.** The cost of this protection is shown in 4d of the Itemization of Amount Financed.
Company ____ N/A ____
Term: N/A   $ N/A Deductible

**Unless a charge for Liability Insurance is included in the itemization of amount financed, any insurance referred to in this contract does not include coverage for personal liability, bodily injury and property damage caused to others.**

ITEMIZATION OF AMOUNT FINANCED

1. Cash Sale Price (including any accessories) ................................................................................. $   29990.00  (1)
2. Downpayment: (If 2d is negative, enter 0 at 2d and enter the negative amount in line 4k below)
   a. Cash Downpayment ....................................................................................... $   N/A
   b. Manufacturer's Rebate (if applicable) ................................................................. $   N/A
   c. Deferred Downpayment (Pickup Pymt), due  N/A  , on which there's no finan[...] charge, of ... $   N/A
   d. Gross Trade-in: Value $ 16500.00  Less owing $ 14354.00  Net $ 2146.00  ............ $   2146.00
      Description of Trade-in: 2005 SUBA   Lien Payoff To: [...]TED COMMU
   Total Downpayment (a+b+c+d) (also put this figure on the downpayment line in the Total Sale [...]ax below) (Do not include 2d if negative) ..... $   2146.00  (2)
3. Unpaid Balance of Cash Sale Price (1-2) ...................................................................... 27844.00 (3)
4. Charges other than Finance Charge, including Amounts Paid to Others on My Behalf: ( * Seller may be retaining a portion of this amount)
   a. Cost of Optional Insurance for the Term of this Contract paid to Insurance Company(ies) named above.*
      Credit Life $ N/A   Credit Disability, Accident and Health $ N/A   Other $ N/A  ..... $   N/A
   b. Cost of required Physical Damage Insurance paid to the Insurance Company named above (covers damage to the vehicle) *  $   N/A
   c. Cost of Optional Service Contract paid to the Company named above (covers certain repairs) *.....  $   2495.00
   d. Cost of Optional Mechanical Breakdown Protection paid to the Company named above (covers certain repairs) *............  $   N/A
   e. Cost of Optional Gap Contract* ........................................................................ $   695.00
   f. License / Registration Fees paid to government agencies ...................................... $   110.00
   g. Title Fees paid to government agencies ............................................................ $   77.00
   h. DEQ Certification fee paid to government agencies ............................................ $   N/A
   i. Title & Registration Processing Fee paid to Seller $ 115.00 , Optional Electronic Filing Fee paid to Seller $ N/A  $   115.00
   j. Sales Tax / Excise Tax paid to government agencies ........................................... $   N/A
   k. Other Charges (Seller must identify who will receive payment and describe purpose - include negative trade equity here) *

EXHIBIT 3
Page 1 of 4

27.    First, the representation that $2495 was paid to "the Company named above" is false

(paragraph 4).  The Lithia Defendants admitted that only $995 – or 40% of the $2495 – was.  The

majority of the amount (60% of the $2495) was kept by the Lithia Defendants.  Nonetheless, the

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

P a g e | **16**

Lithia Defendants claim that the sentence "Seller may be retaining a portion of this amount" eliminates the falsity. That, defies logic.

28.    The term "MAY" means one of two things: either the seller **IS** or the seller **IS NOT** retaining a portion of this amount. Which way would a normal person read it? The seller IS or the seller IS NOT. To read it as the seller IS, creates a conflict with the language saying $2495 was paid to others. So that reading does not work. To read it as the seller IS NOT, makes the two statements consistent. And when the two statements are consistent, a TILA violation results. The Lithia Defendants' argument only works when the statements are read as contradictory. Again, this is nonsense.

29.    The misrepresentation is further buttressed by the other section of the RIC, in which the Lithia Defendants represent that the party receiving the $2495 is "Company    JMA        ." The RIC identified no other parties or individuals under that section, but merely identified the cost and the payee. Put together, the Lithia Defendants create a false impression that the cost is being paid solely to this third-party "JMA." That, of course, is false.

Said simply: the Lithia Defendants cannot on one hand say they "may be retaining a portion," and, on the other hand, insert another sentence to represent that they did not so retain, and another sentence to suggest that the amount was solely paid to a third party. To do so would nullify the effect of the first representation altogether.

30.    This contradiction or confusion that Lithia creates is in effect is a violation of the "clear and conspicuous" requirement under TILA. All of the required disclosures under TILA must be clear and conspicuous. 12 C.F.R. § 226.17(a)(1); 15 U.S.C. § 1632(a). "This standard requires that disclosures be in a reasonably understandable form.... the disclosures must be presented in a

way that does not obscure the relationship of the terms to each other."  12 C.F.R. Pt. 226, Supp. I, par. 17(a)(1), cmt. 1.

### a. Lithia's Disclosures are Not Clear

31.     To be a clear disclosure, it must be in a "reasonably understandable form." *See Id.* "The sufficiency of TILA-mandated disclosures is determined from the standpoint of the ordinary consumer." *Rivera v. Grossinger Autoplex, Inc.,* 274 F.3d 1118, 1121-22 (7th Cir.2001) (citing *Smith v. Cash Store Mgmt., Inc.,* 195 F.3d 325, 327-28 (7th Cir.1999)). "If a disclosure is capable of more than one plausible interpretation, it is not clear." *Andrews v. Chevy Chase Bank,* No. 05C0454 (E.D. Wis. Jan. 16, 2007); *see also Handy v. Anchor Mortgage Corp.,* 464 F.3d 760, 764 (7th Cir. 2006); *Smith v. Check-N-Go of Ill., Inc.,* 200 F.3d 511, 515 (7th Cir.1999).  The Oregon rules specifically requires that "at a minimum [the disclosure] not contradict or substantially alter any terms it purports to clarify, to explain or to which it otherwise relates. OAR 137-020-0020(2)(j). Even if the creditor makes one disclosures that is correct and clear, making another conflicting disclosure violates the clear and conspicuous standard of TILA. *See, e.g., Rand Corp. v. Yer Song Moua,* 559 F.3d 842, 848 (8th Cir. 2009). Thus, "a misleading disclosure is as much a violation of TILA as a failure to disclose at all.'" *Barnes v. Fleet Nat'l Bank,* 370 F.3d 164, 174 (1st Cir. 2004) (quoting *Smith v. Chapman,* 614 F.2d 968, 977 (5th Cir.1980)).

