Jeremy D. Sacks, OSB No. 994262
jeremy.sacks@stoel.com
Keith E. McIntire, OSB No. 126210
keith.mcintire@stoel.com
Kennon Scott, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

      Attorneys for Defendants


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| JOSEPH FRANK MENDOZA, MARTIN and CAROL JOCKS, DAWN CAVEYE, and GINA and DANA DALTON, individually and on behalf of all others similarly situated, | Case No.: 6:16-CV-1264 |
| | REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED |
| Plaintiffs, | |
| v. | |
| LITHIA MOTORS, INC., LITHIA FINANCIAL CORPORATION, SALEM-V, LLC d/b/a VOLKSWAGEN OF SALEM, LITHIA KLAMATH, INC. d/b/a LITHIA KLAMATH FALLS AUTO CENTER, and LITHIA MEDFORD HON, INC., | |
| Defendants. | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 2

      A.    Plaintiffs Fail to State TILA, UTPA, or Common Law Fraud Claims
            Against the Non-Dealership Defendants ................................................... 2

      B.    Plaintiffs Fail to State Claims Arising Under TILA .............................. 5

            1.    Plaintiffs Fail to State a TILA Claim Arising from the Sale of
                  Third-Party Products ...................................................................... 5

            2.    Plaintiffs Fail to State a TILA Claim Arising from the Alleged
                  Existence of a Yield Spread Premium or a Flat Fee ............................... 12

      C.    Plaintiffs Fail to State a Claim for Common Law Fraud ..................... 17

      D.    Plaintiffs Fail to State UTPA Claims Arising Under ORS 646.608(1)(a),
            (b), (c), (j), and (s) and OAR 137-020-0020(3)(u) ................................. 19

            1.    Plaintiffs Fail to State UTPA Claims Arising Under
                  ORS 646.608(1)(a), (b), and (c) .................................................... 20

            2.    Plaintiffs Fail to State a UTPA Claim Arising Under
                  ORS 646.608(1)(j) ........................................................................ 20

            3.    Plaintiffs Fail to State a UTPA Claim Arising Under
                  ORS 646.608(1)(s) ........................................................................ 21

            4.    Plaintiffs Fail to State UTPA Claims Arising Under
                  ORS 646.608(1)(u) and OAR 137-020-0020(3)(u) ............................... 23

      E.    Plaintiffs Should Not Be Permitted to Amend Their Complaint a Fourth
            Time .......................................................................................................... 26

III.  CONCLUSION ...................................................................................................... 26

Page i    -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
               TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
               TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Baldwin v. Laurel Ford Lincoln-Mercury, Inc.*,
   32 F. Supp. 2d 894 (S.D. Miss. 1998)...................................................................2, 16, 17, 23

*Barrer v. Chase Bank USA, N.A.*,
   566 F.3d 883 (9th Cir. 2009) ................................................................................9, 10, 11, 25

*Bell v. Muller*,
   118 P.3d 405 (Wash. Ct. App. 2005) .........................................................................................6

*Cervantes v. City of San Diego*,
   5 F.3d 1273 (9th Cir. 1993) .....................................................................................................11

*Cycle Barn, Inc. v. Arctic Cat Sales Inc.*,
   701 F. Supp. 2d 1197 (W.D. Wash. 2010)...............................................................................11

*Ford Motor Credit Co. v. Majors*,
   No. A04-1468, 2005 WL 1021551 (Minn. Ct. App. May 3, 2005)............................16, 22, 23

*Gerritsen v. Warner Bros. Entm't Inc.*,
   116 F. Supp. 3d 1104 (C.D. Cal. 2015) .................................................................................3, 4

*Gibson v. Bob Watson Chevrolet-Geo, Inc.*,
   112 F.3d 283 (7th Cir. 1997) ...........................................................................................6, 7, 17

*Green v. Levis Motors, Inc.*,
   179 F.3d 286 (5th Cir. 1999) .....................................................................................................6

*Hernandez v. Downey Savings & Loan Ass'n*,
   No. 08CV2336-IEG, 2009 WL 704381 (S.D. Cal. Mar. 17, 2009)............................14, 15, 16

*Int'l Longshore & Warehouse Union, Local 40 v. Grain*,
   No. 3:13-CV-00513, 2013 WL 6665725 (D. Or. Dec. 17, 2013)...............................................4

*Jackson v. Bank of Haw.*,
   902 F.2d 1385 (9th Cir. 1990) .................................................................................................26

*Jones v. Bill Heard Chevrolet, Inc.*,
   212 F.3d 1356 (11th Cir. 2000) ...........................................................................................6, 7, 8

*Kichatov v. Nationstar Mortg., Inc.*,
   No. 3:13-CV-00103-BR, 2013 WL 3025981 (D. Or. June 14, 2013) ......................................16

Page ii  -  REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
            TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
            TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

*Medici v. JP Morgan Chase Bank, N.A.*,
    No. 3:11-CV-00959-HA, 2013 WL 6178285 (D. Or. Nov. 25, 2013) ...................................26

*Ott v. Mortg. Inv'rs Corp. of Ohio*,
    65 F. Supp. 3d 1046 (D. Or. 2014) ...........................................................................................4

*Ovation Toys Co. v. Only Hearts Club*,
    675 F. App'x 721 (9th Cir. 2017) ............................................................................................4

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ...........................................................................................3, 4

*Reyes–Gaona v. N.C. Growers Ass'n*,
    250 F.3d 861 (4th Cir.2001) ..................................................................................................16

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010) ...............................................................................10, 11, 25

*Theiss v. CitiMortgage, Inc.*,
    No. 6:12-CV-2215-PA, 2013 WL 4516764 (D. Or. Aug. 23, 2013)......................................26

*Willis v. Bank of America Corp.*,
    No. ELH-13-02615, 2014 WL 3829520 (D. Md. Aug. 1, 2014)................................14, 15, 16

**Statutes**

15 U.S.C. § 1605(a) ...................................................................................................................15

15 U.S.C. § 1632(a) .....................................................................................................................8

15 U.S.C. § 1638(a) ...................................................................................................................13

15 U.S.C. § 1638(b) ...................................................................................................................16

ORS 646.608(1)(a) .............................................................................................................. passim

ORS 646.608(1)(b) .............................................................................................................. passim

ORS 646.608(1)(c) .............................................................................................................. passim

ORS 646.608(1)(j) .............................................................................................................. passim

ORS 646.608(1)(s) .............................................................................................................. passim

ORS 646.608(1)(u) .....................................................................................................................23

Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*...............................................16

Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ............................................................... passim

Page iii  -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
            TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
            TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

Unfair Trade Practices Act, ORS 646.605 *et seq.*.................................................................. passim

**Regulations**

12 C.F.R. pt. 226, subpt. A ..................................................................................14, 17

12 C.F.R. pt. 226, subpt. C .............................................................................6, 9, 17

12 C.F.R. § 226.4(a)(3) .......................................................................................15

12 C.F.R. § 226.17(a)(1) ......................................................................................8

12 C.F.R. § 226.18 ..............................................................................................13

OAR 137-020-0020(2)(j) ....................................................................................25

OAR 137-020-0020(3)(u) ..........................................................................19, 23, 26

OAR 137-020-0020(3)(u)(A)(i) ......................................................................24, 25

OAR 137-020-0020(3)(u)(B) ..............................................................................25

OAR 137-020-0040(2)..........................................................................................26

Page iv  -  REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

## I.    INTRODUCTION

The Court should grant Defendants' Motion to Dismiss (the "Motion") and dismiss the claims that are at issue here, with prejudice and without leave to replead.

