IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JOSEPH FRANK MENDOZA, MARTIN and CAROL JOCKS, DAWN CAVEYE and GINA and DANA DALTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LITHIA MOTORS, INC., LITHIA FINANCIAL CORPORATION, SALEM-V, LLC d/b/a VOLKSWAGEN OF SALEM, LITHIA KLAMATH, INC. d/b/a LITHIA KLAMATH FALLS AUTO CENTER, and LITHIA MEDFORD HON, INC.<br><br>Defendants. | Case No. 6:16-cv-01264-AA<br>**OPINION AND ORDER** |

AIKEN, District Judge:

Plaintiffs bring this putative class action suit against defendants Lithia Motors, Inc., et al. ("Lithia"), asserting various claims, including common law fraud, violations of the federal Truth in Lending Act ("TILA"), Oregon's Unlawful Trade Practices Act ("UTPA"), and Oregon's financial elder abuse statute. On June 19, 2017, I granted plaintiffs' Motion for Leave to File

Page 1 - OPINION AND ORDER

Third Amended Complaint ("TAC") (doc. 40). Defendants now move to dismiss certain claims contained therein. For the reasons discussed below, Lithia's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are taken from plaintiffs' TAC; they are accepted as true and construed in the light most favorable to plaintiffs for purposes of this motion. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). The named plaintiffs are residents of Oregon or California, who purchased vehicles and other goods or services from one or more of the defendants, all of which are headquartered in Oregon.

On or about June 6, 2016, plaintiff Joseph Frank Mendoza purchased a vehicle from Lithia at its Volkswagen of Salem dealership. The dealership arranged for vehicle financing with an interest rate of 3.94%, a higher rate than provided by the lender. In doing so, Lithia retained what plaintiff's term a kickback in connection with the arrangement of financing. Lithia also sold Mr. Mendoza products and services obtained through third parties. Specifically, Mr. Mendoza paid Lithia $2,495.00 for a vehicle service contract and $695.00 for gap insurance; both amounts exceeded Lithia's actual purchase price. Lithia purchased the service contract for $995 and the gap insurance for $278 and retained the difference as profit. Lithia did not disclose its specific fees associated with the arrangement of financing or the profit margins related to the sale of third-party products and services.

In February 2013, plaintiffs Carol and Martin Jocks purchased a vehicle from a Lithia dealership in Klamath Falls, Oregon. Then, in August 2013, the Jocks purchased another vehicle from the same dealership. Carol Jocks was over the age of sixty-five at the time of the purchases. Because the facts surrounding both transactions are identical or substantially similar,

Page 2 - OPINION AND ORDER

I will limit discussion to the latter of the two. In August 2013, Lithia arranged for vehicle financing at an interest rate of 3.99%, a higher rate than provided by the lender. In doing so, Lithia retained a fee in connection with the arrangement of financing. Lithia also sold the Jocks products and services obtained through third parties. For example, the Jocks purchased a lifetime oil service for $899, credit life insurance for $2.644.05, and gap insurance for $435; each charge exceeds Lithia's actual purchase price. Lithia purchased the lifetime oil service for $449.50, credit life insurance for $1,718.63, and gap insurance for $285; Lithia then sold these products to the Jocks and retained the difference as profit. Lithia did not disclose its specific fees associated with the arrangement of financing or the profit margins related to the sale of third-party products and services.

Plaintiffs Caveye and Dalton also purchased vehicles from Lithia, in November 2014 and May 2016 respectively. The circumstances surrounding these purchases are largely similar to those mentioned above. In both instances, Lithia arranged for financing and sold third-party products/services to plaintiffs. In both instances, Lithia retained and did not disclose fees associated with the arrangement of financing or profits related to the sale of third-party products and services.

On June 24, 2016, plaintiffs filed this class action suit. On September 22, 2016, defendants moved to dismiss plaintiffs' claims. In ruling on defendants' motion, I dismissed various claims by plaintiff, but I also granted plaintiffs leave to amend their complaint. Since the original filing, I have granted plaintiffs leave to amend on three separate occasions. Now, in response to plaintiffs' TAC, defendants again move to dismiss certain claims, all of which are discussed below.

///

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must contain sufficient factual allegations, which, if assumed to be true, "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the factual allegations in the complaint allow a court to reasonably infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must present more than the mere possibility of misconduct, *id.* at 679, and more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## DISCUSSION

I.  *TILA Disclosure Requirements*

Plaintiffs allege that Lithia failed to meet the disclosure requirements under TILA in relation to two courses of conduct: (1) sale of third party products and (2) arrangement of financing.