32.     As shown above, Lithia made conflicting or confusing statements that creates more than one plausible interpretation in its RIC. By stating that Lithia *may be* retaining a portion of the amount paid to the company named above, and at the same time stating that the amount paid to JMA was $2495, gives a plausible impression on the ordinary consumer that the entire $2495 was paid to JMA for *his* transaction.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

**P a g e | 18**

### b. Lithia's Disclosures are Not Conspicuous

33.    The standard for "conspicuousness" has been determined by the courts by looking to the

corresponding state law. *Barrer v. Chase Bank USA, NA*, 566 F.3d 883, 892 (9th Cir. 2009) (citing

*Am. Gen. Fin., Inc. v. Basset (In re Bassett),* 285 F.3d 882, 884-85 (9th Cir.2002)). The Oregon

UCC defines "conspicuous" as follows:

> "Conspicuous," with reference to a term, means so written, displayed or presented
> that a reasonable person against which it is to operate ought to have noticed it.
> Whether a term is "conspicuous" or not is a decision for the court. Conspicuous
> terms include the following:
>
> > (A) A heading in capitals equal to or greater in size in than the
> > surrounding text, or in contrasting type, font or color to the surrounding
> > text of the same or lesser size; and
> >
> > (B) Language in the body of a record or display in larger type than the
> > surrounding text, or in contrasting type, font or color to the surrounding
> > text of the same size, or set off from the surrounding text of the same size
> > by symbols or other marks that call attention to the language.

ORS 71.2010(2)(j). Also, as defined in the UTPA a "clear and conspicuous" disclosure must be

"conveyed in a manner that is readily noticeable." OAR 137-020-0040(2)(j). "The public should

not have to weigh each word, hunt for the hidden meaning of each statement, or search for

inconspicuous disclaimers." OAR 137-020-0040(2)(j), OFFICIAL COMMENTARY. One court found

that "[a] disclosure is conspicuous if it draws the consumer's attention." *Andrews v. Chevy Chase

Bank,* No. 05C0454 (E.D. Wis. Jan. 16, 2007) (internal citations omitted). The Ninth Circuit Court

decided in at least two cases that an otherwise TILA compliant disclosure may be in violation of

TILA if those disclosures are not conspicuous. *See Barrer v. Chase Bank USA, NA*, 566 F.3d 883

(9th Cir. 2009); *Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010).

34.     The representations in Lithia's RIC failed the conspicuous standard. Without the aid of arrows or highlights it is difficult for the reasonable consumer to readily notice the disclosure that Lithia is keeping a portion of the amount for the 3rd party products:

Use for which purchased: ☒ Personal   ☐ Commercial   ☐ Agricultural

**Insurance and Protection.** If any insurance or protection is checked below, the policies or certificates issued by the Companies named will describe the terms and conditions.

**Optional Insurance.** Credit life insurance, credit disability insurance and other optional insurance are not required to obtain credit and will not be provided unless I sign for them and agree to pay the additional cost. If I have chosen this insurance, the cost is shown in 4a of the Itemization below. Credit life insurance is based upon the payment schedule and the term of this contract. This insurance may not pay all I owe on this contract if I make late payments. Disability insurance covers the original payment amount for the term of this contract. If I make late payments, disability insurance will not pay all of my payments. The amount and coverages are shown in a notice or agreement given on this date.

☐ Credit Life (Buyer ☐ Co-Buyer ☐ Both ☐)  Term N/A  Premium $ N/A  Insurer N/A  Insured(s) ___
☐ Credit Disability, Accident and Health (Buyer only)  Term N/A  Premium $ N/A  Insurer ___  Insured N/A
☐ (Type of Other Insurance) ___ N/A  Term N/A  Premium $ N/A  Insurer ___  Insured N/A

I want the insurance coverage(s) checked above, and I know that it is not required to obtain credit:

Buyer Signature ___ N/A ___ Date ___
Co-Buyer Signature ___ N/A ___ Date ___

**Optional Gap Contract.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4e of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
Term 72 ___ Mos.
Name of Gap Contract ___ AWS ___
I want to buy a gap contract.
Buyer Signs X ___ 06/03/2016

**Required Physical Damage Insurance.** Physical damage insurance is required, but I may obtain it from anyone I choose. If purchased through you from the Insurance Company named below, the cost of this insurance, for the term shown immediately below, is shown in 4b of the Itemization below.

Insurance Company ___ N/A ___ Term: N/A months
☐ $ N/A ___ Deductible Collision and either:
  ☐ Full Comprehensive including Fire, Theft and Combined Additional Coverage
  ☐ $ N/A ___ Deductible Comprehensive including Fire, Theft and Combined Additional Coverage
  ☐ Fire, Theft and Combined Additional Coverage

**Optional Service Contract.** The cost of this contract is shown in 4c of the Itemization below.
Company ___ JHA
Term: ___ $ 100.00 Deductible
**Optional Mechanical Breakdown Protection.** The cost of this protection is shown in 4d of the Itemization of Amount Financed.
Company ___ N/A
Term: N/A ___ $ N/A Deductible

Unless a charge for Liability Insurance is included in the itemization of amount financed, any insurance referred to in this contract does not include coverage for personal liability, bodily injury and property damage caused to others.

ITEMIZATION OF AMOUNT FINANCED
1. Cash Sale Price (including any accessories) ........................................................... $ 29990.00 (1)
2. Downpayment: (If 2d is negative, enter 0 at 2d and enter the negative amount in line 4k below)
   a. Cash Downpayment ........................................................... $ N/A
   b. Manufacturer's Rebate (if applicable) ........................................................... $ N/A
   c. Deferred Downpayment (Pickup Pymt), due N/A , on which there's no finance charge, of ___ $ N/A
   d. Trade-in: Value $ 16500.00  Less owing $ 14354.00  Net $ 2146.00 ___ $ 2146.00
      Description of Trade-in: 2005 SUBA ___ Lien Payoff To: UNITED CONHU
Total Downpayment (a+b+c+d) (also put this figure on the downpayment line in the Total Sale Price box below) (Do not include 2d if negative) ..... $ 2146.00 (2)
3. Unpaid Balance of Cash Sale Price (1-2) ........................................................... $ 27844.00 (3)
4. Charges other than Finance Charge, including Amounts Paid to Others on My Behalf: ( * Seller may be retaining a portion of this amount)
   a. Cost of Optional Insurance for the Term of this Contract paid to the Insurance Company(ies) named above.*
      Credit Life $ N/A  Credit Disability, Accident and Health $ N/A  Other $ N/A ___ $ N/A
   b. Cost of required Physical Damage Insurance paid to the Insurance Company named above (covers damage to the vehicle) * $ N/A
   c. Cost of Optional Service Contract paid to the Company named above (covers certain repairs) * ........... $ 2495.00
   d. Cost of Optional Mechanical Breakdown Protection paid to the Company named above (covers certain repairs) * ........... $ N/A
   e. Cost of Optional Gap Contract* ........................................................... $ 695.00
   f. License / Registration Fees paid to government agencies ........................................................... $ 110.00
   g. Title Fees paid to government agencies ........................................................... $ 27.00
   h. DEQ Certification fee paid to government agencies ........................................................... $ N/A
   i. Title & Registration Processing Fee paid to Seller $ 115.00 . Optional Electronic Filing Fee paid to Seller $ N/A ... $ 115.00
   j. Sales Tax / Excise Tax paid to government agencies ........................................................... $ N/A

EXHIBIT 3
Page 1 of 4

Without "hunting" or "searching" for the proper disclosure, it is nearly impossible for the ordinary consumer to spot the relevant disclosure.