In their Response to Defendants' Motion (the "Response"), Plaintiffs do not raise a single colorable argument against dismissal. Nor do they offer a single case or authority that supports any of their arguments. Instead, with respect to their claims under the federal Truth in Lending Act ("TILA") and Oregon's Unfair Trade Practices Act (the "UTPA"), Plaintiffs argue that the statutes mean what Plaintiffs want them to mean, and that the retail installment contracts for Plaintiffs' vehicle purchases say what Plaintiffs want them to say. But the statutes, implementing regulations, and official Federal Reserve commentary provide clear guidance and instruction as to the disclosures that are required in order to comply with TILA and the UTPA, and courts that have been presented with the very same arguments advanced by Plaintiffs here have rejected those arguments unambiguously. The retail installment contracts clearly and conspicuously disclose what is required, no matter how Plaintiffs try to twist and mischaracterize those documents. For these reasons, and as set forth in detail in Defendants' Motion and below, Plaintiffs' TILA and UTPA claims should be dismissed.

Plaintiffs' sole argument against dismissal of their common law claim is a similar failed attempt at obfuscation. Plaintiffs again argue that the retail installment contracts say something they do not – that the lifetime oil contracts purchased by Plaintiffs Carol and Martin Jocks were necessarily provided by a third party. A cursory glance at the retail installment contracts for the Jocks' two vehicle purchases that are at issue here establishes that those documents say no such thing. Even if they did, Lithia Motors, Inc. – the entity providing the lifetime oil contracts – *is* a

Page 1    -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

third party to the Jocks' vehicle purchases.  Plaintiffs' common law fraud claim is entirely

meritless, and it should be dismissed as well.

## II.    ARGUMENT

### A.    Plaintiffs Fail to State TILA, UTPA, or Common Law Fraud Claims Against the Non-Dealership Defendants.

As a threshold matter, and in addition to the reasons set forth below, all of Plaintiffs'

claims that are the subjects of this Motion should be dismissed with respect to non-dealership

Defendants Lithia Motors, Inc. and Lithia Financial Corporation.  First, the non-dealership

Defendants are not "creditors" against whom TILA claims (or UTPA claims predicated on

purported TILA violations) may be sustained.  (*See* Mot. at 11-12 & n.4; *see also, e.g., Baldwin

v. Laurel Ford Lincoln-Mercury, Inc.*, 32 F. Supp. 2d 894, 904 (S.D. Miss. 1998) (only

dealership defendant, and not non-dealership defendants, was TILA creditor).)  Second, the non-

dealership Defendants are not parties to the retail installment contracts that contain the

disclosures upon which Plaintiffs' common law fraud claim and remaining UTPA claims are

based.  The disclosures in those contracts were made by the dealership Defendants – not the non-

dealership Defendants.  Plaintiffs' common law fraud claim and remaining UTPA claims should

be dismissed with prejudice as to the non-dealership Defendants on these bases.

Plaintiffs do not address this point in their Response with respect to their TILA and

UTPA claims, and thus have waived any argument to the contrary.  With respect to Plaintiffs'

common law fraud claim only, they "clarify" that their claim is directed at Lithia Klamath Falls

as "the entity that sold the Lifetime Oil to Plaintiffs the Jocks," but also add that "[t]he fraud

claim is also directed at [Lithia Motors, Inc.], who owns and operates [Lithia Klamath Falls]."

(Resp. at 31.)

Plaintiffs appear to argue that Lithia Motors, Inc. should be subject to liability under an alter ego theory.  In the Third Amended Complaint, Plaintiffs plead that Lithia Motors, Inc. and Lithia Klamath Falls (and all of the Defendants) "are operated as one single business enterprise and that these entities are in fact the alter egos of each other."  (TAC ¶ 14.)  In support of their conclusory alter ego allegation, Plaintiffs allege only that "[t]hese entities share the same address, same officers, and are controlled and operated by [Lithia Motors, Inc.]."  (*Id.*)  This allegation is insufficient to extend Plaintiffs' claim for common law fraud against Lithia Klamath Falls (or their TILA or UTPA claims) to Lithia Motors, Inc.  Plaintiffs' own pleading establishes that Lithia Klamath Falls and Lithia Motors, Inc. do not share "the same address" (*see id.* ¶¶ 5, 8 (alleging different "principal offices" for Lithia Klamath Falls and Lithia Motors, Inc.)), and the remaining, conclusory allegations do not meet the required standard for pleading alter ego.

"To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (internal quotations marks, citations, and brackets omitted).  Establishing a "unity of interest and ownership" requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former" by "dictat[ing] every facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day operation."  *Id.* (internal quotations marks and citations omitted).  "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control."  *Id.*; *see also, e.g., Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1138 (C.D. Cal. 2015) ("Overlap between a parent's and a subsidiary's directors or executive leadership alone . . . is not suggestive of a unity of interest and

Page 3    -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

ownership."). Finally, and critically, "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements." *Gerritsen,* 116 F. Supp. 3d at 1136 (collecting cases).

Those "specific facts" are missing from the Third Amended Complaint; its conclusory allegations fall miles short of what is required in the Ninth Circuit and this district. *See, e.g., Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 724 (9th Cir. 2017) (affirming district court's dismissal of claims where allegations of alter ego were "stated in wholly conclusory terms with little or no supporting facts"); *Int'l Longshore & Warehouse Union, Local 40 v. Grain*, No. 3:13-CV-00513, 2013 WL 6665725, at *5 (D. Or. Dec. 17, 2013) ("conclusory allegations" that entities "perform the same work in the same location and that [one] is a wholly-owned and controlled subsidiary of [the other]" insufficient to plead alter ego); *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1056 (D. Or. 2014) (allegations that one defendant "'[was] an alter ego of' the [other] defendants based on 'a unity of interest and ownership,' 'commingling of property rights or interests,' and acting 'in concert' in the [alleged] violations" at issue were "too conclusory to pass muster, even at the pleading stage"); *see also, e.g., Ranza*, 793 F.3d at 1074-75 (even where allegations were non-conclusory, declining to find alter ego relationship between parent and subsidiary despite parent being "heavily involved in [the subsidiary's] operations" and "active in macromanagement issues" because parent did not "direct[] [the subsidiary's] routine day-to-day operations, and nothing suggests the entities failed to observe their separate corporate formalities"). Along with their TILA and UTPA claims,

Page 4    -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

Plaintiffs' common law fraud claim should be dismissed with prejudice as against Lithia Motors, Inc. (and Lithia Financial Corporation) on this basis.[1]

### B.     Plaintiffs Fail to State Claims Arising Under TILA.

Defendants do not dispute that "[t]he purpose of . . . TILA is to protect the consumer from inaccurate and unfair credit practices," as Plaintiffs state in their Response.  (Resp. at 12.) However, the statute requires only certain disclosures within reasonable, established limits. These limits, which are delineated by TILA's statutory text, Regulation Z (TILA's implementing regulation), Federal Reserve commentary concerning the statute and regulations, and caselaw, provide a clear roadmap as to which disclosures statutory "creditors" like the dealership Defendants are required to make to vehicle purchasers, and which disclosures are not required (and thus are not actionable under TILA).  Plaintiffs attempt to expand these disclosure requirements so that their TILA claims might survive dismissal.  But the dealership Defendants have made precisely the disclosures they were required to make with respect to the financing and third-party products obtained by Plaintiffs in connection with their vehicle purchases.  For this reason, the purported TILA violations in the Complaint fail as a matter of law.  Plaintiffs' TILA claims (and their UTPA claim premised on Defendants' purported TILA violations) should be dismissed with prejudice.