As a general matter, the purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 USC § 1601(a). In accordance with this purpose, TILA requires creditors to, among other things, make certain disclosures to borrowers. A complete list of the items TILA requires a creditor to disclose is found in both the statute and what is commonly known as Regulation Z. *See, e.g.*, 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18. The list of required disclosures includes items such as the "amount financed," the "finance charge," and the "annual percentage rate." 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18. Additionally, and of particular relevance to this case, TILA requires creditors to disclose "each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together

with an identification of or reference to the third person." 15 U.S.C. § 1638(b)(iii); 12 C.F.R. § 226.18(c)(iii).

A. *Sale of Third Party Products*

First, with respect to the sales of third-party products, plaintiffs allege that defendants "failed to properly disclose to consumers that a portion of the amount paid was retained by Lithia." Third Am. Compl. ¶ 94. Plaintiffs further allege that "Lithia did not itemize each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third persons." *Id.*

More simply stated, plaintiffs allege that Lithia failed to disclose that certain amounts, identified in the retail installment contracts as "amounts paid to others," were actually retained by Lithia. *Id.* The issue before me, then, is whether such a failure to disclose is impermissible under TILA. Importantly, the Federal Reserve has issued specific guidance to creditors in relation to requirements imposed by 15 U.S.C. § 1638(b) and 12 C.F.R. § 226.18(c). The agency's guidance squarely addresses the issue presented by plaintiffs:

> A sum is sometimes added to the amount of a fee charged to a consumer for a service provided by a third party (such as for an extended warranty or a service contract) that is payable in the same amount in comparable cash and credit transactions. In the credit transaction, the amount is retained by the creditor. Given the flexibility permitted in meeting the requirements of the amount financed itemization (see the commentary to § 226.18(c)), the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category "amount paid to others" language such as "we may be retaining a portion of this amount."

12 C.F.R. pt. 226, supp. I, subpt. C (discussion of para. 18(c)(1)(iii)).

When interpreting this precise language from the Federal Reserve, the Seventh Circuit explained that "[t]he only sensible reading of the commentary is as authorizing the dealer to disclose only the fact that it *may* be retaining *some* portion of that sales price." *Gibson v. Bob*

Page 5 - OPINION AND ORDER

*Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285-86 (7th Cir. 1997) (emphasis added). Other courts have also endorsed and adopted the reasoning of *Gibson*. *See Green v. Levis Motors, Inc.*, 179 F.3d 286, 293-94 (5th Cir. 1999); *see also Bell v. Miller*, 118 P.3d 405, 412 (Wash. Ct. App. 2005).

Notably, however, the Seventh Circuit goes onto observe that the agency's guidance "is a considerable stretch of the statute; and it is as far as, if not farther than, the statute will stretch." *Gibson*, 112 F.3d at 286 (7th Cir. 1997). Building from this observation, plaintiff argues that the disclosure guidance prescribed by the Federal Reserve plainly allows a creditor to pass along additional costs to unsuspecting consumers, and in doing so, may frustrate the underlying purpose of TILA. While plaintiffs' concern is not without merit, they are unable to cite sufficient legal authority to support an alternate reading of 15 U.S.C. § 1638(b) and 12 C.F.R. § 226.18(c), as applied to the facts of this case. Indeed, the agency's guidance, which has been upheld across numerous jurisdictions, unambiguously clarifies that TILA does not require a creditor to disclose the *specific amount* retained in a transaction with a third party, rather it only requires disclosure that the creditor *may* retain a portion of the fees. The intent of TILA is not disputed, but its restrictions are not without bounds, which may indeed—as plaintiff points out—limit its efficacy; however, this inherent tension is found within any statute. Defendants need only comply with the statutory limits actually imposed by TILA.

Here, it is undisputed that the retail installment contracts at issue contain language indicating the creditor may retain a portion of the fees associated with third-party transactions. For example, plaintiff Mendoza's contract includes an itemized list of fees under the following heading:

> 4. Charges Other than Finance Charge, including Amounts Paid to Others on My Behalf: (*Seller may be retaining a portion of this amount)

Page 6 - OPINION AND ORDER

Pls.' Resp. to Defs.' Mot. to Dissmiss 16.

The statement 'seller may be retaining a portion of this amount' is denoted with an asterisk and mirrors the precise language recommended by the Federal Reserve. Plaintiffs do not dispute that each retail installment contract cited in the complaint contains similar or identical language to that referenced above. Because I find that the language of Lithia's contracts satisfies TILA's disclosure requirements with respect to the sale of third party products, plaintiffs' allegations are insufficient to state a claim upon which relief may be granted. Further, I find that amendment to the pleadings would not cure these defects.