35.    "Although clarity and conspicuousness is a question of law, empirical evidence is helpful in determining what a reasonable consumer will understand and readily notice." *Rubio v. Capital One Bank*, 613 F.3d at 1200 (internal citations omitted). The deposition of Lithia's finance manager J.J. Hunsaker lends aid to whether the disclosure is conspicuous. Mr. Hunsaker, who is well familiar with Lithia's RIC form, and who was presumably prepared by Lithia's counsel to familiarize himself with the RIC, was asked at the deposition to identify this very disclosure. Mr. Hunsaker, who was "hunting" and "searching" for this disclosure, took nearly 20 seconds to find it in the RIC at his deposition.  Despite dealing with these contracts as a part of his job and discussing the area of the contract dealing with third party charges, the disclosure was not readily noticeable even to him

36.    The bottom line: the Lithia Defendants charged the unknowing consumers an exorbitant amount of hidden mark-up (at 150% of cost), without *disclosure* and without *consent*.  This practice substantially increased the consumers' financial burden.  It is predatory.

37.    The Lithia Defendants' position essentially renders the statutory requirement of itemizing the amounts paid to other persons on the consumer's behalf meaningless.  This unreasonable position is not in compliance with the legislative intent behind TILA.  Nor could it meet the purpose of TILA, which is to "protect consumers," "to assure a meaningful disclosure of credit terms," and to "let the seller disclose."  Further, TILA is meant to be strictly complied with, and its terms to be construed liberally in favor of the consumer.  And, even if the Lithia Defendants are allowed to bypass the statutory itemization requirement and just state that they "may be retaining" a portion of the amount that were to be paid to others, they are certainly not allowed to insert other language to contradict, nullify, or confuse that sentence.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

P a g e | 21

38.    The Plaintiffs therefore respectfully request the Court to enter an order denying

Defendants' 12(b)(6) motion to dismiss Plaintiffs' TILA claim regarding the third-party products.

### ii:  TILA Disclosure Concerning Yield Spread Premium[17]

39.    Next, the Lithia Defendants claim that they were not required to disclose the existence of

Yield Spread Premium ("YSP") to the consumers under TILA.  (See Defendants' motion, pages

15-18).

40.    In their motion, the Lithia Defendants also do not deny the fact that they charged the

consumer a YSP (a percentage) *or* a dealer reserve (a flat fee).  However, the Lithia Defendants

claim that they are not required to disclose same under TILA.  The Lithia Defendants claim that

TILA only required the disclosure of "finance charge," and is silent regarding the disclosure of

YSP, which they contend are a part of the "finance charge."  The Lithia Defendants thus conclude

that it is unnecessary for them to inform the consumer the existence of a YSP.  (See Defendants'

motion, page 15-16).

41.    As already admitted to by the Lithia Defendants in their motion, both TILA and Regulation

Z require the disclosure of the annual percentage rate (APR) charged onto the consumer.  TILA

provides:

> **(a) Required disclosures by creditor**
> For each consumer credit transaction other than under an open end credit
> plan, the creditor shall disclose each of the following items, to the extent
> applicable:
> …
> (4) **The finance charge expressed as an "annual percentage
> rate", using that term**. This shall not be required if the amount
> financed does not exceed $75 and the finance charge does not

---

[17] The TILA "yield spread" claims are only made in regards to failures to disclose the proper annual percentage rate. The UTPA "yield spread" claims are different as the term is defined in the UTPA and the claims deal with failures to specifically disclose yield spreads.

> exceed $5, or if the amount financed exceeds $75 and the finance
> charge does not exceed $7.50.
> …

15 U.S.C. §1638(a) (emphasis added).  Further, Regulation Z similarly provides:

> §226.18.     **Content of disclosures.**
> For each transaction, the creditor shall disclose the following information as
> applicable:
> …
> (e) *Annual percentage rate.* The <u>*annual percentage rate,*</u> using that term, and a
> brief description such as "the cost of your credit as a yearly rate."

12 C.F.R. §226.18(e) (emphasis added).  Both the Statute and Regulation Z provided for the

disclosure of the Annual Percentage Rate ("APR").

42.     It goes without saying that the APR must be disclosed <u>accurately</u> and <u>truthfully</u>.  However,

the Defendants do not dispute, nor can they, that the APR as represented in the RIC is not the <u>real</u>

rate that the consumers should have been charged.  As set forth above and in the Plaintiffs' Third

Amended Complaint, the APR shown on the Plaintiffs' RICs are inflated – either by several

percentages points, by the inclusion of a hidden flat fee, or both.  In Plaintiffs the Daltons' case,

the APR disclosed to them was 8.99% -- when in reality, the real rate was lower (by several

percentage points and/or less a dealer reserve fee); or, in Plaintiff Mendoza's case, the APR

disclosed to him was 3.94% -- when in reality, he was also charged around 2% of the vehicle cost

($622.70) as a financing charge by Defendants.  Said simply, the APR shown on the Plaintiffs'

RICs are false.  They are the inflated, padded rate charged to the consumer without the consumer's

knowledge or consent.  The disclosure of a false APR is no disclosure at all.  The Lithia Defendants

cannot be said to have complied with TILA by disclosing a false APR to the consumers.

43.     To interpret the TILA and Regulation Z otherwise would lead to an absurd result – namely,

that the statute and regulation that are designed to protect the consumer did not require an accurate

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

and truthful disclosure. The Lithia Defendants would have this Court rule that it is permissible to bind the consumers to hidden mark-ups without disclosure and without permission. That is an absurd position. Again, TILA is meant to be construed liberally in favor of the consumer. *Fairley*, 65 F.3d at 479-80. Defendants' restrictive reading of the TILA would only results in the deprivation of the consumer's right to know the true financing terms and the furtherance of such predatory practices.

44.    In their motion, the Defendants further rely on a string of cases: *Willis v. Bank of Am. Corp.*, Civ. Action No. ELH-13-02615, 2014 WL 3829520, at *16 (D. Md. Aug. 1, 2014), and *Hernandez v. Downey Sav. & Loan Ass'n*, No. 08CV2336, 2009 WL 704381 (S.D. Cal. Mar. 17, 2009), *Noel v. Fleet Fin., Inc.*, 34 F.Supp.2d 451, 457 (E.D. Mich. 1998) in support of their position. (See Defendants' motion, pages 16-17).

45.    These cases, however, do not lend support to the Lithia Defendants' argument, as these cases all address mortgage rather than car loans. Mortgages are different. The case that the Lithia Defendants rely on – *Willis*, finds its support from *Hernandez*. *See Willis*, 2014 WL 3829520 at *16. *Hernandez*, on the other hand, relied on Federal Reserve Board's finding under 61 F.R. 26126 (1996). This section, however specifically states that it pertains to "Mortgage Broker Fees." *See* 61 F.R. 26126, 26127 (1996), (4(a)(3) Special Rule; Mortgage Broker Fees). This commentary further identifies 15 U.S.C. §1605(a)(6) – which contains a specific rule pertaining to mortgage broker fees as it relates to the disclosure of "Finance charge" under TILA. *See* 15 U.S.C. §1605(a)(6). There is no such provision for either the Federal Reserve commentary or the statute concerning the disclosure (or lack of) pertaining to YSP in *car loans*. *Id.*

46.    It is worth noting that in *Hernandez*, the lending institution in fact disclosed the amount of the YSP to the borrower.  *Hernandez*, 2009 WL at \*6.  Such is not the case here.  The Lithia Defendants never even disclosed the existence of the YSP in their dealings with the consumer.