### 1.     Plaintiffs Fail to State a TILA Claim Arising from the Sale of Third-Party Products.

Plaintiffs' TILA claims arising from the sale of third-party products should be dismissed because the retail installment contracts for each of the vehicle purchases at issue clearly and

---

[1] Plaintiffs do not specifically argue that their common law fraud claim is directed at Lithia Financial Corporation, but do argue that their claim is directed "jointly and severally against the other Defendants" because "Plaintiffs also have alleged vicarious liability."  (Resp. at 31.)  For the same reasons as set forth above, Plaintiffs have not adequately pleaded alter ego or any similar theory vis-à-vis Lithia Financial Corporation.

Page 5   -   REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

unambiguously disclose that those Defendants "may be retaining a portion of [the] amount[s] paid for those products." (*See* Declaration of Keith McIntire in Support of Defendants' Motion ("7/28/17 McIntire Decl."), Exs. 3-8 at 1.) This is precisely the disclosure that is required by TILA, as set forth in both the Federal Reserve's official commentary and settled caselaw. (*See* Mot. at 11-14.)

Plaintiffs cannot establish otherwise. First, they argue that the Federal Reserve commentary cited in Defendants' Motion should not be considered by the Court in determining what disclosures the dealership Defendants were required to make under TILA with respect to the third-party products purchased by Plaintiffs. (Resp. at 14.) That commentary, which addresses the exact issue here, provides:

> Given the flexibility permitted in meeting the requirements of the amount financed itemization (see the commentary to § 226.18(c)), the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category "amount paid to others" language such as "(we may be retaining a portion of this amount)."

12 C.F.R. pt. 226, subpt. C (Supp. I) (discussion of para. 18(c)(1)(iii)). Far from "abrogating" the statutory language in TILA (*see* Resp. at 14), the Federal Reserve's commentary provides TILA creditors like the dealership Defendants with unambiguous guidance as to how to comply with the statute. For this reason, several courts have relied on the this commentary in finding that a creditor's disclosure that it "may be retaining a portion of [the] amount" paid for third-party products is sufficient to comply with TILA. *See, e.g., Jones v. Bill Heard Chevrolet, Inc.*, 212 F.3d 1356, 1362 (11th Cir. 2000) (discussed below); *Gibson v. Bob Watson Chevrolet-Geo, Inc.,* 112 F.3d 283, 285-86 (7th Cir. 1997); *Bell v. Muller*, 118 P.3d 405, 412 (Wash. Ct. App. 2005); *see also Green v. Levis Motors, Inc.*, 179 F.3d 286, 294 (5th Cir. 1999) (applying commentary language to situation where dealership included an undisclosed "upcharge" as part

Page 6    -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

of a licensing fee paid to the state and concluding that "creditors [have] the option of either separately itemizing the actual amount paid to third parties or reporting one lump sum (made up of the actual amount paid to a third party and the upcharge) with an accompanying notation that the creditor might have included an upcharge").

*Jones*, the sole case cited by Plaintiffs in their argument that the Court should not consider the Federal Reserve commentary, is directly on point – though not for the reasons Plaintiffs appear to think.  In *Jones*, a defendant Chevrolet dealership sold a service contract provided by third party General Motors to a vehicle purchaser for $2,495, but retained $2,205 of that amount as profit.  212 F.3d at 1359.  Unlike the dealership Defendants here, however, the dealership in *Jones* "did not disclose to [the purchaser] that it was retaining any portion of the amount listed as paid to General Motors."  *Id.*  The Chevrolet dealership argued that because the Federal Reserve commentary provided that a creditor *could* add a disclosure that it "'may be retaining a portion of [the] amount'" paid for third-party products, the dealership had an *option* of whether to include such a disclosure or no disclosure at all.  *Id.* at 1362 (citation omitted). The Eleventh Circuit rejected this argument, instead joining the conclusion reached by its "sister circuits" – explicitly including the Seventh Circuit in *Gibson* – and "supported by the supplementary information to the [official Federal Reserve] Commentary" that a creditor does not have to "'disclos[e] the specific amount retained'" in the sale of third-party products, but does have to disclose that it "'may be retaining a portion of [the] amount'" paid for those products.  *Id.* at 1362-63 (citations omitted).  In other words, *Jones* stands for exactly the disclosure rule that is articulated in Defendants' Motion and that was followed by the dealership Defendants in the retail installment contracts.  And, far from declining to consider the Federal

Reserve commentary, that commentary was the starting point of the *Jones* court's analysis.  *See id.*[2]

Plaintiffs next argue that, even if the dealership Defendants complied with TILA by disclosing that they may be retaining a portion of the amount paid for a third-party product (which they did), the dealership Defendants "includ[e] conflicting, confusing representations" that nevertheless render the retail installment contracts non-compliant.  (Resp. at 15.)  Here, Plaintiffs selectively quote several related line items from the retail installment contracts in an intentionally confusing, out-of-order manner in an attempt to establish that the disclosures made by the dealership Defendants regarding the amounts paid for third-party products "contradict and cloud the 'may be retaining' language" contained in the contracts.  (*Id.* at 15-18.)  Plaintiffs contend that such disclosures do not satisfy the "clear and conspicuous" requirement in TILA and Regulation Z.  *See* 15 U.S.C. § 1632(a); 12 C.F.R. § 226.17(a)(1).

Plaintiffs are wrong.  Their disorienting characterization of the disclosures contained in the retail installment contracts falls apart upon a cursory glance at the contracts themselves.  Each of the retail installment contracts for the transactions at issue includes an "ITEMIZATION OF AMOUNT FINANCED" that is required by TILA and that lists the individual line item entries that, added together, constitute the amount financed in the transaction.  This itemization includes five categories of line items under separate headings, including a category heading reading:

---

[2] This is one of many examples of selective citation by Plaintiffs.  They begin their analysis by citing *Jones* for the proposition that commentaries "[do] not abrogate or affect in any way the clear statutory requirement in TILA[ ] . . . that the creditor shall disclose accurately the amount paid to third parties."  212 F.3d at 1362.  But Plaintiffs left out the critical first part of the quotation: "[W]e agree with two other circuits' conclusions that the Revised Commentary does not abrogate or affect in any way the clear statutory requirement  . . . ." *Id.*

Page 8    -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

4.  Charges Other than Finance Charge, including Amounts Paid to
Others on My Behalf: ( * Seller may be retaining a portion of this
amount)

(7/28/17 McIntire Decl., Exs. 3-8 at 1.)  The line items for the third-party products purchased by

Plaintiffs are listed immediately under this heading and, in each instance, *include an asterisk*

referring the purchaser directly back to the disclosure in the heading that dealership Defendant

"may be retaining a portion of this amount."  (*Id.*)  Far from being confusing or conflicting, these

disclosures are abundantly clear and understandable to any reasonable reader.  It is unreasonable

to conclude that an asterisk would so perplex a reader that he or she could not make sense of this

clear disclosure.