B.  *Arrangement of Financing*

Second, with respect to TILA required disclosures related to the arrangement of financing, plaintiffs allege that defendants improperly "retained a 'yield spread premium' . . . without making the proper disclosures." Third Am. Compl. ¶ 95. Alternatively, plaintiffs argue that "Lithia retained a 'dealer reserve'—an amount kicked back to Lithia by the financial institutions that arranged the financing to the Plaintiffs." *Id.*

In response, Lithia argues that TILA does not require a dealership to disclose the yield spread premium or kickback in the form of a flat fee (described a "dealer reserve" by plaintiffs). I agree. As mentioned above, TILA and Regulation Z require the disclosure of the "finance charge," which is defined as "the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a); *see also* 15 U.S.C. § 1605(a). Put simply, the finance charge is the total cost (to the consumer) associated with the extension credit.

Page 7 - OPINION AND ORDER

Importantly, by using the phrase 'any charge,' TILA explicitly recognizes that the total finance charge may include a number of separate charges. Yet, despite the myriad of charges that may influence the ultimate cost associated with the extension of credit (i.e., the finance charge), the required disclosure is quite limited under TILA. *See* 15 U.S.C. § 1638(a)(3)(stating the finance charge disclosure is "not itemized"). Further, as Lithia points out, courts have unambiguously held that "TILA does not require a lender to break down the components of the finance charge to disclose the separate existence of a yield spread premium." *Willis v. Bank of America Corp.*, 2014 WL 3829520, at 16 (D. Md. 2014); *see also Hernandez v. Downey Savings and Loan Ass'n*, 2009 WL 704381, at 6 (S.D. Cal. 2009). Plaintiffs do not cite any legal authority in support of its position to the contrary.

In construing the requirements of § 1605(a), I find that the yield spread premiums and fees allegedly retained by Lithia are indeed encompassed in the finance charge and are not required to be independently disclosed under TILA. Accordingly, plaintiffs' allegations mentioned above are not sufficient to state a claim under TILA, and I find that amendment would not cure these defects.

    C.    *UTPA Claims Arising from TILA Violations*

Plaintiffs' claims under the UTPA predicated on a violation of TILA are also insufficiently pled. O.R.S. § 646.608(1)(u) states that a defendant violates the UTPA if it "engages in any other unfair or deceptive conduct in trade or commerce' listed in the relevant sections of the Oregon Administrative Rules." O.A.R. 137-020-0040(2) provides that a violation of TILA also constitutes a violation of the UTPA. Here, the alleged violation of O.R.S. 646.608(1)(u) is dependent on a violation of TILA. Because the plaintiffs fail to state claims under TILA, they also fail to state a claim under OAR 137-020-0040(2).

II. *Common Law Fraud*

Plaintiffs also assert a common law fraud claim. Notably, fraud claims are subject to a heightened pleading standard, which is set forth under Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that, when alleging fraud, plaintiffs must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Here, plaintiffs allege that Lithia engaged in fraud when they represented that "service products . . . were provided by third parties," yet "[i]n reality, the payments made . . . did not go to these third parties, but were instead kept by [Lithia]." Third Am. Compl. ¶¶ 122, 123. Plaintiffs' allegation is limited to the lifetime oil contracts purchased by particular plaintiffs, the Jocks. The underlying facts giving rise to the claim are not disputed.

The Jocks purchased lifetime oil contracts as part of two different transactions with Lithia. In the retail installment contracts, Lithia listed the charge for lifetime oil under the subheading "Other Charges," which is found under the more inclusive heading titled "Charges other than Finance Charge, including Amount Paid to Others on My Behalf: (*Seller may be retaining a portion of this amount)." Pls.' Resp. to Defs.' Mot. to Dismiss ¶ 55. When naming the party that will receive payment, Lithia identifies "DMS" in the contract. In its briefing, Lithia points out that DMS is an abbreviation for Dealer Mechanical Services, "which is an assumed business name of Lithia Motors, Inc. that is registered with the Oregon Secretary of State." Defs.' Mot. to Dismiss 27. Essentially, DMS functions as the service arm of Lithia.