47.    On the other hand, the reason why a disclosure of YSP is not necessary in mortgage matters is not difficult to see: because the YSP is *already disclosed* under other federal requirements to the mortgage consumers.  The U.S. Department of Housing and Urban Development already requires the disclosure of YSP in both the GFE (Good Faith Estimate) form and the HUD-1 form.[18]  In other words, a mortgage consumer has the benefit of disclosure that is not available to the consumers in the instant case.  The Lithia Defendants' reliance of the mortgage cases is thus unpersuasive.

48.    Defendants further rely on *Noel*, and *Baldwin v. Laurel Ford Lincoln-Mercury, Inc.*, 32 F.Supp.2d 894 (S.D. Miss. 1998).  *Noel* is another mortgage case, and the *Noel* opinion cited and premised its holding on *Baldwin*.  See *Noel*, 34 F.Supp.2d at 456-7.  In *Baldwin*, the Southern District of Mississippi held that it was not necessary to disclose "a dealer discount or the assignment of the loan agreement at less than its face value."  *Baldwin*, at 904.

49.    However, Baldwin is of questionable precedential value to this Court.  The *Baldwin* opinion only held that it was not necessary to disclose a "dealer discount or the assignment of the loan agreement at less than its face value."  *Id*, at 904.  Baldwin did not specifically address the

---

[18] *See* Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999–1 Regarding Lender Payments to Mortgage Brokers, 64 Fed.Reg. 10080, 10084 (March 1, 1999); *see also*:

> "What is 'Yield Spread Premium'
> A form of compensation that a mortgage broker, acting as the intermediary, receives from the original lender for selling an interest rate to a borrower that is above the lender's par rate for which the borrower qualifies. The yield spread premium must be disclosed on the HUD-1 Form when the loan is closed."

Yield Spread Premium, Investopedia, http://www.investopedia.com/terms/y/yield_spread_premium.asp (last visited August 9, 2017)

disclosure of YSP.  *Id*, generally.  In fact, the term "YSP" or "Yield Spread Premium" did not even appear in the *Baldwin* opinion *at all*.  *Id*.

50.     Further, *Baldwin* runs contrary to the authority relied on by the Lithia Defendants themselves in their motion – *Gibson v. Bob Watson Chevrolet-Geo, Inc.  See Baldwin*, at 905.  The *Baldwin* court expressly stated that it is refusing to comply with the Seventh Circuit's in the *Gibson* analysis.[19]  In that vein, just as the Southern District of Mississippi refused to follow another Circuit Court's precedent, this Court is also under no obligation to comply with the opinion of a foreign district court, either.

51.     The bottom line: the Lithia Defendants charged the consumers an exorbitant amount of mark-ups, without the consumer's knowledge and without the consumer's consent.  Moreover, the Lithia Defendants' disclosures of APR to the consumers are false.  Even if TILA did not require the disclosure of a YSP, at the minimum, TILA certainly did not permit the Lithia Defendants to lie to the consumers.  The Lithia Defendants' false disclosure cannot meet the requirement of TILA – which required the disclosure of *truth in lending*.

52.     The Plaintiffs therefore respectfully request the Court to enter an order denying Defendants' 12(b)(6) motion to dismiss Plaintiffs' TILA claim regarding the Yield Spread Premium and/or dealer reserve.

---

[19] The *Baldwin* opinion provides:
> "Ford Credit concedes, however, that the Seventh Circuit in *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283 (7th Cir.1997), takes a contrary view, holding that this interpretation is incongruous with the purpose of the section 1638(a):
>> The only sensible reading of the commentary is as authorizing the dealer to disclose only the fact that he is retaining a portion of the charge, rather than the exact amount of the retention. Even this is a considerable stretch of the statute; and it is as far as, if not farther than, the statute will stretch.
> *Id*. at 286. <u>The Court disagrees that the Seventh Circuit's reading of the commentary is the only sensible one</u>."
*Baldwin*, at 904 (emphasis added).

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

### iii: The State Law Claims (UTPA Claims) Arising from TILA Claims

53.     Nonetheless, Defendants again challenged the Plaintiffs' claim under ORS 646.608(1)(u), which makes a violation of TILA a violation of the Oregon UTPA.  For the reasons already set forth above, because the Plaintiffs have stated a claim under TILA, this Court should likewise deny the Defendants' challenge of the UTPA claims under ORS 646.608(1)(u).

### C.     Defendants' Second Challenge: The Fraud Claim

54.     The Plaintiffs have also asserted a fraud claim against the Lithia Defendants.  The basis of this claim: in the RIC, the Lithia Defendants represented to the Plaintiff consumers (specifically in the complaint, Plaintiffs the Jocks) that they are purchasing a third-party product – Lifetime Oil change – from an entity named "DMS," for the amount of $899.00.  (See Defendants' Exhibit 4, page 1 for the Feb 13, 2013 purchase; see Exhibit 5, page 1 for the Aug. 31 2013 purchase).  During discovery, the Plaintiffs discovered that 100% of this amount was actually kept by the Lithia Defendants.[20]

55.     In their motion, Lithia Defendants claim that this was not a misrepresentation, because, per the Defendants, the entity named "DMS" is in fact, Defendant Lithia Motors, Inc.  (See Defendants' motion, page 21).  For the ease of reference, the Plaintiffs will attach an image of the relevant portion of the RICs below as follows:

---

[20] See Plaintiffs' Third Amended Petition, page 13, footnote 10; see also paragraph 106, 122-124.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

| | |
|---|---|
| [X] Credit Life (Buyer☐ Co-Buyer☐ Both☐) | Insurer Central States Hea~~lth &~~ Li CAROL LOUISE JOCKS    MARTIN BRUCI |
| ☐ Credit Disability, Accident and Health (Buyer only) | Insurer N/A    Insured N/A |
| [X] (Type of Other Insurance) GAP | Insurer THIS    Insured CAROL LOUISE JOCKS    Term 72 |

Under policy of designated Insurance Company(ies), maximum amount of insurance under this contract is $ 57228.48 , and the total amount of insurance under this and any other installment contract of the buyer is limited to $ 50,000.00 .