None of the authorities cited by Plaintiffs suggests otherwise.  As Plaintiffs concede,

Regulation Z requires only that "disclosures be in a reasonably understandable form" and "be

presented in a way that does not obscure the relationship of the terms to each other."  12 C.F.R.

pt. 226, subpt. C (Supp. I) (discussion of para. 17(a)); *see also* Opp. at 17-18.  The Federal

Reserve commentary prescribes how to do exactly that, and the two Ninth Circuit cases cited by

Plaintiffs only underscore this point.

In the first case, *Barrer v. Chase Bank USA, N.A.,* 566 F.3d 883 (9th Cir. 2009), a credit

card cardholder agreement contained a "finance charge" section listing the plaintiff cardholders'

annual percentage rate as 8.99% based on the cardholders' credit history, subject to an increase

to a set "default rate" upon certain specified events of default.  *Id.* at 885-86.  Five and six pages

after the "finance charge" section, however, the agreement contained additional, open-ended

provisions stating that the issuing bank reserved the right to "add, delete, or modify provisions

includ[ing] . . . APRs" and to "periodically review your credit history."  *Id.* at 886.  The Ninth

Circuit held that those provisions were not "clear and conspicuous" for the purposes of TILA, explaining:

> [T]he change-in-terms provision appears on page 10-11 of the Agreement, five dense pages after the disclosure of the APR. It is neither referenced in nor clearly related to the "Finance Terms" section. This provision, as part of the APRs allowed under the contract, is buried too deeply in the fine print for a reasonable cardholder to realize that, in addition to the specific grounds for increasing the APR listed in the "Finance Charges" section, Chase could raise the APR for other reasons.

*Id.* at 892.

The second case, *Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010), involved a similar cardholder agreement. In *Rubio*, a plaintiff received a credit card solicitation offering a "fixed" 6.99% annual percentage rate. *Id.* at 1198. The disclosure of the annual percentage rate in the solicitation included an asterisk linking the rate to a paragraph "just below" the rate, which in turn provided that the rate would be subject to increase upon three specified events of default. *Id.* Also, "farther down on the same page," the solicitation included an additional term stating that the prospective cardholder would also be bound by the terms of a separate cardholder agreement, and that separate agreement included a broad reservation of rights on the part of the issuing bank to amend "any part of your Agreement, including periodic rates . . . at any time." *Id.* The Ninth Circuit held that the broad disclosure in the separate agreement was not "clear and conspicuous" in light of the "fixed" rate and the asterisk-linked specified events of default contained in the solicitation letter. *Id.* at 1203. Indeed, the court took special note that the disclosure in the separate agreement "was not linked to [the annual percentage rate disclosure] by asterisk," unlike the clear and conspicuous disclosure regarding events of default in the solicitation letter. *Id.*

Page 10 - REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

The disclosures found to be insufficient in *Barrer* and *Rubio* are nothing like the disclosure made by the dealership Defendants in the retail installment contracts here. The disclosure in the retail installment contracts that the dealership Defendants "may be retaining a portion of [the] amount" paid by Plaintiffs for each third-party product was not hidden several pages after the itemization of the cost of the product, like the disclosures at issue in *Barrer*. Nor were the disclosures here found in separate agreements altogether, like the disclosures at issue in *Rubio*. And unlike the non-compliant disclosures in both of those cases, the disclosures here were clearly linked by an asterisk to plain language located only a few lines from the itemized costs at issue, just as the Ninth Circuit found asterisk-linked disclosures to be compliant in the solicitation letter at issue in *Rubio*. *See id.*

In sum, any "reasonable [vehicle purchaser] would notice and understand" that the disclosure in the retail installment contracts that the dealership Defendants "may be retaining a portion of [the] amount" paid for third-party products means precisely that. *See Barrer*, 566 F.3d at 892. No amount of argument from Plaintiffs that these disclosures are "buried in the RIC fine print" (which is not true) can change that reality.[3]

_____

[3] Plaintiffs also mischaracterize a deposition of J.J. Hunsaker, the general manager at Volkswagen of Salem, in an effort to support their argument that the disclosure in the retail installment contracts that the dealership Defendants "may be retaining a portion of [the] amount" paid by Plaintiffs for third-party products was not conspicuous. (Resp. at 21.) In addition to being factually inaccurate and misleading, Plaintiffs' portrayal of Mr. Hunsaker's deposition testimony is not pleaded in the Third Amended Complaint. The Court should strike the testimony from Plaintiffs' Response and not consider it in deciding this Motion. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (in deciding a motion to dismiss, a district court's "[r]eview is limited to the complaint"); *Cycle Barn, Inc. v. Arctic Cat Sales Inc.*, 701 F. Supp. 2d 1197, 1202 (W.D. Wash. 2010) (prohibiting plaintiff from "submit[ting] additional evidence in support of its opposition to [defendant's] motion to dismiss" because the additional evidence "is not pled in the Complaint and, therefore, it cannot be a part of this Court's Rule 12(b)(6) analysis").

Page 11  -   REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
             TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
             TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Finally, with respect to service contracts only, Plaintiffs also point to an additional section of the retail installment contract that identifies the provider of the service contract and indicates that "[t]he cost of this contract is shown in 4c of Itemization below." (Resp. at 15; *see also* 7/28/17 McIntire Decl., Exs. 3-8 at 1.) The corresponding line item for the service contract in the "ITEMIZATION OF AMOUNT FINANCED," item 4.c, is found three lines below the heading disclosing that the dealership Defendant "may be retaining a portion of this amount" in connection with those line items containing an asterisk. (7/28/17 McIntire Decl., Exs. 3-8 at 1.) Item 4.c reads: "Cost of Optional Service Contract paid to the Company named above (covers cost of certain repairs)*." (*Id.*) Plaintiffs argue that, notwithstanding the inclusion of the asterisk and the triggering of the corresponding disclosure that the dealership Defendant "may be retaining a portion of this amount," this line item and the section of the retail installment contract identifying the provider of the service contract combine to give a "plausible impression" that the entire amount paid for the service contract must be paid to "the company named above." (Resp. at 16-18.) As explained above, this simply is not the case. Any reasonable vehicle purchaser would understand the disclosures contained in the retail installment contract to plainly state that the dealership Defendants may retain some portion of the amounts charged for the third-party products that that individual elected to purchase.

### 2.    Plaintiffs Fail to State a TILA Claim Arising from the Alleged Existence of a Yield Spread Premium or a Flat Fee.

Plaintiffs' TILA claims arising from the alleged non-disclosure by the dealership Defendants of a yield spread premium or flat fee received in connection with Plaintiffs' vehicle purchases also should be dismissed, because the disclosures Plaintiffs allege to be missing again simply are not required under TILA. The caselaw, Regulation Z, and the statute itself all make clear that a TILA creditor must disclose only the interest rate charged to the customer and the

Page 12  -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

non-itemized finance charge paid by the customer. (*See* Mot. at 15-18; *see also* 15 U.S.C. §
1638(a) (listing the disclosures that a dealership must make, including the interest rate charged to
the customer and the finance charge, but not including a yield spread premium or flat fee); 12
C.F.R. § 226.18 (same).) The dealership Defendants have done so: the retail installment
contracts for the vehicle purchase at issue clearly display the annual percentage rates charged to
Plaintiffs and the finance charges to be paid by Plaintiffs. (*See* 7/28/17 McIntire Decl., Exs. 3-8
at 1-2.)