These facts, viewed in the light most favorable to plaintiffs, are not sufficient to support a claim for fraud. First, Lithia did not represent that the lifetime oil service provider was a third party—a conclusion supported by the plain language of the contract: "Charges other than Finance Charge, *including* Amount Paid to Others on My Behalf." Pls.' Resp. to Defs.' Mot. to

Page 9 - OPINION AND ORDER

Dismiss ¶ 55 (emphasis added). When considering the contractual language, the word 'including' is critical to a reasonable interpretation. Simply because the title indicates that the listed charges *include* amounts paid to others, it certainly does not foreclose—and rather, seems to highlight—that the list may include amounts retained by Lithia, which owns DMS. Indeed, even if a consumer were to misread the title and assume the listed charges were paid entirely to third parties, the title includes additional language—designated with an asterisk—stating that Lithia "may be retaining a portion of this amount." *Id.* Thus, the language in the retail installment contracts is not false. For all of these reasons, plaintiffs' allegations fall short of those that may support a claim for fraud.

III. *UTPA Claims Arising Under O.R.S. § 646.808 and OAR 137-020-0020(3)(u)*

   A. *Plaintiffs do not state a claim under O.R.S. § 646.608(1)(a),(b), or (c).*

Plaintiffs allege numerous other violations under the UTPA. First, plaintiffs argue that Lithia's conduct runs afoul of O.R.S. § 646.608(1)(a),(b), and (c). ORS 646.6081(1) provides, in relevant part, that a defendant violates the UTPA if it engages in any of the following:

> (a) Passes off real estate, goods or services as the real estate, goods or services or another.
> (b) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services.
> (c) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by another.

O.R.S § 646.608(1)(a),(b), and (c).

Plaintiffs contend that Lithia violated the abovementioned sections by representing that "consumers were paying for third party products, when, in fact, these payments were mostly kept by Lithia – without disclosure and without consent." Pls.' Resp. to Defs.' Mot. to Dismiss ¶ 67. For the reasons discussed below, I do not find plaintiffs' reasoning persuasive.

First, the above-listed subsections require transparency regarding, among other things, the *identity* of service providers—not the profit margins secured by a party selling the services. The undisclosed retention of fees paid to another does not, by itself, constitute a violation of 646.608(1)(a), (b), or (c). Here, the itemized payments at issue are listed in the retail installment contract under the following heading: Charges other than Finance Charge, including Amounts Paid to Others on My Behalf: (*Seller may be retaining a portion of this amount).

As discussed above, the word 'including' is critical to a reasonable interpretation of the contractual language. By listing payments under this title, Lithia represents that the goods or services *may be*—but are not necessarily—purchased from a third party. The Jocks' retail installment contracts serve as a salient example: under the title mentioned above, "DMS" is explicitly identified as the provider of the lifetime oil service. Lithia clearly identified the party receiving money, and in doing so, avoided confusion or misunderstanding surrounding the source of goods or services. Lithia allowed for further transparency regarding the affiliation or nature of the business relationship by using the language "Seller may be retaining a portion of this amount". Under these circumstances, whether or not DMS is owned by Lithia is immaterial. The profit retained by Lithia is also immaterial, as that is not a required disclosure. For the reasons mentioned above, plaintiffs do not state a claim under O.R.S. § 646.608(1)(a),(b), or (c).

B. *Plaintiffs fail to state a claim under O.R.S. § 646.608(1)(j).*

Turning to the remaining alleged violations of UTPA, ORS § 646.608(1)(j) provides that a defendant violates the UTPA if it "makes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." Lithia correctly points out that the alleged misrepresentations do not include price reductions. Accordingly, ORS 646.6081(1)(j) is inapplicable to plaintiffs' claims.

Page 11 - OPINION AND ORDER

C.   *Plaintiffs fail to state a claim under O.R.S. § 646.608(1)(s).*

Next, O.R.S. § 646.6081(1)(s) provides that a defendant violates the UTPA if it "makes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods, or services." As a general matter, this subsection requires transparency around costs passed on to the consumer. Importantly, plaintiffs make no allegations that the prices quoted to consumers were not the actual prices charged or paid. Instead, plaintiffs argue that Lithia never "disclosed . . . hidden kickbacks" or explained the "real rate that the consumer should have been charged." In making this argument, plaintiffs allege Lithia improperly profited using two specific methods. First, plaintiffs allege that Lithia retained some undisclosed portion of the price of third-party products sold to consumers. Second, plaintiffs also allege that Lithia charged loan rates to consumers that exceeded the lowest rate quoted by lenders. In other words, plaintiffs allege that Lithia charged an undisclosed fee, in the form of a higher interest rate, for arranging financing (i.e., yield spread premium).