I want the insurance coverage(s) checked above, and I know that it is not required to obtain credit:

Buyer Signature _Carol B K~~s~~_ Date 02/13/2013    Co-Buyer Signature _~~Marvin B Jocks~~_ Date 02/13/2013

| | |
|---|---|
| Required Physical Damage Insurance. Physical damage insurance is required, but I may obtain it from anyone I choose. If purchased through you from the Insurance Company named below, the cost of this insurance, for the term shown immediately below, is shown in 4b of the itemization below. | Optional Service Contract. The cost of this contract is shown in 4c of the itemization below. |
| Insurance Company N/A    Term: N/A months | Company EESC |
| ☐ $ N/A Deductible Collision and either: | Term: 94    $ 0.00 Deductible |
| ☐ Full Comprehensive including Fire, Theft and Combined Additional Coverage | Optional Mechanical Breakdown Protection. The cost of this protection is shown in 4d of the itemization below. |
| ☐ $ N/A Deductible Comprehensive including Fire, Theft and Combined Additional Coverage | |
| ☐ Fire, Theft and Combined Additional Coverage | Company N/A |
| Optional, if desired - ☐ Towing and Labor costs ☐ Rental Reimbursement ☐ CB Radio Equipment | Term: N/A    $ N/A Deductible |

**Warning: The insurance or protection referred to in this contract does not include coverage for public liability, bodily injury, or property damage (other than the vehicle noted above) caused to Buyer or others.**

ITEMIZATION OF AMOUNT FINANCED
| | |
|---|---|
| 1. Cash Sale Price (including any accessories) | $ 51939.40(1) |
| 2. Downpayment: ( If 2d is negative do not include ~~i~~ total Downpayment computation, then add the amount due back at line 4j ) | |
| a. Cash Downpayment | $ 1000.00 |
| b. Manufacturer's Rebate (if applicable) | $ 1750.00 |
| c. Deferred Downpayment (Pickup Pymt), d~~ue~~ N/A , on which there's no finance charge, of | $ N/A |
| d. Trade-in Value $ 10000.00 Less $ 9385.00 Net $ 615.00 | $ 615.00 |
| Description of Trade 2007 00 Lien Payoff To: PACIFIC CR | |
| Total Downpayment (a+b+c+d) (also put this ~~on~~ the downpayment line in the Total Sale Price box below) (Do not include 2d if negative) | $ 3365.00(2) |
| 3. Unpaid Balance of Cash Sale Price | $ 48574.40(3) |
| 4. Charges other than Finance Charge, including Amounts Paid to Others on My Behalf: ( * Seller may be retaining a portion of this amount) | |
| a. Cost of Optional Insurance for the Term of this Contract paid to the Insurance Company(ies) named above. * | |
|   Credit Life $ 2025.88 Credit Disability, Accident and Health $ N/A Other $ 435.00 | $ 2460.88 |
| b. Cost of required Physical Damage Insur~~ance~~ paid to the Insurance Company named above (covers damage to vehicle) * | $ N/A |
| c. Cost of Optional Service Contract paid to ~~C~~ompany named above (covers certain repairs) * | $ 1887.00 |
| d. Cost of Optional Mechanical Breakdow~~n Prote~~ction paid to the Company named above (covers certain repairs) * | $ N/A |
| e. License/Registration Fees paid to gove~~rnm~~ent agencies | $ 5.00 |
| f. Title Fees paid to government agenc~~ies~~ | $ 77.00 |
| g. DEQ Certification Fee paid to gover~~nm~~ agencies | $ N/A |
| h. Title & Registration Processing Fee paid Seller $ 25.00 Optional Electronic Filing Fee paid to Seller $ ~~00~~ | $ 100.00 |
| i. Sales Tax / Excise Tax paid to go~~vernme~~nt agencies | $ N/A |
| j. Other Charges (Seller must ident~~ify who~~ will receive payment and describe purpose - include negative trade equity) | |
|   to N/A for N/A | $ 0.00 |
|   to DMS for LITHIA LIFETI | $ 899.00 |
| Total Other Charges and Amounts Paid to Others on My Behalf * | $ 5429.88(4) |
| 5. Amount Financed Principal Balance (3+4) * (also put this figure in the Amount Financed box below) | $ 54004.28(5) |
| 6. Finance Charge * (also put this figure in the FINANCE CHARGE box below) | $ 3224.20(6) |
| 7. Time Balance (5+6+2c) (also put this figure in the Total of Payments box below) | $ 57228.48(7) |
| 8. Time Sale Price (1+4+6) (also put this figure in the Total Sale Price box below) | $ LITHIA-000410 |

EXHIBIT 4
Page 1 of 4

And:



EXHIBIT 5
Page 1 of 2

MENDOZA APL000068

56.     Taking the Lithia Defendants' argument as true, however, then, the Lithia Defendants

essentially just admitted that they made a different misrepresentation to the Plaintiff consumers.

In the RIC, the Lithia Defendants represented that the Lifetime Oil was "…Paid to Others on My

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Behalf." (See Defendants' Exhibit 4, paragraph 4; see also Exhibit 5, paragraph 4) (see also Paragraph 4(j)). However, the Lithia Defendants are now admitting that this amount was not "Paid to Others," but was in fact paid to Lithia. Said differently: when the Lithia Defendants represented to the consumers that this $899 was being paid to "DMS," it was false.

57.    In their response, the Lithia Defendants argued that this does not amount to a misrepresentation. The Lithia Defendants highlighted one particular word in a sentence in the RIC(s):

> "Charges other than Finance Charge, *including* Amounts Paid to Others on My Behalf."

(See Defendants' Exhibit 4, paragraph 4; Exhibit 5, paragraph 4) (emphasis added). The Lithia Defendants claim that because this sentence contains the term *including*, therefore, the amounts listed thereunder (such as the $899 Lifetime Oil) can be argued to be either an amount paid to others, or not.

58.    This is the classic example of a *sleight of hand*. Nonetheless, whether this representation amounts to a misrepresentation should be viewed with the totality of circumstances, how it is presented to the consumer, and whether this results in an orchestrated misrepresentation therein. Whether fraud can be deducted from this set of facts is still a matter that should be decided by the fact finder, but not here. Fraud is a question of fact to be determined at trial. *See U.S. ex. rel. Brusco Tug & Barge v. Coast Dredging & Marine, Inc.*, 2002 WL 31496425, *6 (D. Oregon. 2002). The mere non-disclosure of material facts can be a form of misrepresentation where the defendant has concealed know facts material to a transaction, or there is representations that would be misleading without full disclosure. *Id*, *citing Meade v. Cedarrapids, Inc.*, 164 F.3d 1218, 1222 (9th Cir.1999); *see also Millikin v. Green*, 583 P.2d 548, 550 (1978); *Felonenk v. Siomka*, 637

P.2d 1338, 1340 (1981). Even where there is express language about promises and disclosure, an action for fraud in the inducement of a contract is possible. *Meade,* at 1223. Whether the Lithia Defendants' misrepresentation does in fact constitute fraud is a matter to be decided by a jury, not in a 12(b)(6) motion to dismiss.