Plaintiffs now argue that dealerships must disclose the existence and amount of a yield
spread premium or flat fee because the existence of a yield spread premium or flat fee serves to
"inflate" the interest rate charged to the customer. (*See* Opp. at 23.) Plaintiffs contend that "the
APR as represented in the RIC is not the real rate that the consumers should have been charged,"
and they appear to argue that the alleged "real rate that the consumers should have been charged"
is the rate that must be disclosed pursuant to TILA. (*Id.*) In making this argument, Plaintiffs
admit that "TILA does not directly require disclosure of the [yield spread premium]." (Resp. at
36.)

Plaintiffs' new argument fails for several reasons. First, Plaintiffs' interest rate theory is
not pleaded in the Third Amended Complaint. Plaintiffs allege only that Defendants "failed to
clearly and conspicuously disclose to the Plaintiffs the existence of the yield spread premium or
[flat fees] that were paid or received in relation to arranging financing for the Plaintiffs." (TAC
¶ 95.) The Court should not consider an entirely new theory pleaded by Plaintiffs in their
Response, but not in the operative pleading, in deciding this Motion.

Second, with respect to flat fees received in connection with Plaintiffs' vehicle purchases,
Plaintiffs fail to acknowledge that such fees are paid by financial institutions to the dealership

Page 13  -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

Defendants. (*See* Mot. at 17.) Those fees are not paid by the customer, are not part of the finance charge (though, even if they were, they would not need to be disclosed separately), and have no bearing on the annual percentage rate charged to the customer. They do not implicate TILA in any way. Plaintiffs have not addressed this point and thus have waived any argument against it.

Third, and most important, TILA does not require that a creditor disclose the "real rate" that a consumer "should have been charged" – whatever that means. The creditor must disclose the interest rate that is *charged to the customer.* The individual variables contributing to that rate – be they the interest rate offered by a lender, the Federal Reserve discount rate, individual components of the finance charge that contribute to the rate, or any other variables used in calculating the rate – do not need to be disclosed. There is no support whatsoever in TILA, Regulation Z, the Federal Reserve commentary, or the caselaw for the type of interest rate disclosure Plaintiffs apparently seek.[4]

Plaintiffs certainly offer none. Instead, they attempt to distinguish some of the cases cited in Defendants' Motion. Their attempts fail. Plaintiffs first turn to *Willis v. Bank of America Corp.*, No. ELH-13-02615, 2014 WL 3829520 (D. Md. Aug. 1, 2014), and *Hernandez v. Downey Savings & Loan Ass'n*, No. 08CV2336-IEG, 2009 WL 704381 (S.D. Cal. Mar. 17, 2009), two cases in which district courts rejected the argument made by Plaintiffs here and unambiguously held that "TILA does not require a lender to break down the components of the finance charge to disclose the separate existence of a yield spread premium." *Willis*, 2014 WL

---

[4] Notably, the official commentary plainly states that a "discount imposed on a credit obligation when it is assigned by a seller-creditor [such as a dealership Defendant] to another party [such as the lending institution] is *not* a finance charge as long as the discount is not s*eparately* imposed on the consumer." 12 C.F.R. pt. 226, subpt. A, § 226.4(a)(2) (Supp. I) (emphases added). There is no allegation here that any markup is separately imposed: in fact, Plaintiffs allege exactly the contrary. TILA does not impose on dealerships a duty to disclose the markup.

Page 14 -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

3829520, at *16; *see also Hernandez*, 2009 WL 704381, at *6 (rejecting argument that TILA requires disclosure of "the effect of the [yield spread premium] on [the plaintiff's] interest rate" (emphasis omitted)).  And despite conceding in their Response that "TILA does not directly require disclosure of the [yield spread premium]," Plaintiffs argue that *Willis* and *Hernandez* "address mortgages, rather than car loans," and thus do not apply.  (Resp. at 24, 36.) Specifically, they argue that "*Willis* finds its support from *Hernandez*," and that because the court in *Hernandez* referenced 15 U.S.C. § 1605(a)(6), which Plaintiffs contend is a "specific rule pertaining to mortgage broker fees," both cases are inapplicable.  (*Id.*)  Once again, Plaintiffs are wrong.  15 U.S.C. § 1605(a)(6) is not a "specific rule pertaining to mortgage broker fees."  Rather, 15 U.S.C. § 1605(a) provides the definition for "finance charge" under TILA, which is "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  This definition further provides six non-exclusive "examples" of the types of charges comprising a finance charge at 15 U.S.C. § 1605(a)(1)-(6), including mortgage broker fees. Thus, 15 U.S.C. § 1605(a)(6) merely confirms that a mortgage broker fee must be included as part of the finance charge disclosed to the consumer.[5]  This does not change the core holding in *Hernandez* that neither a yield spread premium nor any other individual component of a finance charge need be disclosed under TILA; only the finance charge itself must be disclosed.

---

[5] Although Plaintiffs do not discuss it in their Response, the *Hernandez* court also cited to a provision of Regulation Z, 12 C.F.R. § 226.4(a)(3), in addition to 15 U.S.C. § 1605(a)(6).  *See Hernandez*, 2009 WL 704381, at *8.  12 C.F.R. § 226.4(a)(3) is titled "[s]pecial rule; mortgage broker fees," and it provides that "[f]ees charged by a mortgage broker (including fees paid by the consumer directly to the broker or to the creditor for delivery to the broker) are finance charges even if the creditor does not require the consumer to use a mortgage broker and even if the creditor does not retain any portion of the charge."  Like 15 U.S.C. § 1605(a)(6), this rule merely establishes that a mortgage broker fee must be included as part of the finance charge – not that the fee must be separately disclosed.

Page 15   -   REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

*Hernandez*, 2009 WL 704381, at *8; *see also Willis,* 2014 WL 3829520, at *16.  That *Hernandez* and *Willis* involved mortgages instead of car loans is irrelevant.[6]

Plaintiffs also seek to distinguish *Baldwin v. Laurel Ford Lincoln-Mercury, Inc.*, another district court case holding that a dealership need not disclose a "secret agreement whereby [a lender] would pay [the dealership] part of the interest charged [to the vehicle purchaser] in the contract as a commission" under TILA.  *Baldwin*, 32 F. Supp. 2d at 897.  Plaintiffs argue that, the *Baldwin* opinion is inapplicable because it does not contain the words "yield spread premium" or "YSP."  (Resp. at 25-26.)  This is not so.  Although the court in *Baldwin* may not have used the words "yield spread premium" or "flat fee," the so-called "secret agreement" alleged by the plaintiff in that case is functionally identical.  Like *Hernandez*, *Willis*, and other cases in which courts have found that TILA does not impose upon a dealership a duty to disclose a yield spread premium, *Baldwin* is directly applicable here.  *See also, e.g.*, *Ford Motor Credit Co. v. Majors*, No. A04-1468, 2005 WL 1021551, at *6 (Minn. Ct. App. May 3, 2005) (holding that even if a "buy rate" were lower than the rate a dealership ultimately sold to a customer, "the

[6] Plaintiffs also argue that disclosure of a yield spread premium under TILA is unnecessary in mortgage cases because "[t]he U.S. Department of Housing and Urban Development already requires the disclosure of YSP in both the GFE (Good Faith Estimate) form and the HUD-1 form."  (*See* Resp. at 25.)  The disclosure requirements for good faith estimates (and corresponding HUD-1 forms) are derived from 15 U.S.C. § 1638(b), a TILA section applying exclusively to "residential mortgage transactions" that also incorporates the separate requirements of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*  These provisions have nothing to do with TILA's baseline disclosure requirements for transactions other than "residential mortgage transactions" (including vehicle purchases).  Indeed, the need for separate, additional disclosure requirements regarding yield spread premiums with respect to "residential mortgage transactions" establish that TILA's baseline disclosure requirements *do not* require disclosure of a yield spread premium.  Had Congress intended to require the disclosure of a yield spread premium in non-mortgage cases, it knew how to do so.  *See Kichatov v. Nationstar Mortg., Inc.*, No. 3:13-CV-00103-BR, 2013 WL 3025981, at *5 (D. Or. June 14, 2013) ("[T]he doctrine of *expressio unis est exclusio alterius* instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded." (quoting *Reyes–Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir.2001)).