As an general matter, §646.608(1)(s) does not explicitly prohibit a seller from retaining an undisclosed profit when selling goods or services of a third party, nor does it prohibit the seller from retaining an undisclosed fee in the form of additional points on an interest rate. Lithia further argues that the affirmative disclosures in the retail installment contract were sufficient to avoid any claim that they made false or misleading statements. With regard to the sale of third party products, the language of the retail installment contract states that the "seller may be retaining a portion of [those] amounts." And with regard to financing, the retail installment contract states that "the Seller my assign this contract and retain its right to receive a part of the finance charge."

While Lithia's contractual disclosures alone are not sufficient to avoid liability under O.R.S. § 646.608(1)(s), plaintiffs' proposed reading of the statute is untenable under the circumstances here. As discussed above, O.R.S. § 646.608(1)(s) does not require Lithia to disclose the type of "kickbacks" or profits allegedly retained, and plaintiffs do not cite any case supporting its position to the contrary. Moreover, as Lithia points out, plaintiffs' expansive reading of the statute would lead to the absurd result of requiring any seller of real estate, goods, and services to disclose its profit margins to consumers. The UTPA cannot be stretched so far as to reach such a conclusion. Accordingly, plaintiffs do not state a claim under O.R.S. § 646.6081(1)(s).

D. *Plaintiffs' state a claim under O.R.S. § 646.608(1)(u).*

Lastly, plaintiffs assert a claim arising under § 646.608(1)(u) and OAR 137-020-0020(3)(u). The latter provides that a dealer "shall clearly and conspicuously disclose in writing . . . that the dealer or broker may receive additional compensation from the consumer for arranging the sale of the retail installment contract which may be in the form of a fee or additional loan points." OAR 137-020-0020(3)(u)(A)(1). Here, the language Lithia used in the retail installment contract is not disputed: "[t]he Annual Percentage Rate may be negotiable with the [dealership]," and the dealership "may assign this contract and retain [its] right to receive part of the finance charge." Plaintiffs argue, however, that the language in the retail installment contract is deficient insofar as it: 1) was not clearly and conspicuously communicated and 2) does not conform to the specific language prescribed in the OAR. Plaintiffs further allege—albeit not in the complaint—that "Lithia kept [a] yield spread premium of more than three points" without the disclosure required under OAR 137-020-0020(3)(u)(B). Pls.' Resp. to Defs.' Mot. to Dismiss ¶ 79.

First, the term 'clear and conspicuous' is defined as a statement that "is conveyed in a manner that is readily noticeable, will be easily understood by the average person, and is in a meaningful sequence." OAR 137-020-0020(2)(j). To meet the clear and conspicuous standard, the message must, *inter alia*, "[b]e in direct proximity to the message, statement, information, representation or term it clarifies, modifies or explains, or to which it otherwise relates." *Id.* Here, Lithia's disclosure mentioned above is meant to clarify, modify, or explain the annual percentage rate. The location of the disclosure is not disputed. In one instance, the disclosure is found "approximately twelve-and-a-half inches" below the annual percentage rate and finance charge. Pls.' Resp. to Defs.' Mot. to Dismiss ¶ 82. In other instances, the disclosure and annual percentage rate are approximately "three-and-a-half inches" apart. *Id.* Construing the allegations in the light most favorable to plaintiff, the above mentioned facts support a plausible claim that the disclosures were not "in direct proximity" to the annual percentage rate, thereby falling short of the clear and conspicuous standard provided in OAR 137-020-0020(2)(j). Accordingly, I find that plaintiffs state a claim under O.R.S. § 646.608(1)(u) and OAR 137-020-0020(3)(u) and need not address the merits of plaintiffs' additional arguments at this stage of the proceeding. However, as noted above, plaintiffs' allegation that "Lithia kept [a] yield spread premium of more than three points" is a new line of argument, absent from the Third Amended Complaint. Plaintiffs are granted leave to amend their complaint on this allegation.

## CONCLUSION

As explained herein, defendants' Partial Motion to Dismiss Plaintiffs' Third Amended Complaint (doc. 48) is GRANTED IN PART and DENIED IN PART. Plaintiffs' Request for Leave to Amend is GRANTED IN PART and DENIED IN PART. Specifically, plaintiffs' claims under TILA, as well as claims under the UTPA based on violations of TILA, are

dismissed with prejudice. Plaintiffs' claims under O.R.S. § 646.608(1)(a), (b), (c), (j), and (s) are also dismissed with prejudice. However, plaintiffs claim under O.R.S. § 646.608(1)(u) and OAR 137-020-0020(3)(u) are not dismissed, and plaintiffs have 30 days from this order to amend their complaint on this allegation.

IT IS SO ORDERED.

Dated this 27th day of March 2018.

_____
Ann Aiken
United States District Judge