59.     Plaintiffs will clarify that the claim of fraud here, and with the current discovery available, is aimed at Defendant Lithia Klamath, Inc. (D/B/A Lithia Klamath Falls Auto Center) – the entity that sold the Lifetime Oil to Plaintiff the Jocks. The fraud claim is also directed at Defendant Lithia Motors, Inc., who owns and operates Lithia Klamath, Inc. For the purpose of the 12(b)(6) motion, Plaintiffs' allegation should be construed as true, with all reasonable inferences assumed. *Rogan*, 175 F.3d at 77. However, as the Plaintiffs have also alleged vicarious liability against the other Defendants, the fraud claim may potentially be applied jointly and severally against the other Defendants.

### D.     Defendants' Third Challenge: The UTPA Claims Under ORS 646.608(1)(a), (b), (c), (j), and (s) and OAR 137-020-0020(30(u)

### Plaintiffs' Objection To Defendants' Failure to Comply with Local Rules

60.     Next, the Lithia Defendants challenge the Plaintiffs' UTPA claims. Plaintiffs object to this part of the Lithia Defendants' motion, in that the Lithia Defendants failed to comply with Local Rules and failed to confer with the Plaintiffs.

61.     The Plaintiffs acknowledge the Lithia Defendants did attempt to confer regarding the other claims. However, the Lithia Defendants did not confer with the Plaintiffs regarding *these* UTPA claims that they now seek to dismiss (e.g. under ORS (1)(a), (b), (c), (j), (s), and OAR (u)). (See Defendants' Exhibit 1). Basically: the Lithia Defendants attempted to confer on three claims

(TILA on third-party products, TILA on YSP, and fraud), and slipped in these UTPA claims in their motion to dismiss.

62.    Local Rules 7-1 provide:

> LR 7-1 Motions Practice - Generally
> (a) Certification Requirements
>> (1). Except for motions for temporary restraining orders, the first paragraph of every motion **must** certify that:
>>> (A) In compliance with this Rule, the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so; or
>>> …

LR 7-1(a)(1)(A) (emphasis added).

63.    Because the Lithia Defendants failed to comply with the Local Rules on conference regarding the Plaintiffs' UTPA claims, this Court should deny the part of the Lithia Defendants' motion concerning these issues.

64.    Nonetheless, though that portion of the motion should be stricken, the Plaintiffs will address the substance of the Lithia Defendants' contentions as follows:

### i: Defendants' Challenges to the O.R.S. § 646.608(1)(a), (b), and (c) claims

65.    Defendants first challenge the Plaintiffs' claims pertaining to YSP under the following provisions of UTPA:

> (1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:
>> (a) Passes off real estate, goods or services as the real estate, goods or services of another.
>> (b) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services.
>> (c) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another.

O.R.S. § 646.608(1)(a), (b), (c).  (See Defendants' motion, page 22-23).  However, Defendants did not challenge the Plaintiffs' claim concerning the third-party products.

66.    The Lithia Defendants claim that Plaintiffs claim(s) under (a), (b), and (c) "…is based solely on the premise that DMS is an unrelated 'third party.'" (See Defendants' motion, page 23, first paragraph).  This is the Lithia Defendants' only basis against these claims.

67.    The Lithia Defendants' assertion is entirely misplaced.  The Plaintiffs explained that, instead, their complaint lie with the fact that the Lithia Defendants represented that the Plaintiff consumers were paying for certain third-party products, when, in fact, these payments were mostly kept by Lithia – without disclosure and without consent.  Defendants have misinterpreted the Plaintiffs' claims.  Their distorted reading of the Plaintiffs' Third Amended Complaint, however, should not be the basis of a 12(b)(6) motion.

### ii.    Defendants' Challenge to the O.R.S. § 646.608(1)(j) claim

68.    Next, the Defendants challenge the Plaintiffs' claim for both the third-party products and YSP under O.R.S. § 646.608(1)(j).

69.    This section provides:

> (1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:
> …
> (j) Makes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions.

O.R.S. § 646.608(1)(j).

70.    The Lithia Defendants apparently again misunderstood the gist of the Plaintiffs' contention, which will be explained below.  The Lithia Defendants sold a service contract to Plaintiff Mendoza for $2,495.  Lithia claims that it negotiates the final price of the service contract,

but it does not disclose or negotiate the amount that is paid to the service contract provider.[21]  For Mendoza's transaction, Lithia charged Mendoza $2,495 but paid the service contractor only $995, keeping the remaining $1,500.[22]  In fact, the suggested retail price of the service contract sold to Mendoza is $1,990.[23]  By hiding the $1,500 markup and the $1,990 suggested retail price, Lithia made a misleading representation of fact concerning the reasons for, existence of, and amounts of price reduction available to the Plaintiff.

71.    Defendants cited no legal authority whatsoever in support of their challenge, but merely argued their *ipse dixit*.  However, because the Defendants falsely represented the amount of price reduction, the Plaintiffs have stated a claim under (1)(j).

### iii:    Defendants' Challenge to the O.R.S. § 646.608(1)(s) claim

72.    The Lithia Defendants also challenged the Plaintiffs' (1)(s) claim concerning both the third-party products and YSP.  The basis of the Lithia Defendants' claim: they have disclosed everything under the RIC's fine print.  (See Defendants' motion, pages 23-25).

73.    The ORS provides:

> (1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:
>     …
>     (s) Makes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services.

O.R.S. § 646.608(1)(s) (emphasis added).

74.    The Lithia Defendants' argument is unpersuasive for several reasons.  For one: the Lithia Defendants never disclosed to the consumers the hidden kickbacks, nor did they obtain consent

---

[21] See Ex A to the Declaration of Young Walgenkim, Hunsaker Deposition p. 25, ln 23 – p. 26, ln 13.
[22] See Third Amended Complaint, paragraph 26.
[23] See Ex B to the Declaration of Young Walgenkim LITHIA_211.

from the consumers. The "disclosure" that they've made is instead a sentence that told the consumer that an amount had been paid to a third party – which, as already explained above, is false. The Lithia Defendants also did not truthfully explain the real rate that the consumers should have been charged. These half-truths are the types of "false or misleading representations of fact concerning the offering price, or the person's cost for…services" that the UTPA seeks to remedy. The consumers are entitled to know the entire truth. When the Lithia Defendants told them that the consumers are paying $2,495 for a service contract, or that their APR is 8.9% -- such representations are false – thereby invoking the applicability of (1)(s) – which address false or misleading representations concerning the prices of goods or services. Plaintiffs have stated a claim sounding under (1)(s).