Page 16 -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

required disclosure must provide only a statement showing the total dollar amount the credit will cost," and "[t]hus, when a retail installment contract fully discloses the total amount the consumer is required to pay, the dealer discount or markup is immaterial" (citing 12 C.F.R. pt. 226, subpt. A, § 226.4(a)(2) (Supp. I); 12 C.F.R. pt. 226, subpt. C, § 226.18(d)(1) (Supp. I))). Each of these cases is fatal to Plaintiffs' argument.[7]

### C.    Plaintiffs Fail to State a Claim for Common Law Fraud.

Plaintiffs also cannot adequately plead a claim for common law fraud.  Plaintiffs' fraud theory, as newly presented in their Response, is as follows: Plaintiffs Martin and Carol Jocks elected to purchase lifetime oil contracts in each of their two vehicle purchases (which are the only two vehicle purchases at issue in Plaintiffs' fraud claim); the "Lithia Defendants represented to [the Jocks] that [the lifetime oil products] were a third party product"; the retail installment contracts for those two vehicle purchases list "DMS" as the provider of the lifetime oil contracts; and, because DMS is an assumed business name for Lithia Motors, Inc., the alleged representation that the lifetime oil contracts purchased by the Jocks were provided by third parties was fraudulent.  (Resp. at 27.)

There are two fatal flaws to Plaintiffs' fraud theory.  First, the retail installment contracts at issue do not represent that the lifetime oil products purchased by the Jocks necessarily were third-party products.  The representations at issue regarding the Jocks' lifetime oil contracts are,

---

[7] Despite arguing incorrectly that *Baldwin* is inapplicable to this case, Plaintiffs simultaneously seek to use the case to undermine *Gibson*, the leading case on required TILA disclosures regarding third-party products.  Specifically, Plaintiffs quote a passage from the *Baldwin* opinion in which the court stated that it "disagrees that the Seventh Circuit's reading of the [Federal Reserve] commentary is the only sensible one."  *Baldwin*, 32 F. Supp. 2d at 905.  Plaintiffs' emphasis of this language is misleading at best.  In the passage in question, the *Baldwin* court suggested that TILA may require even *less* disclosure than that mandated by *Gibson* – that is, a dealership may have the option of not even disclosing that it may be retaining a portion of amounts charged for third-party products.  *See id.* at 904-05.  It lends no support to Plaintiffs here.

Page 17  -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

like the disclosures relating to other products purchased by Plaintiffs, located in the

"ITEMIZATION OF AMOUNT FINANCED" section of the retail installment contracts for the

Jocks' vehicle purchases, under the category heading reading:

> 4.  Charges Other than Finance Charge, including Amounts Paid to
> Others on My Behalf: ( * Seller may be retaining a portion of this
> amount)

(7/28/17 McIntire Decl., Exs. 4, 5 at 1.)  The lifetime oil contracts are then listed in a line item

under this category heading, reading:

> j.  Other Charges (Seller must identify who will receive payment
> and describe purpose – include negative trade equity here) *

(*Id.*)  Neither of these disclosures nor anything else contained in the retail installment contracts

represents that the party providing the Jocks' lifetime oil contracts necessarily was a "third

party."  In this regard, the only thing the retail installment contracts do is group the amounts paid

by the Jocks for their lifetime oil contracts along with several "Charges Other than Finance

Charge, *including* Amounts Paid to Others on My Behalf."  (*Id.* (emphasis added).)

Plaintiffs argue, without any further explanation, that the presence of the word

"including" in the operative category heading is "the classic example of sleight of hand," and

that "[w]hether fraud can be deducted from this set of facts is still a matter that should be decided

by the fact finder." (Resp. at 30.)  Not so.  No reasonable reader would interpret the clause

"including Amounts Paid to Others on My Behalf" to mean anything other than "including, but

not necessarily, amounts paid to third parties."  Plaintiffs' proposed reading of the retail

installment contracts would delete the word "including" from this phrase, in order to make it

seem as though *everything* listed below was paid to third parties.  The Court should decline to

rewrite the contracts as requested by Plaintiffs.

Page 18   -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

Second, even if the retail installment contracts for the Jocks' vehicle purchases represented that DMS/Lithia Motors, Inc. were a third party, there still would be no misrepresentation. As Defendants already have established, *Lithia Motors, Inc. is a third party* for purposes of the retail installment contracts. (*See* Mot. at 22 n.7.) Lithia Motors, Inc. is not a party to the contracts; rather, the only parties are the Jocks and Lithia Klamath Falls. (*See* 7/28/17 McIntire Decl., Exs. 4, 5 at 1.) Plaintiffs' fraud claim fails on this basis, too.[8]

### D. Plaintiffs Fail to State UTPA Claims Arising Under ORS 646.608(1)(a), (b), (c), (j), and (s) and OAR 137-020-0020(3)(u).

Plaintiffs' arguments against dismissal of the UTPA claims that are the subjects of Defendants' Motion mirror their arguments against dismissal of their TILA claims, and they should meet the same fate. Plaintiffs are correct that, like TILA, the purpose of Oregon's UTPA is the protection of consumers. (*See generally* Opp. at 40.) Also like TILA, however, the UTPA is not unlimited in scope; the statute extends only to specific, enumerated trade practices. Plaintiffs ask this Court to extend the scope of the UTPA far beyond what is authorized by the statutory text without providing any supporting authority. As with their TILA claims, the Court should decline to do so, and should dismiss Plaintiffs' UTPA claims with prejudice.[9]

---

[8] As set forth above, see *supra* at Section II.A, Plaintiffs' fraud claim is also unsupportable vis-à-vis Lithia Motors, Inc. or any other Defendant on an alter ego theory.