75.    In their motion, the Lithia Defendants cited a string of foreign caselaw, which provides that the Defendants in those cases were not obligated to reveal their pricing structure. (See Defendants' motion, pages 24-25). Obviously, none of these cases interpret Oregon law or the UTPA. These cases have already been cited by the Lithia Defendants in their previous motion to dismiss filed on Sep. 22, 2016. However, they are of no precedential value to this Court.[24] [25]

### iv:    Defendants' Challenge to the O.R.S. § 646.608(1)(u) claim

76.    Finally, the Lithia Defendants also challenged the Plaintiffs' YSP claim under (1)(u) and OAR 137-020-0020(3)(u).

---

[24] Lithia Defendants cited *F.T.C. v. Davison Associates, Inc.*, 431 F. Supp., 2d 548, 563 (W.D. Pa. 2006); *Sayer v. Lincoln Nat. Life Ins. Co.*, No. 705CV1423RDP, 2006 WL 6253201 (N.D. Ala. Oct. 12, 2006); *Ex parte Ford Motor Credit Co.*, 717 So.2d 781, 787 (Ala. 1997); and *Alexander v. Cont'l Motor Werks, Inc.*, 933 F. Supp. 715, 718 (N.D. Ill. 1996).

[25] It is worth noting that the Court in *Alexander* <u>denied</u> the defendant's motion to dismiss for failure to state a claim.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

P a g e | 35

77.    To be clear, the UTPA YSP claim under OAR 137-020-0020(3)(u) is entirely different from the YSP claim under TILA.  As addressed by Lithia, TILA does not directly require disclosure of the YSP though it does require accurate disclosures of APRs.   The OAR requires even more than TILA. The OAR requires a dealer such as Lithia to specifically disclose the following language:

> "That the dealer or broker may receive <u>additional compensation from the consumer</u> for <u>arranging the sale of the retail installment contract</u> which may be in the <u>form of a fee or additional loan points.</u>"

OAR 137-020-0020(3)(u)(A)(1) (emphasis added). Lithia's attempt at the required disclosure is as follows:

> The Seller may assign this contract and retain Seller's right to receive part of the finance charge.

(Defendant's Exhibit 3, page 2).

78.    A review shows that the "disclosure" made by Lithia simply does not contain the language required by the OAR.  The two disclosures are also fundamentally different. The OAR requires the dealer to disclose 3 distinct facts: That (1) it receives an "additional compensation from the consumer," (2) "for arranging the sale of the retail installment contract," (3) "in form of a fee or additional loan points." These facts can be broken down as follows:

    a.  (1) … additional compensation from the consumer...

        i.  This fact alerts the consumer that she is paying the dealer profit <u>in addition</u> to the amount made from the sale of the vehicle.

    b.  (2) … for arranging the sale of the retail installment contract…

        i.   This disclosure alerts the consumer that she is paying the dealer for a service

           of arranging financing (or sale of the retail installment contract), a fact that

           most consumers are not aware of when entering a dealership.

  c.  (3) … in form of a fee or additional loan points.

        i.   This part of the disclosure alerts the consumer that the dealer may be

           receiving this extra profit in the form of a yield spread premium or a flat

           dealer reserve.  Failure to give such a disclosure does not inform consumers

           that additional mark-ups occur on the annual percentage rate.

Lithia's disclosure contains none of these three required statements. Instead, as read, Lithia's disclosure, "The Seller may assign this contract and retain its right to receive a part of the finance charge" sounds as if Defendants get paid by the financial institution rather than consumers. Another plausible understanding of that disclosure is that Defendants gets to keep all of the finance charge it has collected in interest payments until the loan gets sold to the financial institution. Therefore, it also fails the clear and conspicuous standard of UTPA. *See infra*.

79.    In addition, as stated by Defendants, OAR 137-020-0020(3)(u)(B) requires the disclosure of the actual amount kept by Defendants if the yield spread premium is more than three points. *See* OAR 137-020-0020(3)(u)(B). The Lithia Defendants claim that the Plaintiffs do not and cannot show that this is the case. However, upon information and belief, Lithia kept the yield spread premium of more than three points from the Dalton transaction, but failed to disclose that amount to the Daltons. At any rate, as Plaintiffs have discovery requests that are still outstanding, and the amount of YSP charged onto the Plaintiff consumers is a matter that is yet to be determined.  A 12(b)(6) motion to dismiss is not the place to resolve these types of factual disputes.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

80.    Finally, the disclosure made by the Lithia Defendants does not meet the clear and conspicuous standard. The ORS provides:

> (1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:
>
>    …
>
>    (u) Engages in any other unfair or deceptive conduct in trade or commerce.

O.R.S. § 646.608(1)(u). The OAR provides that if any charges a consumer a yield spread premium, it shall clearly and conspicuously disclose same in the contract.

> (u) Yield Spread Premium Disclosure -- Any dealer or broker that charges a consumer a yield spread premium:
>    (A) Shall **clearly and conspicuously disclose in writing**, prior to the consumer applying for credit or executing a purchase order, lease agreement or retail installment contract:
>       (i) That the dealer or broker may receive additional compensation from the consumer for arranging the sale of the retail installment contract which may be in the form of a fee or additional loan points; and
>       (ii) That interest rates quoted by the dealer or broker may be negotiable; and
>    (B) Shall not, during the negotiation for the sale or lease of a motor vehicle, quote a monthly payment calculated using an interest rate that is more than three points higher than the buy rate, unless the dealer or broker discloses in writing the yield spread premium to the consumer, if the dealer or broker quoting the rate knows the consumer's credit score or has the ability to obtain the consumer's credit score at the time the monthly payment is quoted.

OAR 137-020-0020(3)(u)(A), (B).  The Lithia Defendants relied on the language of subsection (A), and claim that they've met the requirements thereunder.  (See Defendants' motion, page 26).

81.    A closer look at the requirements under (A)(i) showed that the Lithia Defendants had actually failed to comply with its clear language.  Firstly, the OAR required that the disclosure be "clear and conspicuous."  This term is further defined under the OAR as follows:

> (j) "Clear and conspicuous," including the terms "clearly" and "conspicuously," means that a message, statement, information, representation or term is conveyed in a manner that is readily noticeable, will be easily understood by the average

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

**P a g e | 38**

person, and is in a meaningful sequence. In order for a message to be considered "clear and conspicuous," it shall, at a minimum:

(A) Not contradict or substantially alter any terms it purports to clarify, to explain or to which it otherwise relates;

(B) **Be in direct proximity to the message, statement, information, representation or term it clarifies, modifies or explains, or to which it otherwise relates**;

(C) Use abbreviations or terms only if they are commonly understood by the average person or approved by federal or state law;

…

OAR 137-020-0040(2)(j) (emphasis added).  The official commentary further explains:

OFFICIAL COMMENTARY: Each advertisement shall be evaluated for its overall impression. **The public should not have to weigh each word, hunt for the hidden meaning of each statement, or search for inconspicuous disclaimers.** Advertisements which place material disclosures in small print, or inconspicuously bury material at the bottom of the advertisement are not clear and conspicuous. If on the other hand, the information does not materially change, limit or alter the offer being made, it can be placed at the bottom of an advertisement.

(emphasis added).