[9] Plaintiffs argue in their Response that the parties did not confer concerning the UTPA claims that are the subjects of Defendants' Motion. (Resp. at 31-32.) This is not accurate. During telephone conferences on June 29, 2017 and July 5, 2017, counsel for Defendants notified counsel for Plaintiffs that Defendants would move to dismiss each of the newly added UTPA claims in the Third Amended Complaint. (9/15/17 Declaration of Keith McIntire in Support of Defendants' Reply ("9/15/17 McIntire Decl.") ¶¶ 3, 4.) After Plaintiffs declined to respond in substance to Defendants' detailed letter setting forth why Plaintiffs' TILA and fraud claims are subject to dismissal, and instead responded summarily that "the parties are viewing TILA (*and the disclosure requirements as a whole*) from very different perspectives," and stating that "any effective dialogue will likely require a full[-]fledged legal briefing" (*see* Mot. at 2; 7/28/17 McIntire Decl. ¶ 3, Exs. 1, 2), Defendants reasonably assumed that Plaintiffs were finished

      1.     **Plaintiffs Fail to State UTPA Claims Arising Under ORS 646.608(1)(a), (b), and (c).**

Plaintiffs' UTPA claims arising under ORS 646.608(1)(a), (b), and (c) are premised entirely on their misguided common law fraud claim. And these claims should be dismissed for the same reason as their fraud claim: the retail installment contracts for the two vehicle purchases by the Jocks that are the subjects of those claims (and the fraud claim) do not represent that DMS/Lithia Motors, Inc. is necessarily a third party, and even if they did, DMS/Lithia Motors, Inc. *is* a third party to the contracts. *See supra* at Section II.C. Plaintiffs offer no other argument against dismissal, because no colorable argument exists. There is no possibility for "confusion or misunderstanding" as to who provided the Jocks' lifetime oil contracts: DMS/Lithia Motors, Inc. The Court should dismiss these claims.[10]

      2.     **Plaintiffs Fail to State a UTPA Claim Arising Under ORS 646.608(1)(j).**

Plaintiffs' UTPA claim arising under ORS 646.608(1)(j) should be dismissed because the alleged misrepresentations on which Plaintiffs base their claims have nothing to do with "price reductions," which is the sole subject of that provision. (*See* Mot. at 23.) Plaintiffs appear to argue that, by not disclosing the amounts paid by the dealership Defendants to the parties supplying the products or the dealership Defendants' profits in the sale of the products, the

---

conferring on the UTPA claims. (9/15/17 McIntire Decl. ¶ 5.) The arguments against dismissal in Plaintiffs' Response show that assumption to be correct. (*See also id.* ¶ 6.)

[10] Confusingly, Plaintiffs state that Defendants' Motion challenges "Plaintiffs' claims [arising under ORS 646.608(1)(a), (b), and (c)] pertaining to YSP only," and "did not challenge the Plaintiffs' claim concerning the third-party products." (Resp. at 32-33.) This is wrong. Plaintiffs' ORS 646.608(1)(a), (b), and (c) claims are only brought in connection with third-party products. (*See* TAC ¶¶ 104-08.) They do not bring ORS 646.608(1)(a), (b), or (c) claims in connection with yield spread premiums. (*See id.* ¶¶ 109-12.) In any event, Defendants' Motion is clear in seeking dismissal of "Plaintiffs' claims that Defendants somehow violated ORS 646.608(1)(a), (b), and (c) with respect to the sale of third party products." (Mot. at 22.)

Page 20 -   REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

dealership Defendants failed to disclose "price reductions *available to the Plaintiff*."[11]  (Resp. at

33-34.)  This is nonsense.  ORS 646.608(1)(j) does not contain the words "available to the

consumer," or any other words to that effect.  The provision extends only to "price reductions" –

for example, discounts or markdowns.  Indeed, if Plaintiffs' interpretation of the provision were

the correct one, it would mean that the sale of every gallon of milk, box of cereal, and other

product sold in Oregon would violate the UTPA unless the seller disclosed to the customer its

own supplier cost and profit in connection with the sale.  This cannot be the case.  The Court

should dismiss this claim.[12]

### 3.    Plaintiffs Fail to State a UTPA Claim Arising Under ORS 646.608(1)(s).

Plaintiffs' UTPA claim arising under ORS 646.608(1)(s) should be dismissed because, as

set forth above, *see supra* at Section II.B, the dealership Defendants made no "false or

misleading representations of fact concerning the offering price of, or [Plaintiffs'] cost for,"

third-party products or financing.  (*See* Mot. at 23-25.)  Indeed, the alleged "false

representations" Plaintiffs argue were made – that the dealership Defendants "told [Plaintiffs that

they] are paying $2,495 for a service contract, or that their APR is 8.9%" (*see* Opp. at 35) – were

not "false" at all.  Plaintiff Joseph Frank Mendoza *did* pay $2,495 for his service contract, and

the annual percentage rate for Gina and Dana Dalton's vehicle purchase *was* 8.99%.  For an

actionable violation of ORS 646.608(1)(s) to have occurred, Mendoza would have to have been

---

[11] In support of this argument, Plaintiffs once again impermissibly reference – and mischaracterize – the deposition testimony of Hunsaker.  The Court should not consider Hunsaker's testimony in deciding this Motion.  *See supra* at n.3.

[12] Unlike with respect to their UTPA claims arising under ORS 646.608(1)(a), (b), and (c), Plaintiffs *do* bring their ORS 646.608(1)(j) claim in connection with both third-party products and yield spread premiums.  (*See* TAC ¶¶ 104-08.)  However, Plaintiffs offer no explanation in either their Third Amended Complaint or their Response as to how their claims relating to yield spread premiums implicate "price reductions."  The ORS 646.608(1)(j) claim should be dismissed in its entirety.

Page 21  -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

charged *more* than $2,495 for his service contract (through, for example, *additional* hidden costs or fees charged to Mendoza), or the Daltons would have to have paid interest at *greater* than 8.99%. Plaintiffs do not allege that any such *additional* charges occurred; they only argue that the dealership Defendants had to disclose their supplier costs and profits. As with Plaintiffs' impermissibly expansive interpretation of ORS 646.608(1)(j), their interpretation of ORS 646.608(1)(s) would mean that every sale of "real estate, goods, or services" in Oregon violates the UTPA unless the seller discloses to the purchaser its own supplier cost and profit in connection with the sale.

Plaintiffs do not offer a single case or authority in support of their expansive interpretation of ORS 646.608(1)(s), because no such cases or other authorities exist. Rather, the courts that have addressed arguments like those made by Plaintiffs have unambiguously rejected them. For example, in *Majors*, the Minnesota Court of Appeals affirmed a trial court's dismissal of claims alleging violations of Minnesota's similar Uniform Deceptive Trade Practices Act (the "DTPA") and Prevention of Consumer Fraud Act (the "PCFA") as a result of a defendant dealership's failure to disclose a yield spread premium.[13] The *Majors* court emphatically rejected the plaintiff's argument that the yield spread premium earned by the dealership in connection with her vehicle purchase must be disclosed:

---

[13] As explained by the *Majors* court, Minnesota's DTPA "provides that a person engages in a deceptive trade practice when the person causes a likelihood of confusion or misunderstanding as to, among others, the source, affiliation, sponsorship, or approval of goods or services or misrepresents the geographic origin or characteristics of goods or services," and "[t]he MCFA makes it unlawful for 'any person [to use] any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby.'" *Majors*, 2005 WL 1021551, at *3, *7 (second brackets in original) (citing Minn. Stat. § 325D.44, subd. 1(2)-(5) and quoting Minn. Stat. § 325F.69, subd. 1).

Page 22  -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
             TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
             TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

> [The plaintiff] essentially argues that because she did not know
> how the financing arrangement between [the lender] and [the
> dealership] worked, she was misled into thinking that the rate [the
> dealership] offered her was the lowest rate for which she qualified.
> But [her] failure to understand how the financing arrangement
> worked does not establish that [the dealership] misrepresented or
> falsely implied that it would not charge a markup on the wholesale
> rate.