82.    The "disclosure" that Lithia purportedly made does not meet the above requirement.  Take the contract for Plaintiffs the Daltons for example.  The contract (see Defendants' Exhibit 8) identifies the APR, the Finance Charge, and the Amount Financed…etc on an over 21 inch long contract.  The annual percentage rate appears near the top of the Dalton RIC.  The Plaintiff consumers will have to search over approximately twelve and a half inches[26] (further than a normal page), to discover the "disclosure" provided by Lithia.  This "disclosure" contains no explanation and no correlation with the annual percentage rate above.  Instead, it only provides that the Seller (Lithia) *may* assign the contract and retain its right to receive a part of the Finance Charge.  This statement does not meet the above standard in that it (1) is not in direct proximity to the terms

---

[26] There are two versions of the RIC used by Defendants.  One of these versions has the disclosures in three and a half inches from the Annual Percentage Rate.  However, it still fails to meet the requirement of a "disclosure" and is not readily understood in relation to the Annual Percentage Rate.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

**P a g e | 39**

(APR, finance charges…etc), and (2) does not "clarify," "modify", "explain," or "relate" to those terms. It is hard pressed for any objective reader to be able to associate this isolated sentence with the hidden YSP that was charged on the consumer, especially when it fails to mention that this may be done in either points or a fee to the consumer.

### v. Summary of the UTPA Claims

83.    As stated previously, Defendants' restrictive interpretation of the UTPA is also contrary to the public policy behind the law. The UTPA is a remedial statutory scheme, "enacted as a comprehensive statute for the protection of consumers from unlawful trade practices." *State ex rel. Rosenblum v. Johnson & Johnson*, 275 Or.App. 23, 32, 362 P.3d 1197 (2015); *citing Pearson*, 358 Or. at 115; *Raudebaugh v. Action Pest Control, Inc.*, 59 Or.App. 166, 171, 650 P.2d 1006 (1982). As such, it is to be construed liberally to effectuate the legislature's intent, to the extent that a proposed construction is supported by the operative text. *Id.*; *citing Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 90 n. 4, 566 P.2d 1177 (1977) (suggesting that the UTPA "is to be interpreted liberally as a protection to consumers").

84.    Importantly, actionable representations under the UTPA "may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." O.R.S. 646.608(2); *see also Pearson*, 358 Or. at 115 (observing that misrepresentations can occur either by misstating a fact or by failing to disclose a fact). The legislature's intent is to broadly prohibit misrepresentations materially bearing on consumer purchasing options. *State ex. Rel. Rosenblum*, 275 Or.App. at 33-34.

85.    Again, the Plaintiffs are only required to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Plaintiffs are not

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

P a g e | **40**

required to prove their case at this preliminary stage.  Plaintiffs have carried their burden by

pleading sufficient facts.  And, as the respondent to a Rule 12(b)(6) motion to dismiss, the

Plaintiffs' allegations of the facts shall be construed as true and all reasonable inferences shall be

indulged in the Plaintiffs' favor.  *Barker*, 584 F.3d at 824; *Twombly*, 550 U.S. at 555-56.  The

Plaintiffs have carried their burden, and the Defendants' Rule 12(b)(6) motion should be denied.

###    F.    Plaintiffs' Alternative Request for Leave to Amend

86.    Alternatively, in the event the Court determines any part of the Plaintiffs' third amended

complaint to be deficient, the Plaintiffs respectfully request the Court to grant them leave to amend.

87.    In dismissing for failure to state a claim under Rule 12(b)(6), "a district court should grant

leave to amend even if no request to amend the pleading was made, unless it determines that the

pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58

F.3d 494, 497 (9th Cir.1995); *see also Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection

Serv., Inc.*, 911 F.2d 242 (9th Cir.1990); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th

Cir.1990).

###    IV.    CONCLUSION

88.    This Court should deny the Lithia Defendants' second 12(b)(6) motion.  Again, to

summarize the Plaintiffs' arguments, Plaintiffs contend that the Lithia Defendants had been:

    a.  Inflating the price of various third-party service products (generally, <u>by</u> 150% of the underlying cost) and pocketing this mark-up, while representing to the consumers that these amounts are being paid to the third-parties; and

    b.  Inflating the consumer's interest rate – e.g. when the consumer is approved for X% APR by a financial institution, the Defendants would instead charge the consumers X+Y%, and pocketing the difference (Y%).

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

P a g e | 41

These acts were done without the required disclosure to the consumers and without obtaining their consent. The Lithia Defendants do not dispute that they have made money off of the consumers in the manners described above. Instead, they only contend that they did not have a duty to disclose.

89.     However, the Lithia Defendants' argument that they fulfilled the *itemization* requirement under TILA by inserting an inconspicuous sentence stating that they "may be retaining" a portion of these charges is unpersuasive. Aside from this sentence being buried in oversized pages of fine print, the Lithia Defendants have further inserted multiple sentences to confuse and contradict this sentence, thereby rendering it meaningless.

90.     The Lithia Defendants' other argument that they were not required to disclose the hidden YSP under TILA is also misplaced. By failing to accurately disclose, the Lithia Defendants failed to identify the *real* interest rate truthfully – which defeats the purpose of *truth in lending*. The Lithia Defendants' reliance of mortgage cases is also unpersuasive, especially considering the fact that YSP is required to be disclosed in mortgage cases.

91.     The remainder of the Lithia Defendants' arguments concerning violations of UTPA lack legal or factual support, and should not be considered by this Court in light of the Lithia Defendants' failure to comply with the Local Rules.

92.     In summary, Lithia inflated the consumer's cost. During this process, the consumers suffered, and their right to know was compromised. In light of the above, the Plaintiffs respectfully request the Court to enter an order denying Defendants' 12(b)(6) motion; or, alternatively, in the event that the Court deems it appropriate, the Plaintiffs respectfully request the Court to grant them leave to amend their complaint to cure any perceived deficiencies.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request the Court to enter an order denying the Lithia Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' Third Amended Complaint for failure to state a claim upon which relief may be granted; or, alternatively, grant the Plaintiffs leave to amend their complaint, and grant the Plaintiff consumers all other relief they are justly entitled.

Respectfully submitted,

/s/ Bonner C. Walsh
**Bonner C. Walsh, Oregon Bar No. 131716**
Walsh LLC
21810 Pine Crest Dr.
Bly, Oregon 97622
bonner@walshpllc.com
Phone          541.359.2827
Facsimile      866.503 8206

**JACK E. MCGEHEE**
Oregon State Bar ID Number 160400
jmcgehee@lawtx.com
McGehee, Chang, Barnes, Landgraf
10370 Richmond Ave, Suite 1300
Houston, Texas 77042
Phone          713.864.4000
Facsimile      713.868.9393

**Young Walgenkim Oregon Bar No. 124900**
Hanson & Walgenkim, LLC
838 Commercial St NE
Salem, OR 97301
young@hansonwalgenkim.com
Tel. (503) 383-1496 || Fax (503) 766-6477

**Special Counsel for Plaintiff**

**Certificate of Service**

I hereby certify that I served a true and correct copy of the foregoing on Defendants' counsel of record via filing with the CM/ECF system on August 25, 2017.

/s/ Bonner Walsh
Bonner Walsh

**Certificate of Compliance**

This brief complies with the applicable word count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 10,544 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

/s/ Bonner Walsh
Bonner Walsh