*Majors*, 2005 WL 1021551, at *5. Relying on the holdings of *Noel* and *Baldwin* (two of the

TILA cases cited in Defendants' Motion (*see* Mot. at 17), and above, *see supra* at Section

II.B.2), the *Majors* court found the plaintiff in that case, like Plaintiffs here, could not allege that

the dealership defendant "represented that it would not charge a markup over the rate available to

it from [the lender] or that [the lender] would have extended credit directly to [the plaintiff] at

the buy rate." *Id.*; *see also id.* at *6 ("Neither TILA nor the consumer-protection statutes

imposes on dealers the duty to disclose that [plaintiff] seeks to create."). The court also

recognized that – contrary to Plaintiffs' arguments in this case – the common understanding of

reasonable consumers is that "[i]nterest is the cost or price of borrowing money, and the [yield

spread premium] markup is nothing more than the dealer's profit on a loan transaction" *Id.* at

*7. As such, the court stressed that the dealership's "failure to disclose the markup did not create

a likelihood of confusion or misunderstanding." *Id.* This logic applies with equal force here.

### 4.     Plaintiffs Fail to State UTPA Claims Arising Under ORS 646.608(1)(u) and OAR 137-020-0020(3)(u).

Plaintiffs' UTPA claim arising under OAR 137-020-0020(3)(u) should be dismissed

because each of the retail installment contracts for Plaintiffs' vehicle purchases includes the

disclosures required by the rule. This is because the retail installment contracts clearly and

conspicuously disclose that "[t]he Annual Percentage Rate may be negotiable with the

[dealership]," and that the dealership "may assign this contract and retain [its] right to receive

Page 23   -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

part of the finance charge." (7/28/17 McIntire Decl., Exs. 3-8 at 2; *see also* Mot. at 25-27.)

OAR 137-020-0020(3)(u)(A)(i), the provision at issue, requires nothing more.

Both of Plaintiffs' arguments that the dealership Defendants violated OAR 137-020-0020(3)(u)(A)(i) fail. First, Plaintiffs argue that the dealership Defendants violated the rule because the retail installment contracts do not copy the rule's language word-for-word. (*See* Opp. at 36-37.) This is a superficial argument, elevating form over substance. OAR 137-020-0020(3)(u)(A)(i) requires that a dealership disclose that it "may receive additional compensation from the consumer for arranging the sale of the retail installment contract which may be in the form of a fee or additional loan points." The retail installment contracts disclose that the dealership Defendants "may assign [the] contract and retain [their] right to receive part of the finance charge." (7/28/17 McIntire Decl., Exs. 3-8 at 2.) Other than explaining that the "part of the finance charge" retained by the dealership may take the form of a yield spread premium or a flat fee – which are the only conceivable forms it *could* take – these disclosures are exactly the same. Both put any reasonable purchaser on clear notice that the dealership may earn a profit in exchange for helping to facilitate the purchaser's acquisition of financing from a lender. This is the disclosure that is required by the rule, and the dealership Defendants made it.

Second, Plaintiffs argue that the relevant disclosure in the retail installment contracts is not "clear and conspicuous." (*See* Opp. at 38-40.) Specifically, they assert that because the relevant disclosure is three-and-a-half inches below the disclosures of the annual percentage rate and finance charge on five of the six retail installment contracts at issue (*see id.* at 39 n.26; *see also* 7/28/17 McIntire Decl., Exs. 3-7 at 2), and twelve-and-a-half inches below those terms on the sixth retail installment contract at issue (*see* Opp. at 39; *see also* 7/28/17 McIntire Decl., Ex.

8 at 2), it is not in "direct proximity" to those terms pursuant to OAR 137-020-0020(2)(j).[14]  This argument too is meritless.  The disclosure that the dealership Defendants "may assign [the] contract and retain [their] right to receive part of the finance charge" is in a larger, bold font than the surrounding language, and by almost any measure is in direct proximity to the disclosures of the annual percentage rate and finance charge on the retail installment contracts.  Any reasonable vehicle purchaser would notice, review, and understand the disclosure.  Like the disclosures in the retail installment contracts that the dealership Defendants may retain a portion of the amounts paid for third-party products, *see supra* at Section II.B.1 – and unlike the egregious examples in *Barrer* and *Rubio* of disclosures that were found not to be clear and conspicuous, *see id.* – the disclosures here more than satisfy the "clear and conspicuous" standard.

Plaintiffs separately cite to OAR 137-020-0020(3)(u)(B), which only requires the disclosure of yield spread premiums of three percentage points or greater, and argue that "upon information and belief, [Defendants] kept they yield spread premium of more than three points from the Dalton transaction, but failed to disclose that amount to the Daltons."  (Resp. at 37.)  This is an entirely new argument.  The Third Amended Complaint is devoid of any allegations or claims relating to OAR 137-020-0020(3)(u)(B); Plaintiffs' claim is based exclusively on OAR 137-020-0020(3)(u)(A)(i).  (*See* TAC ¶ 109.C.)  The only impact of OAR 137-020-0020(3)(u)(B) on this case is the logical conclusion following from the rule: when a yield spread premium is *less* than three percentage points, there is no duty for a dealership to disclose it.

---

[14] Plaintiffs also cite commentary to OAR 137-020-0020(2)(j) pertaining to "advertisement[s]." (Resp. at 39 (quoting official commentary to advertising-specific subparts of OAR 137-020-0020(2)(j)).)  Because the disclosures at issue are not in advertisements, that commentary is irrelevant.

Page 25  -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

**E.     Plaintiffs Should Not Be Permitted to Amend Their Complaint a Fourth Time.**

Finally, Plaintiffs should not be permitted to replead the claims that are the subjects of Defendants' Motion, because any such repleading would be futile.  Courts in the Ninth Circuit deny leave to amend where "permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990); *see also Theiss v. CitiMortgage, Inc.,* No. 6:12-CV-2215-PA, 2013 WL 4516764, at *1-2 (D. Or. Aug. 23, 2013).  Each of the claims at issue fails as a matter of law, and no amount of further repleading will change that.

Moreover, Plaintiffs already have amended their pleading three times.  The Court should not allow a fourth amendment.  *See, e.g., Medici v. JP Morgan Chase Bank, N.A.*, No. 3:11-CV-00959-HA, 2013 WL 6178285, at *2 (D. Or. Nov. 25, 2013) (maintaining that a court's discretion to deny further amendment "'is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint'" (citation omitted)).

## III.     CONCLUSION

For all of the reasons set forth above and in Defendants' Motion, the Court should dismiss Plaintiffs' TILA claims (including Plaintiffs' claim under OAR 137-020-0040(2)), Plaintiffs' common law fraud claim, and Plaintiffs' UTPA claims premised on purported violations by Defendants of ORS 646.608(1)(a), (b), (c), (j), and (s) and OAR 137-020-0020(3)(u), with prejudice and without leave to amend, and order such other and further relief as the Court may deem appropriate.

/ / /

/ / /

Page 26  -    REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041

DATED:  September 15, 2017.

STOEL RIVES LLP

/s/ Jeremy D. Sacks
JEREMY D. SACKS, OSB No. 994262
jeremy.sacks@stoel.com
KEITH E. MCINTIRE, OSB No. 126210
keith.mcintire@stoel.com
KENNON SCOTT, OSB No. 144280
kennon.scott@stoel.com
Telephone:  503.224.3380

Attorneys for Defendants

Page 27  -  REPLY IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) PARTIAL MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

93946030.5 0063724- 00041